HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC NEFF
Acting Chief, Voting Section
Civil Rights Division

BRITTANY E. BENNETT
Trial Attorney, Voting Section
Civil Rights Division

U.S. Department of Justice
4 Constitution Square
150 M Street, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Brittany.Bennett@usdoj.gov

SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar No. 8264
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Sigal.Chattah@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

1

*United States of America v. Aguilar*
Memorandum in Support of Motion to Compel Production

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO V. AGUILAR, in his Official Capacity as Secretary of State for the State of Nevada,<br><br>Defendant(s). | Case Number: 3:25-cv-00728<br><br>**MEMORANDUM IN SUPPORT OF THE MOTION FOR ORDER TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701,** *et seq.* |

## <u>MEMORANDUM OF LAW</u>

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................5

II.     BACKGROUND ...................................................................6

        A.     Title III of the Civil Rights Act of 1960.....................................6

        B.     The United States Seeks to Ensure Nevada Is Complying with
        Federal Law………………………………………………..…………8

III.    ARGUMENT………………………………………………………10

        A. An Order to Show Cause to Produce Under the CRA Is
           Warranted……………………………………………………...10

        B. A State's Claims to Protecting Privacy Interests Are Not a Basis to
           Withhold the Information Requested……………………………13

        C. An Order to Show Causes is Appropriate, Necessary, and
           Grounded in Law……………………………………………...14

IV.     CONCLUSION…………………………………………………...16

3

1

## TABLE OF AUTHORITIES

2

Cases

3
*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 855-56 (M.D. Ala. 1960) .......6

4
*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ...........................13

5
*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)........................................5, 7, 12

6
*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm.

7
  Pleas Oct. 1, 2025) ...............................................................................................13

8
*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) ...................................6

9
*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)............................................13, 14

10
*In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963).....................................7

11
*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)....................................................7

12
*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ..................................................passim

13

Statutes

14
18 U.S.C. § 2721...................................................................................................10

15
5 U.S.C. § 552a.................................................................................................9, 10

16
52 U.S.C. § 20501.................................................................................................8

17
52 U.S.C. § 20507............................................................................................8, 12

18
52 U.S.C. § 20701..........................................................................................passim

19
52 U.S.C. § 20703.....................................................................................5, 7, 11, 14

20
52 U.S.C. § 20704.................................................................................................10

21
52 U.S.C. § 21083.....................................................................................8, 9, 10, 12

22

23

24

25

26

27

28

4

## I.    INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On August 14, 2025, the Attorney General, through her representative, made a written demand to Secretary Aguilar to produce certain Federal election records covered by the CRA. *See* Compl. at 3. That written demand explained that the purpose was for enforcement of the list maintenance requirements of the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *Id.*

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

*United States of America v. Aguilar*
Memorandum in Support of Motion to Compel Production

Secretary Aguilar refused to produce the requested Federal election records. litigation followed.

Pursuant to Section 305 of the CRA, the United States moves for an order to show cause requiring Secretary Aguilar and Nevada to produce the Federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225 "All that is required is a simple statement by the Attorney General" after making a written demand for Federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying…'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order to show cause requiring Defendant to produce the Federal election records described in its written demand.

## II.    BACKGROUND

### A.    Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election, 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the

1  Attorney General or [her] representative…." 52 U.S.C. § 20703.  The written

2  demand "shall contain a statement of the basis and the purpose therefor." *Id.*

3      If an officer of election refuses to comply with the CRA's command, the Act

4  requires "a special statutory proceeding in which the courts play a limited, albeit

5  vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d

6  at 225. The Attorney General or her representative may request a Federal court to

7  issue an order directing the officer of election to produce the demanded records, akin

8  to "a traditional order to show cause, or to produce in aid of an order of an

9  administrative agency." *Id.*

10     The special proceeding is "summary" in "nature" and neither "plenary [n]or

11 adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy

12 v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not

13 amount to the filing of a suit of any kind"). "All that is required is a simple statement

14 by the Attorney General that after a … written demand" for Federal election records

15 covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom

16 an order for production is sought … has failed or refused to make such papers

17 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226

18 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural

19 device or maneuver—either before or during any hearing of the application—to

20 ascertain the factual support for, or the sufficiency of, the Attorney General's

21 'statement of the basis and the purpose therefor' as set forth in the written demand."

