David R. Fox (NV Bar No. 16536)
Julianna D. Astarita* (IL Bar No. 6340483)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
jastarita@elias.law

Walker McKusick* (WA Bar No. 63205)
wmckusick@elias.law
**Elias Law Group LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Intervenor-Defendants*
*NAACP Conference of Idaho, Nevada,*
*and Utah, Nevada Alliance for Retired*
*Americans, Institute for a Progressive*
*Nevada, and Jacqueline Sue Bird*

*\*Pro hac vice forthcoming*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case No. 3:25-cv-00728-ART-CLB |
| Plaintiff, | |
| v. | |
| FRANCISCO AGUILAR, in his official capacity as Nevada Secretary of State, | **UNOPPOSED MOTION TO INTERVENE AS DEFENDANTS** |
| Defendant. | |

**INTRODUCTION**

The U.S. Department of Justice recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Nevada last week, seeking to compel the state to turn over all the voter information it has on all of its voters. This legal assault not only intrudes upon Nevada's constitutional prerogative to maintain and protect its own voter registration list—it tramples the privacy rights of individual Nevada voters who have serious reasons to fear their personal information being handed over to the federal government.

Accordingly, the NAACP Conference of Idaho, Nevada, and Utah ("NAACP Tri-State"), the Nevada Alliance for Retired Americans ("the Alliance"), the Institute for a Progressive Nevada, and Jacqueline Sue Bird (together, "Proposed Intervenors") move to intervene in this suit to defend against the federal government's overreach. No party opposes this motion.

NAACP Tri-State represents nearly 1,300 dues-paying, college, and youth members and constituents across Idaho, Utah, and Nevada. The Alliance is a nonprofit, nonpartisan organization whose mission is to ensure social and economic justice for retirees and emphasizes civic engagement, including voting, for its members. The Institute for a Progressive Nevada is a nonprofit, nonpartisan organization that engages in civic and voter education across Nevada. And Jacqueline Sue Bird is an individual Nevada voter and retiree who does not want her personal information disclosed to the federal government. The Proposed Intervenors seek to intervene to preserve the privacy rights of their constituents and prevent disclosure of their sensitive personal information to DOJ. Nevada law regarding its voter registration lists indicates that the state will disclose only a limited amount of information in response to a public records request for the voter registration list. Nev. Rev. Stat. § 293-440(1)-(2); DOJ's requested relief would run roughshod over this and other privacy protections.

Multiple courts have allowed individuals and groups similarly situated to Proposed Intervenors, including the NAACP, state conferences of the NAACP, and state chapters of the Alliance, to intervene as defendants in the other suits DOJ has brought seeking voter lists. *See generally United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025)

MOTION TO INTERVENE AS DEFENDANTS

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

(granting intervention as of right to Oregon social welfare organization and Oregon voters); Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting two separate motions to intervene by groups including NAACP, NAACP Conference of CA/HI, and League of Women Voters of California); Minute Order, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025), ECF No. 49 (granting intervention to individual voters); Minute Order, *United States v. Oliver*, 1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025), ECF No. 9 (granting unopposed motion to intervene to New Mexico Alliance for Retired Americans). This Court should do the same here.

Proposed Intervenors are entitled to intervene as a matter of right because they have significant interests that are at serious risk of impairment by the relief sought in this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, they have an interest in ensuring that their members' and constituents' sensitive and personal information is not improperly disclosed to DOJ. While Nevada and its Secretary of State have thus far resisted disclosure, they do not adequately represent Proposed Intervenors: As a governmental defendant, the Secretary must consider "broader public-policy implications" of the issues presented in this suit, while the Proposed Intervenors are solely concerned with protecting their private interests—including their members' privacy and voting rights—"full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)). Unsurprisingly, in parallel cases involving DOJ's nationwide crusade, other federal courts have recently granted intervention to similarly situated intervenors—including to other state conferences of the exact Proposed Intervenors here. *See generally Oregon*, 2025 WL 3496571, at *1; Minute Order, *Weber*, ECF No. 70 (granting intervention to NAACP and NAACP Conference of CA/HI, among others); Minute Order, *Oliver*, ECF No. 9 (granting unopposed motion to intervene to New Mexico Alliance for Retired Americans).