22 *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant

23 the relief sought or, if the respondent-custodian opposes the grant of such relief, the

24 matter should be set down without delay for suitable hearing on the matters open for

25 determination." *Id.*

26     Those matters, though, are "severely limited." *Id.* The court may adjudicate

27 only: (1) "whether the written demand has been made"; and (2) "whether the

28 custodians against whom orders are sought have been given reasonable notice of the

pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

### B.     The Attorney General is compelling Federal election records under the CRA to assess Nevada's NVRA and HAVA compliance.

On June 25, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Secretary Aguilar, an officer of election, regarding Nevada's compliance with Federal list maintenance requirements. Ex. 1, Dep't Ltr. to Sec'y Aguilar dated June 25, 2025 ("June 25 Letter"). The NVRA and HAVA have list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for federal elections. *See* 52 U.S.C. §§ 20507 (a)(4), 20507(i)(1), 21083(a)(1)(A). The Department requested information regarding Nevada's HAVA compliance. *See* Ex. 1, June 25 Letter.

The June 25 Letter requested, among other information and documents, a description of the verification process under HAVA Section 303(a)(5) that election officials perform to verify the required information supplied by the registrant. The June 25 Letter also requested—pursuant to HAVA—that Nevada provide a current electronic copy of its computerized statewide voter registration list, including both active and inactive voters ("SVRL"), required under Section 303 of HAVA. Ex. 1, June 25 Letter at 2.

On July 25, 2025, Secretary Aguilar sent a letter with some responses to the Attorney General's requests for information, including a link to Nevada's purported SVRL, however, the SVRL provided did not include all fields ("July 25 Letter") Ex. 2.

On August 14, 2025, the Attorney General responded to Secretary Aguilar's July 25 Letter, advising the federal basis for her request, including the NVRA and HAVA, and informed the Secretary that the CRA empowers the Attorney General to request election records to enforce federal law. The Letter then demanded pursuant to the CRA "an electronic copy of Nevada's complete and current VRL." The Attorney General further stated that "[t]he purpose of the request is to ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA." ("August 14 Letter") Ex. 3.

The August 14 Letter directed that the SVRL should contain "all fields, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA") to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i)." (footnote omitted).

The August 14 Letter explained to Secretary Aguilar that "HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974.'" *See* 5 U.S.C. § 552a note; 52 U.S.C. § 21083(c). The August 14 Letter stated the demand was made pursuant to the CRA to assess Nevada's compliance with the list maintenance provisions of the NVRA and HAVA.

The Department made clear in the August 14 Letter that the Attorney General and her representatives would comply with Federal privacy laws applicable to the demanded Federal election records. For example, the Department pointed out that in addition to the Privacy Act, the CRA provides:

*United States of America v. Aguilar*
Memorandum in Support of Motion to Compel Production

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Ex. 3, August 14 Letter at 2. (quoting 52 U.S.C. § 20704).

The August 14 Letter further explained, "HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974…'" *Id.* at 2 (citing note to 5 U.S.C. § 522(a) and 52 U.S.C. § 21083(c)). In addition, the letter noted that any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency, such as the Department, that is carrying out its enforcement functions. *Id.* To facilitate Secretary Aguilar's safe transmission of the Federal election records, the Department provided instructions to use encrypted email or to send via the Department's secure file-sharing system. *Id.*

27.    On August 21, 2025, Secretary Aguilar responded to the Attorney General's letter, claiming the Attorney General's request had no basis and asserting privacy concerns. The letter also claimed that the Secretary's office would conduct a careful analysis that the Attorney General's request requires and will reach out thereafter. However, the Attorney General never received the requested VRL with all fields as requested ("August 21 Letter") Ex. 4.