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Granting intervention will ensure that Nevada voters have a voice in this litigation concerning the disclosure of *their* sensitive and

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE AS DEFENDANTS

1  personal information. Proposed Intervenors' presence will help to develop the issues in this case

2  and ensure vigorous presentation of arguments that the existing Defendant may be limited in

3  presenting. Those considerations weigh strongly in favor of permissive intervention. *See* Minute

4  Order, *Weber*, ECF No. 70 (granting permissive intervention by oral order). And Proposed

5  Intervenors will abide by any schedule ordered by the Court or agreed to by the original parties,

6  so their presence will not cause any delay.

7  **BACKGROUND**

8  **I.      Federal law has long made voter list maintenance a state responsibility, consistent**

9  **with the constitutional separation of powers.**

10  The U.S. Constitution "invests the States with responsibility for the mechanics" of federal

11  elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v.*

12  *Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter,

13  the Constitution assigns states the responsibility for determining voter eligibility and maintaining

14  lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

15  While Congress has enacted certain laws governing voter registration, these laws augment

16  existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of

17  voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA")

18  to serve "two main objectives: increasing voter registration and removing ineligible persons from

19  the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018);

20  *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the

21  "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a),

22  including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g).

23  It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

24  In the wake of the 2000 election, Congress enacted the Help America Vote Act ("HAVA")

25  "to improve voting systems and voter access." *RNC v. N.C. State Bd. Of Elections*, 120 F.4th 390,

26  394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain their voter rolls,

27  requiring them to create a "computerized statewide voter registration list."

28  52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE AS DEFENDANTS

NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the *federal government* with compiling a federal national voter registration list. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

## II. DOJ has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has sent demands to more than forty states, with plans to make similar demands on all fifty.[1] It seeks to use the data to create a national voter database that will, in turn, be used in an attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* n.1. The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2]

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD. *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (Dec. 5, 2025), https://perma.cc/24DT-7TFG.

[2] *See* Ochoa, O'Connor & Berry, *supra* n.1 (reporting that only two states—Indiana and Wyoming—have given DOJ everything it sought).

MOTION TO INTERVENE AS DEFENDANTS

DOJ sent Nevada a letter on June 25, 2025, demanding Nevada's entire "statewide voter registration list," and requesting other information about Nevada's voter registration list maintenance processes. Compl. ¶¶ 19–20, ECF No. 1. Nevada responded on July 25, 2025 with answers to DOJ's information requests and with a link to its statewide voter registration list. *Id.* ¶ 22. DOJ responded by specifying for the first time that it was requesting that the State produce "all fields" from its voter registration database, including "[each] registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." *Id.* ¶ 23. Secretary of State Aguilar responded on August 21, 2025, explaining his privacy concerns with DOJ's demands and his obligations under state law. *See id.* ¶ 25. The State has, to date, not shared with the DOJ the statewide voter registration list with all fields. *Id.*

Beginning in September 2025, DOJ began filing lawsuits against some—but not all—of the states that have refused to comply with its demands. On September 16, DOJ brought actions against Oregon and Maine, alleging in both cases that DOJ was entitled to the voter information it sought under three statutes: the NVRA, HAVA, and the Civil Rights Act of 1960.[3] On September 25, DOJ filed another set of lawsuits, this time against California, Michigan, Minnesota, New York, New Hampshire, and Pennsylvania.[4] Again, DOJ brought its claims under all of these same three statutes, excepting only the NVRA claim in states that are exempt from the NVRA. On December 1, DOJ sued Maryland and Vermont, on December 2, it sued Washington, New Mexico, Rhode Island, and Delaware, and on December 11, it sued Nevada, Massachusetts, Colorado, and Hawaii.[5] In this third wave of lawsuits, DOJ chose not to bring claims under either HAVA or the NVRA, as it did in the previous suits. Instead, DOJ relies solely on Section 303 of the Civil Rights Act of 1960.