### III.    ARGUMENT

### A.    The United States is entitled to an Order to Show Cause under the CRA.

An order to show cause for production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written

10

*United States of America v. Aguilar*
Memorandum in Support of Motion to Compel Production

demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's June 25 Letter and August 14 Letter satisfy these requirements by: (1) making a written demand for inspection, reproduction, and copying of Federal election records, including the SVRL and records of voter registration application within twenty-two months of a Federal election; (2) directing that demand to Secretary Aguilar, an officer of election as defined by Section 306 of the CRA;[2] and (3) stating that the purpose of the demand is "…ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA," Ex. 4, August 14 Letter at 2.

Secretary Aguilar's failure to provide the requested information and SVRL is a direction violation of Federal law. Ex. 4. Officers of election have no discretion to refuse to provide the Federal election records or papers or the content of those

---

[2] Section 306 provides:

> As used in this title, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

*United States of America v. Aguilar*
Memorandum in Support of Motion to Compel Production

records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers").

Further, the Attorney General cannot assess compliance with HAVA and the NVRA without the SVRL with all fields and other requested Federal election records pertaining to Nevada's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. §§ 21083(a)(5)(A)(i)-(ii). Without the data, including those identification numbers, the United States cannot evaluate the state's compliance with HAVA.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states and the District of Columbia (including Nevada) participate in the Electronic Registration Information Center ("ERIC") and routinely share that data with one another.

The same unredacted Federal election records, including the SVRL, are needed to assess Nevada's compliance with the NVRA. Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…" 52 U.S.C. § 20507(a)(4). For example, use of unredacted voter data ensures that matches to identify deceased voters are more accurate and complete.

Secretary Aguilar has rejected the United States's written demand pursuant to the CRA to produce Nevada's statewide VRL and other Federal election records. Consequently, the United States respectfully requests that this Court issue an Order

to Show Cause requiring Secretary Aguilar and the State of Nevada to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

### B.    The CRA does not permit Defendant to withhold Federal elections because of privacy concerns.

Defendant has refused to produce the Federal election records demanded by the Attorney General under the CRA because they contend that Nevada's privacy laws are controlling. The Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our Federal system that when Federal and state law conflict, the federal law governs. *See* U.S. Const. art. VI. As this Circuit has explained, if a federal election law like the NVRA and state law "do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Department. Addressing Federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Eric Neff as Ex. 5, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned,

*United States of America v. Aguilar*
Memorandum in Support of Motion to Compel Production

Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id.* at 11-12. For those reasons, *id.*, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Gonzalez*, 677 F.3d at 394. Consequently, the Attorney General is entitled to the Federal election records she has demanded from Nevada under the CRA, notwithstanding any conflicting state privacy laws.

**C.    The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining Federal election records.**

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Aguilar, as an officer of election for Nevada, must produce the voter-registration lists and other federal election records demanded by the Attorney General.[3] *Lynd*, 306 F.2d at 225. The court in *Lynd*

---

[3] Although this Motion for an Order to Show Cause is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal election records. *See* 52 U.S.C. §§ 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

reasoned that a special proceeding was necessary to obtain federal election records

because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more
> definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place
> for any other procedural device or maneuver— either before or during
> any hearing of the application— to ascertain the factual support for, or
> the sufficiency of, the Attorney General's 'statement of the basis and
> the purpose therefor' as set forth in the written demand. [52 U.S.C. §
> 20703]. Thus with respect to the reasons why the Attorney General
> considers the records essential, there is no place, either as a part of
> pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33,
> oral depositions of a party under F.R.Civ.P. 26(a), 30, production of
> documents under F.R.Civ.P. 34, or request for admissions as to facts or
> genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the Federal election records and explaining that Secretary Aguilar, acting as an officer of election for Nevada, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order to Show Cause directing Secretary Aguilar to produce the Federal election records described in the Attorney General's written demand.

15

*United States of America v. Aguilar*
Memorandum in Support of Motion to Compel Production

## IV.    CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendant to comply with the Attorney General's request for all Federal election records described in its June 25 Letter and August 14 Letter. Those records should be provided electronically to the United States within five days.

Dated: December 11, 2025              Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

/s/ *Brittany E. Bennett*
ERIC NEFF
Acting Chief, Voting Section
BRITTANY E. BENNETT
Trial Attorney, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street, Room 8.141
Washington, D.C. 20002
brittany.bennett@usdoj.gov
Tel. (202) 704-5430
Attorneys for the United States

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov

17