---

[3] Press Release, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 16, 2025), https://perma.cc/2F92-EEXT.
[4] Press Release, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 25, 2025), https://perma.cc/PE2W-7F9J.
[5] *See* Press Release, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025), https://perma.cc/2WYV-SRQP; Press Release, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/3C7K-MXQC.

1

2

### III.    DOJ sued Nevada to obtain its complete voter registration list.

3

DOJ filed this suit on December 11, seeking to compel Nevada to provide its full statewide

4

voter registration list. Compl. ¶¶ 24–25. It names Francisco Aguilar, in his official capacity as

5

Secretary of State, as Defendant. *See id.* ¶¶ 11–18. As in the other cases filed in December, DOJ

6

has chosen not to bring claims under either HAVA or the NVRA, as it did in the previous suits.

7

Instead, DOJ brings only a single count: an allegation that the Secretary is in violation of the Civil

8

Rights Act of 1960, 52 U.S.C. § 20703. This statute does not support the Department's sweeping

9

demands.

10

DOJ invokes Section 303 of the Civil Rights Act of 1960 (the "CRA"), a long dormant

11

Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s]

12

concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d

13

222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens

14

to vote without discrimination on account of race," and specifically to facilitate "investigation[s]"

15

authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated

16

through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no

17

doubt but that [Section 303] is designed to secure a more effective protection of the right to vote."

18

*Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v.*

19

*Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). But DOJ admits that is not its purpose here; rather

20

it claims to be evaluating Nevada's compliance with list maintenance efforts required by the

21

NVRA and HAVA—statutes with their own separate disclosure rules (under the NVRA

22

specifically) and enforcement mechanisms. Compl. ¶ 20. Thus, the CRA is inapplicable.[6]

23

### IV.    Proposed Intervenors' sensitive information and voter advocacy programs are threatened by DOJ's demands.

24

25

Proposed Intervenors NAACP Tri-State and the Alliance represent approximately 21,000

26

individual members in Nevada—most of whom are registered voters whose sensitive personal

27

---

[6] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

28

- 6 -

MOTION TO INTERVENE AS DEFENDANTS

information will be disclosed to DOJ if its lawsuit prevails—and that work to advance the fundamental civil rights of their members and other voters. *See* Ex. A, Decl. of Jeanetta Williams ("Williams Decl.") ¶¶ 5–7; Ex. B, Decl. of Thomas Bird ¶ 5. Proposed Intervenor Institute for a Progressive Nevada's voter education and advocacy programs, which in large part involve reassuring voters that Nevada elections are free and fair, will be negatively affected by this lawsuit. Ex. C, Decl. of Paula Luna ("Luna Decl.") ¶¶ 5–6. And Jacqueline Sue Bird is a registered voter and Nevada resident of more than fifty years who is concerned about the privacy of her personal information. Ex. D, Decl. of Jacqueline Sue Bird ("Jacqueline Sue Bird Decl.") ¶¶ 3, 6–8. Nevada law guarantees to voters that governmental entities are not required to provide copies of public records like the statewide voter registration list if it would "require the production of information that is confidential." NRS 239.010(4)(b)(2). All four intervenors would have their trust in these protections, and in turn their civic engagement efforts, undermined if DOJ obtains the sweeping relief it seeks.

   ***NAACP TRI-STATE.*** With more than 600 members across Nevada, NAACP Tri-State is the state conference of the NAACP of Idaho, Nevada, and Utah. Williams Decl. ¶ 4. NAACP Tri-State works in concert with the NAACP to ensure political, educational, and economic justice for Black Nevadans and other marginalized groups. *Id.* NAACP Tri-State has a long history of fighting for and protecting fundamental rights and voting rights of its members and constituents—including by engaging in voter outreach, education, and activism. *Id.* ¶¶ 5–7. NAACP Tri-State and its local branches and chapters operate and support programs that encourage members and other Nevada voters to participate in elections and provide assistance to voters in doing so. *Id.* ¶¶ 7–8. The NAACP and its members have been targets of retaliation from those who disagree with its mission in the past, including through unjust investigation and espionage by the federal government because of their advocacy efforts, and have defended against efforts to invade the privacy of their members because of those experiences. *Id.* ¶ 11. In addition, some NAACP members are immigrants and first-generation citizens who have increasingly become the targets of unwarranted scrutiny and legal action by the current federal administration. *Id.* ¶ 11. In light of this history, the disclosure of sensitive voter data, including the data of its members, to the Department of Justice

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE AS DEFENDANTS

is particularly concerning to NAACP Tri-State. *Id.* NAACP Tri-State's work may become significantly more difficult if its members and constituents believe that they could be punished, scrutinized, or otherwise investigated simply because they registered to vote. *Id.* ¶ 14. DOJ's effort to obtain Nevada's complete voter registration data threatens not only the NAACP Tri-State's mission-critical programs, but also the fundamental privacy and voting rights of NAACP Tri-State's members. *Id.* ¶¶ 4, 13–14.

*NEVADA ALLIANCE OF RETIRED AMERICANS.* The Alliance is a nonprofit, nonpartisan organization, which has approximately 20,000 members in Nevada, many of whom are retired union workers who live across the State. Thomas Bird Decl. ¶ 5. Its mission is to ensure social and economic justice for retirees after a lifetime of work. *Id.* ¶ 6. To that end, the Alliance encourages its members to be politically active, including by encouraging them to register to vote and to vote. *Id.* ¶ 7. Because retirees are the frequent targets of financial scams and are often hesitant to turn over personally identifying information, the Alliance's mission of encouraging its members to be politically engaged would be frustrated if it were known that DOJ would have access to sensitive, personally identifying information that Nevada maintains in its statewide voter file, including by discouraging retirees from registering to vote. *Id.* ¶¶ 8, 12. In addition, disclosure of this sensitive information to DOJ is itself a privacy harm to the Alliance's members, and it increases the risk that the information will find its way to others who could perpetuate financial scams targeting older Americans. *Id.* ¶¶ 10–11, 13.

*INSTITUTE FOR A PROGRESSIVE NEVADA.* The Institute for a Progressive Nevada is a nonprofit, nonpartisan organization that focuses on promoting democracy and educating, empowering, and engaging Nevadans to build a state where everyone has a fair opportunity to succeed. Luna Decl. ¶ 3. Institute for a Progressive Nevada promotes access to voting, engages in get-out-the-vote activities, and informs Nevadans about early voting and polling sites, in addition to expending significant resources to publish nonpartisan voter guides that help people understand the logistics of and issues involved in voting. *Id.* ¶ 4. The Department of Justice's lawsuit threatens to sow distrust of voting in communities that Institute for a Progressive Nevada serves.

1    ***JACQUELINE SUE BIRD.*** Jacqueline Sue Bird is the Secretary/Treasurer of the Alliance

2    and is a retiree herself. Jacqueline Sue Bird Decl. ¶ 2 She has been a registered voter in Nevada

3    for over 50 years. *Id*. ¶ 3. She has been the victim of several attempted scams and identity thefts

4    and is protective of her personal identifying information as a result. *Id*. ¶ 6. Additionally, she is

5    concerned that the Department of Justice will use the information in the unredacted statewide voter

6    registration list to target people who are speaking out about what they are doing. *Id*. ¶ 7.

7                                       **LEGAL STANDARD**

8    A party may intervene pursuant to Federal Rule of Civil Procedure 24 either as a matter of

9    right, or with permission of the Court. A party seeking to intervene as a matter of right must satisfy

10   four requirements:

11   (1) the applicant must timely move to intervene; (2) the applicant must have a
     significantly protectable interest relating to the property or transaction that is the
12   subject of the action; (3) the applicant must be situated such that the disposition of the
     action may impair or impede the party's ability to protect that interest; and (4) the
13   applicant's interest must not be adequately represented by existing parties.

14   *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

15   The Ninth Circuit has adopted a policy of "interpret[ing] these requirements broadly in

16   favor of intervention," guided by "practical considerations, not technical distinctions." *W.*

17   *Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Citizens for Balanced*

18   *Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). And courts must "take all well-

19   pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer

20   in intervention, and declarations supporting the motion as true absent sham, frivolity or other

21   objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). A party

22   who satisfies each of these requirements must be permitted to intervene. *Arakaki*, 324 F.3d at 1083.

23   "A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound

24   discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100

25   (9th Cir. 1999). Only two factors must be satisfied where, as here, the intervening party does not

26   intend to assert additional "new claims" for relief: (1) the motion must be timely and (2) the

27

28

applicant's claim or defense must have a question of law or fact in common with the main action. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).[7]

## ARGUMENT

### I.  Proposed Intervenors are entitled to intervene as a matter of right.

Proposed Intervenors satisfy the standards for intervention as a matter of right because the motion is timely, the prospect of an adverse ruling threatens to impair their and their members' fundamental privacy and voting rights—as well as each organization's mission-critical voter-engagement programs—and none of the existing government parties adequately represent their distinct, privately held interests.[8]

#### A.  This motion is timely.

Proposed Intervenors' Motion is indisputably timely. To make this determination, courts in this Circuit must consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay." *W. Watersheds Project,* 22 F.4th at 835–36 (citation omitted). Here, DOJ filed suit on December 11, and this motion follows mere days after—before any case schedule has been set, before the Defendant has answered, and before any "substantive proceedings have occurred." *Issa v. Newsom*, No. 22-CV-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020).

Additionally, there is no conceivable prejudice to any existing party because allowing Proposed Intervenors to participate would not require altering any existing deadlines, and they agree to abide by any future deadlines set by the Court. *See W. States Trucking Ass'n v. Becerra*, No. 19-cv-02447, 2020 WL 1032348, at *2 (C.D. Cal. Mar. 2, 2020) (noting that a "motion to intervene is generally considered timely if it is filed soon after a complaint, prior to any substantive

---

[7] Proposed Intervenors submit a Proposed Answer as required by Rule 24, *see* Ex. A, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

[8] Proposed Intervenors are regularly granted intervention to protect the fundamental rights of their members as well as their mission-critical election-related work. *See, e.g.*, *South Carolina v. United States*, 585 F. Supp. 418, 419 (D.D.C. 1984) (noting intervention of NAACP as defendant); *Texas v. United States*, 798 F.3d 1108, 1111–12 (D.C. Cir. 2015) (noting intervention of Texas NAACP branches as defendants).

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE AS DEFENDANTS

proceedings"); *see also, e.g.*, *Or. Nat. Desert Ass'n v. Shuford*, No. 06-cv-242, 2006 WL 2601073, at *2 (D. Or. Sep. 8, 2006) (finding no prejudice where intervenors moved promptly and agreed "to comply with the court's discovery and pretrial scheduling order"), *aff'd sub nom. Or. Nat. Desert Ass'n v. McDaniel*, 405 F. App'x 197 (9th Cir. 2010). Thus, the motion is timely.

### B. Proposed Intervenors have substantial, protectable interests that are threatened by the relief sought by DOJ.

Proposed Intervenors also satisfy the "closely related" second and third requirements for intervention because they have significant protectable interests in this lawsuit, and the relief DOJ seeks threatens to impair those interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989); *see also, e.g.*, *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

Under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Consistent with its liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting 6 Moore's Federal Practice § 24.03[2][c] (3d ed. 2008)).

Once an applicant has shown some protectable interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *Lockyer*, 450 F.3d at 442. Applicants need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). In other words, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (cleaned up).

MOTION TO INTERVENE AS DEFENDANTS

*Individual voters.* Proposed Intervenors unquestionably satisfy the interest inquiry here. Ms. Bird and thousands of individual members of NAACP Tri-State and the Alliance are registered Nevada voters who have significant protectable interests in their personal voter registration data, which is legally safeguarded under Nevada law. Williams Decl. ¶¶ 7, 12–13; Thomas Bird Decl. ¶¶ 5, 9. Their personal information is at serious risk of improper disclosure through the relief sought in this action. *See* Williams Decl. ¶ 13; Thomas Bird Decl. ¶¶ 11, 13; Jacqueline Sue Bird Decl. ¶¶ 6–8; *see also* Compl. at 6 (Prayer for Relief).

Ms. Bird and many of Proposed Intervenors' members strongly oppose surrendering their personal information to the federal government, and they have legitimate concerns about the consequences of doing so. Williams Decl. ¶¶ 12–14; Thomas Bird Decl. ¶¶ 11–12. They fear retaliation or unwarranted scrutiny due to their political activism or civic service, and they fear that the data will not be properly protected and is liable to be misused. Jacqueline Sue Bird Decl. ¶ 14; Luna Decl. ¶¶ 5–6.

These personalized interests readily satisfy the requirements of Rule 24(a)(2). *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *Celgard LLC v. Targray Tech. Int'l Inc.*, No. SAMC20-00128, 2021 WL 831030, at *2 (C.D. Cal. Feb. 10, 2021) (recognizing that disclosure of confidential commercial information is a "well-established interest sufficient to justify intervention under Rule 24(a)"); *accord Jurj v. Andersen*, No. 3:21-CV-00088-YY, 2022 WL 19349528, at *4 (D. Or. Sep. 16, 2022) (similar). That this privacy interest implicates the fundamental right to vote only bolsters Proposed Intervenors' interests here, as each has a direct and substantial interest in preserving their fundamental rights to vote. *Cf. Ariz. All. for Retired Ams. v. Clean Elections USA*, 638 F. Supp. 3d 1033, 1040 (D. Ariz. 2022), *opinion vacated and appeal dismissed as moot*, No. 22-16689, 2023 WL 1097766 (9th Cir. Jan. 26, 2023), and in ensuring that their right to vote is not unlawfully burdened, *see, e.g.*, *League of United Latin Am. Citizens v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding interests in the right to vote are "sufficient . . . to satisfy Rule 24(a)(2)").

***Organizations.*** As noted, the NAACP Tri-State and the Alliance for Retired Americans have significant and protectable interests in preserving the privacy rights of their members—many of whom are Nevada voters. Williams Decl. ¶ 7; Thomas Bird Decl. ¶ 5. *See also All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 101–04 (D.D.C. 2025) (holding membership organization established Article III standing to challenge disclosures of information to federal agencies based on intrusions upon privacy interests of members). Separate and apart from that interest, the NAACP Tri-State, the Alliance, and the Institute for a Progressive Nevada also have distinct and independent interests in preserving their own abilities to accomplish core missions of activating voters and encouraging Nevadans in their constituencies to vote free from fears of intimidation or harassment.

For example, both NAACP Tri-State and the Alliance have members who simply do not want their information turned over to the federal government due to concerns about identity theft, data security, and reports that the federal government has failed to properly safeguard sensitive Social Security information. Williams Decl. ¶¶ 10, 13; Thomas Bird Decl. ¶¶ 9–11. Separately, the NAACP Tri-State already faces challenges convincing community members who are skeptical of the electoral system and worried about improper government scrutiny to engage in the political process by registering to vote. Williams Decl. ¶¶ 12, 14. Disclosure of voters' data will make that even more difficult. *Id.* ¶¶ 12, 14. As noted, their voter registration and engagement efforts include working with Nevadans who are immigrants and first-generation U.S. citizens. Williams Decl. ¶ 11; Luna Decl. ¶ 6. In view of the current administration's harsh treatment of immigrant communities, many voters in this group—even those plainly qualified to vote—may reasonably be particularly hesitant to engage in the political process if it means inviting federal scrutiny and retaliation against their families and communities. *See* Luna Decl. ¶ 6; Williams Decl. ¶ 11. The fear and distrust sown by DOJ's aggressive demands for personal information therefore directly frustrates the NAACP Tri-State, the Alliance, and the Institute for a Progressive Nevada's mission-critical work.

Courts regularly recognize that organizations have significant protectable interests in preserving their own mission-critical organizational activities, particularly when it comes to

- 13 -

ensuring their members and constituents' ability to vote. *See, e.g.*, *Issa*, 2020 WL 3074351, at *3; *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that a political party had a "legally protectable interest" because they "expend significant resources in the recruiting and training of volunteers").

Should there be any doubt, any one of these interests satisfy even the "more stringent" requirements for establishing an Article III injury. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see Chiles*, 865 F.2d at 1212–14 & n.16 (cautioning there is "less reason to be as finicky" in assessing an intervenor's interests than a plaintiff's asserted injury (citation omitted)); *see also, e.g.*, *Brooklyn Branch of NAACP v. Kosinski*, 735 F. Supp. 3d 421, 436 (S.D.N.Y. 2024) (concluding Brooklyn NAACP had organizational standing considering its "long history of engagement efforts to support all voters in gaining access to the franchise"); *All. for Retired Ams.*, 770 F. Supp. 3d at 101–03; *DNC v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (concluding organization had injury sufficient to confer standing where challenged law would require it "to retool [its] [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. DNC v. Hobbs,* 948 F.3d 989 (9th Cir. 2020) (en banc); *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 983–87 (D. Ariz. 2024) (finding organizations had standing to protect members' voting rights), *aff'd in relevant part* 129 F.4th 691 (9th Cir. 2025); *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1039 (D. Idaho 2023) (similar); *cf. Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096–97 (9th Cir. 2021). That the threat to Proposed Intervenors satisfies the more demanding Article III injury standard "compels the conclusion that they have an adequate interest" for purposes of Rule 24(a)(2). *Yniguez*, 939 F.2d at 735.

### C. Existing parties do not adequately represent Proposed Intervenors.

Proposed Intervenors cannot be assured adequate representation of their distinct interests in this matter if they are denied intervention. "[T]he burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests may be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Berger*,

597 U.S. at 196 (citing *Trbovich*, 404 U.S. at 538 n.10). Courts are "liberal in finding" this requirement satisfied, recognizing that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024).

Here, DOJ naturally does not represent Proposed Intervenors' interests, as it seeks to forcibly compel production of Nevada's unredacted state voter registration list. And while Nevada and the Secretary, to date, have resisted that demand, they too do not adequately represent Proposed Intervenors' distinct private interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (quoting *Trbovich*, 404 U.S. at 538 n.10). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted); *cf. United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987) (explaining that, under *Trbovich*, "when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene"). In other words, even if Nevada and the Secretary oppose the

MOTION TO INTERVENE AS DEFENDANTS

relief that DOJ seeks at a high level of abstraction, it does not follow that they share the same interests as private organizations committed to voter engagement and turnout. *See Berger,* 597 U.S. at 196.

Secretary Aguilar and Proposed Intervenors plainly do not share "identical" interests here. For one, Secretary Aguilar is obliged to enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, he has an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not always be aligned with intervenors' interests); *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *4 (N.D. Ill. July 18, 2024) (similar). Indeed, the NVRA specifically requires Secretary Aguilar to "balance *competing* objectives"—maintaining accurate and current voter rolls while promoting access to the ballot box. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (emphasis added). Proposed Intervenors simply do not share these competing interests—they are focused entirely on maintaining the privacy of their sensitive personal information, voting rights, and each organization's mission-critical voter-engagement programs. *See* Williams Decl. ¶¶ 5–9; Luna Decl. ¶¶ 5–6; Thomas Bird Decl. ¶¶ 8–12. Accordingly, their interests are not adequately represented. *See, e.g.*, *GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (explaining that courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented" (quotation omitted)); *Barke v. Banks*, No. 8:20-cv-00358, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases).

Further still, government defendants—including in disputes over voter roll maintenance—sometimes choose to settle due to competing interests. Courts routinely find inadequate representation where there is a possibility that an existing defendant will resolve a case on terms that proposed intervenors would not agree to. *E.g.*, *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011) (explaining that a possible "conflict of interest ... when it comes to settlement

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE AS DEFENDANTS

possibilities" favors intervention); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) (concluding government's representation of individual "voters [seeking] to intervene" inadequate in voting rights lawsuit where "proposed interveners [we]re adverse to settlement" but government might not be); *Judicial Watch*, 2024 WL 3454706, at *5 (allowing union to intervene as defendant in voter roll maintenance case on behalf of members, noting that government defendants around the country have settled in litigation over voter lists). Several federal courts have already recognized that these interests entitle individual voters and civic organizations to intervene in parallel lawsuits seeking voter data in other states. *See Oregon*, 2025 WL 3496571, at *2; 1:25-cv-468-LEW; Minute Order, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025), ECF No. 49 (granting intervention to individual voters); *Oliver*, 1:25-cv-01193-LF-JFR, ECF No. 9 (granting unopposed motion to intervene to New Mexico Alliance for Retired Americans).

At bottom, the government entities and public officials on both sides of the case do not stand in the same shoes as Proposed Intervenors and thus do not sufficiently represent their interests, which will be directly impacted by the disposition of this matter.

## II.    Proposed Intervenors should, alternatively, be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, *see supra* Argument § I.A, and agree to abide by any schedule set by the Court or agreed to by the original parties—meaning there will be no delay or prejudice. And Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. E (Proposed Answer).

The Ninth Circuit has also identified additional considerations the Court can consider in weighing permissive intervention requests. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations—including the proposed intervenors'

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE AS DEFENDANTS

interests, the inadequacy of the representation of those interests, and the intervenors' contribution to the factual and legal issues, *see id.*—buttress the case for intervention here.

*First*, Proposed Intervenors seek to defend deeply personal privacy interests, as well as organizational interests unique to civic organizations. *See supra* Argument § I.B. *Second*, these parochial interests are not identical to the public interests of the existing governmental defendant, and may not be fully advanced absent their intervention. *See supra* Argument § I.C. *Finally*, the harms that vulnerable voters face and the arguments they advance will certainly contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Given that this action threatens to compel the disclosure of personal data of millions of Nevada voters to federal officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing parties who specifically represent the interests of those voters to participate. *See Relman Colfax v. Fair Hous. Council*, 19-cv-8612 PSG (JCX), 2020 WL 9460652, at *1 (C.D. Cal. Apr. 20, 2020) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (quoting Fed. R. Civ. P. 24 Advisory Committee's notes)).

For similar reasons, courts have routinely granted permissive intervention to civic organizations to ensure their voices are heard when litigation implicates the rights and privacy of all voters, including in cases that mirror this one. *See, e.g.*, Minute Order, *Weber*, ECF No. 70 (granting permissive intervention to NAACP and NAACP Conference of CA/HI, among others, in lawsuit seeking disclosure of California's unredacted voter registration database); *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *see also League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-660, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014) (permitting individual voters to intervene).

In short, because Rule 24 is liberally construed to protect Proposed Intervenors' rights and interests, and because Proposed Intervenors' participation will assist rather than prejudice efficient

development and resolution of this matter, the Court should grant permissive intervention in the event it does not find that Proposed Intervenors may intervene as a matter of right.

## CONCLUSION

Proposed Intervenors respectfully request that this Court grant intervention as a matter of right, or, in the alternative, grant permissive intervention.

Dated: December 16, 2025

Respectfully submitted,

**BRAVO SCHRAGER LLP**

By: */s/ Daniel Bravo*

David R. Fox (NV Bar No. 16536)
Julianna D. Astarita (IL Bar No. 6340483)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
jastarita@elias.law

Walker McKusick* (WA Bar No. 63205)
wmckusick@elias.law
**Elias Law Group LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-017
F: (206) 656-0180

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Proposed Intervenor-Defendants NAACP Conference of Idaho, Nevada, and Utah, Nevada Alliance for Retired Americans, Institute for a Progressive Nevada, and Jacqueline Sue Bird*

*Pro hac vice forthcoming*

MOTION TO INTERVENE AS DEFENDANTS

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December, 2025 a true and correct copy of Proposed Intervenors' Motion to Intervene as Defendants was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By:  _/s/ Daniel Bravo_
Daniel Bravo

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MOTION TO INTERVENE AS DEFENDANTS