AARON D. FORD
  Attorney General
GREGORY D. OTT (Bar No. 10590)
  Chief Deputy Attorney General
EMILY D. ESPINOSA (Bar No. 16853)
  Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
T:(775) 684-1195
F: (775) 684-1108
E: gott@ag.nv.gov
    edespinosa@ag.nv.gov

*Attorneys for Francisco Aguilar*
*in his Official Capacity as Secretary of*
*State for the State of Nevada*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cv-00728-ART-CLB |
| Plaintiff, | |
| vs. | |
| FRANCISCO V. AGUILAR, in his Official Capacity as Secretary of State for the State of Nevada, | **MOTION TO DISMISS** |
| Defendants | |

Defendant, Francisco Aguilar in his Official Capacity as Secretary of State for the State of Nevada ("the Secretary") by and through counsel Aaron D. Ford, Attorney General, Gregory D. Ott, Chief Deputy Attorney General, and Emily D. Espinosa, Deputy Attorney General, hereby files this Motion to Dismiss Plaintiff the United States of America's Complaint.

This Motion is made upon the following Memorandum of Points and Authorities, the pleadings and papers on file, and any other evidence or oral argument the Court deems appropriate to consider.

. . .

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff United States of America, through the Department of Justice ("DOJ"), seeks an order directing the Defendant Secretary of State ("the Secretary") to turn over a copy of Nevada's computerized voter registration list of its nearly 2.2 million registered voters. Complaint ("Compl.") ¶ 8. It demands Nevada do so "with all fields" of information associated with each individual voter's registration record. Compl. ¶ 8. Nevada law provides that any person may request a list of voters; however, that list cannot contain a voter's social security, driver's license, or identification card number. NRS 293.558(1)–(2)(a)–(b). Defendant offered to provide the publicly available list under its normal procedures but refused to disclose sensitive voter information without further review. Compl. Exhibit 2 ¶6–11. Notably, Plaintiff's request specifically was for an electronic copy of the information—a request which blatantly violates the very statutes it has cited in its Complaint. Nevada is not alone in this refusal. 24 other states, as well as the District of Columbia, have been sued by DOJ for taking the same position.

In its first count, DOJ invokes Title III of the Civil Rights Act of 1960 ("CRA"), a Civil Rights era tool that allows the Attorney General to make demands to inspect elections records to enforce voting rights laws. But DOJ fundamentally misunderstands this law's purpose and operation. To start, DOJ has not satisfied Title III's requirement that it provide a statement of the basis and the purpose for its records demand. Indeed, DOJ could not do so, because it is not seeking records for a purpose consistent with Title III's narrow scope. Finally, Title III does not preempt Nevada's voter information protections. These laws serve as complementary aspects of the same statutory scheme.

The Complaint establishes that the DOJ is seeking data protected by the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act ("DPPA"), but in so asking they are violating each of those laws.

. . .

. . .

2

Each of these federal statutes preclude the DOJ from receiving the records it seeks, making it appropriate for the Court to put an end to the DOJ's improper claims now. The Court should therefore grant Nevada's Motion to Dismiss the Complaint without leave to amend.

## II.    BACKGROUND

Beginning in May of this year, DOJ's Civil Rights Division embarked on a project of requesting the full, unredacted copies of the voter registration rolls maintained from dozens of states across the country. While some States have voluntarily complied, most declined to turn over their constituents' sensitive personal data.

To date, DOJ has filed suit against 24 states and the District of Columbia to compel disclosure of the full, unredacted data in electronic form.[1] Nevada is among those states targeted by DOJ, and the subject of one of their 25 suits filed so far.

In June, DOJ sent its first letter to Secretary Aguilar demanding an electronic copy of Nevada's Statewide Voter Registration List ("SVRL") and also demanded that he answer several narrative questions about Nevada's practice related to unauthorized registrants. Compl. Exhibit 1 ¶ 2–4. A month later, the Secretary responded to these questions and provided a copy of Nevada's publicly available SVRL, as Nevada law provides that any

---

[1] *United States v. Bellows*, No. 1:25-cv-00468 (D. Me.) (filed Sep. 16, 2025); *United States v. State of Oregon*, No. 6:25-cv-01666) (D. Or.) (filed Sep. 16, 2025); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich.) (filed Sep. 25, 2025); *United States v. Board of Elections of the State of New York*, 1:25-cv-01338 (N.D.N.Y.) (filed Sep. 25, 2025); *United States v. Commonwealth of Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa.) (filed Sep. 25, 2025); *United States v. NH Secretary of State*, No. 1:25-cv-00371 (D.N.H) (filed Sep. 25, 2025); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn.) (filed Sep. 25, 2025); *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal.) (filed Sep. 25, 2025); *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md.) (filed Dec. 1, 2025); *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt.) (filed Dec. 1, 2025); *United States v. Albence*, No. 1:25-cv-01453 (D. Del.) (filed Dec. 2, 2025); *United States v. Amore*, No. 1:25-cv-00639 (D.R.I.) (filed Dec. 2, 2025); *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash.) (filed Dec. 2, 2025); *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M.) (filed Dec. 2, 2025); *United States v. Alexander*, No. 1:25-cv-07084 (N.D. Ga.) (filed Dec. 11, 2025); *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass.) (filed Dec. 11, 2025); *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo.) (filed Dec. 11, 2025); *United States v. Nago*, No. 1:25-cv-00522 (D. Haw.) (filed Dec. 11, 2025); *United States v. Evans*, No. 1:25-cv-04403 (D.D.C.) (filed Dec. 18, 2025); *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill.) (filed Dec. 18, 2025); *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga.) (filed Dec. 18, 2025); *United States v. Wisconsin Elections Commission*, No. 3:25-cv-01036 (W.D. Wis.) (filed Dec. 18, 2025); *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz.) (filed Jan. 6, 2026); *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn.) (filed Jan. 6, 2026); *United States v. Beals*, No. 3:26-cv-00042 (E.D. Va.) (filed Jan. 16, 2026).

person may request a list of voters.  NRS 293.558(1)–(2)(a)–(b).  However, Nevada law prohibits providing any entity with a voter's social security, driver's license, or identification card number, and, accordingly, the Secretary redacted this information.  *Id.*  In a follow up letter dated August 14, 2025, DOJ demanded Nevada provide its statewide voter registration list "with all fields" of information associated with each individual voter's registration record, including the sensitive information protected by NRS 293.558(1)–(2)(a)–(b).

On August 21, 2025, the Secretary responded to DOJ's letter but did not include the unredacted SVRL.  Compl. Exhibit 4 ¶ 22–23.  DOJ responded by filing this lawsuit—and more than 20 other such lawsuits across the nation.

## III.    LEGAL STANDARD

"A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for lack of subject matter jurisdiction if "the allegations contained in a complaint are insufficient on their face to invoke [the court's] jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); Fed. R. Civ. P. 12(b)(1).

## IV.    ARGUMENT

This Court should dismiss DOJ's claims.  First, DOJ's CRA claim fails because DOJ has not validly requested information relating to a civil rights investigation under the CRA.  Additionally, DOJ has not complied with the Privacy Act of 1974 or the E-Government Act, which are a prerequisite for the federal government to collect the requested information.

### A.    DOJ has failed to assert cognizable legal claims.

#### 1.    DOJ fails to state a claim under the CRA.

Title III was "designed to secure a more effective protection of the right to vote."  *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961).  In furtherance of this purpose,

Title III imposes document retention requirements on elections officials: "[e]very officer of election," or designated custodian, "shall retain or preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . ." 52 U.S.C. § 20701; *id.* § 20706.

If certain conditions are met, DOJ may inspect these records. *Id.* § 20703. As relevant here, the Attorney General must present with the request "a statement of the basis and purpose therefor." *Id.* Title III also includes an enforcement mechanism to compel production of these records. The district court located where the written demand is made, or where the records are located, has "jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

DOJ has failed to provide "a statement of the basis *and* the purpose therefor," as required by law. 52 U.S.C. § 20703 (emphasis added); *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) ("[W]hen 'and' is used to join two concepts, it is usually interpreted to require 'not one or the other, but both.'"). Both DOJ and courts have long treated "purpose" and "basis" separately. *See Kennedy v. Lynd*, 306 F.2d 222, 231 n.6 (5th Cir. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

As an initial matter, DOJ offers no statement of the purpose and the basis for its demand for unredacted copies of the SVRL. As for its demand for Nevada's entire voter registration list, DOJ alleges that it made a proper demand in its August 14, 2025 letter to the Secretary, where it wrote that the "statement of the basis and the purpose" of its demand was "to assist in our determination of whether Nevada's list maintenance program complies with the NVRA." Compl Exhibit 3 ¶19. DOJ's statement amounts, at best, only to a statement of its purpose. *Purpose*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/purpose (defining "purpose" as "the reason something is done or used"). In contrast, a "basis" is "something on which something else is established or

5

based." *Basis*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/basis. DOJ's request fails to provide any statement of its grounds for suspecting that Nevada was violating the NVRA or to explain how the requested records are relevant to its inquiry. Allowing DOJ to obtain records without such a showing would contravene the canon against surplusage and nullify Congress's deliberate decision to impose this requirement. *In re Saldana*, 122 F.4th 333, 342–43 (9th Cir. 2024).

### 2. DOJ cannot invoke Title III to investigate issues unrelated to civil rights.

DOJ's demand for records also fails to satisfy Title III's requirements because the stated purpose falls outside the scope of the CRA. The CRA's text and history limit Title III to investigations of Civil Rights violations, namely, efforts to prevent *eligible* voters from registering to vote for illegal reasons like racial discrimination. As shown below, for the "statement of the basis and the purpose" of a Title III demand to be valid, it must relate to a Civil Rights investigation.

Title III's text provides that the "statement of the basis and the purpose" "shall" be included in a records demand, indicating it is an explicit requirement and precondition. *Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command . . . 'Shall' means 'must.'"). But some statements of basis and purpose—say, bases or purposes unrelated to voting at all—could not suffice because that would "sap the interpreted provision of all practical significance." *Pac. Coast Fed'n of Fishermen's Assocs., Inc. v. Nickels*, 150 F.4th 1260, 1271, 1273 (9th Cir. 2025). Indeed, "[i]t is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 201–02 (1979) (concluding that the prohibition against racial discrimination in . . . Title VII must therefore be read against the background of [its] legislative history . . . and the historical context from which the Act arose") (internal citation omitted); *Doe v. Kmaehameha Sch./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 846 (9th Cir. 2006) (applying *Weber*).

The Court therefore must read that text alongside Title III's context and history. *Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936, 941 (9th Cir. 2017). The overwhelming evidence shows that Title III of the CRA was enacted to facilitate investigation into Civil Rights violations related to discrimination in voting. A valid "statement of the basis and purpose," then, is one that relates to such an investigation.

Both congressional reports and President Eisenhower's signing statement indicate that the CRA focused on the "key constitutional right of every American, the right to vote without discrimination on account of race or color." Dwight D. Eisenhower, *Statement by the President Upon Signing the Civil Rights Act of 1960* (May 6, 1960), https://www.presidency.ucsb.edu/documents/statement-the-president-upon-signing-the-civil-rights-act-1960 ("*Civil Rights Act Statement*"). Title III was enacted to further that overarching goal of the CRA. The year before the CRA's enactment, the President's recommendations to Congress emphasized the "serious obstacle" that insufficient access to voter registration records posed to safeguarding the right to vote under the Civil Rights Act of 1957. Dwight D. Eisenhower, *Special Message to the Congress on Civil Rights* (Feb. 5, 1959), https://www.presidency.ucsb.edu/documents/special-message-the-congress-civil-rights-0. Once enacted, the President's signing statement recognized that Title III "requires the retention of voting records, [which] will be of invaluable aid in the successful enforcement of existing voting rights statutes." Eisenhower, *Civil Rights Statement*.

In fact, all contemporaneous records related to the CRA's enactment strongly indicate that Title III was enacted to build upon the Civil Rights Act of 1957. As a House committee report explained, "Title III is a necessary supplement to part IV of the Civil Rights Act of 1957," and "would implement Federal enforcement" of this prohibition. H.R. REP. NO. 86-956, at 26 (1959). And the congressional record repeatedly shows that Title III was meant to facilitate the enforcement of the voting rights protections codified in the Civil Rights Act of 1957. *See Rogers*, 187 F. Supp. at 853 (finding that the CRA's legislative history "leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote").

7

1  Courts construing Title III shortly after it was enacted confirm that its aim was to
2  facilitate protection of the right to vote through the Civil Rights Act of 1957 and the CRA
3  itself. *Lynd*, 306 F.2d at 228 (explaining that the Attorney General "is entitled to inspect
4  and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed
5  upon him by the Civil Rights Act of 1957 and 1960"). Valid statements of basis and purpose
6  from the time of enactment were "based upon information in the possession of the Attorney
7  General tending to show that discriminations on the basis of race and color have been made
8  with respect to registration and voting within your jurisdiction." *Id.* at 231 n.6; *In re*
9  *Coleman*, 209 F. Supp. at 199–200. Repeatedly addressing the issue, the Fifth Circuit "laid
10 down the rule that the government is entitled to have an order of the trial court authorizing
11 it to inspect the voting records" based on DOJ's "reasonable grounds for belief that certain
12 voters are being discriminatorily denied their voting rights in a given county." *United*
13 *States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

14     On January 15, 2026, the Southern Division of the Central District of California
15 dismissed the same claim brought by the DOJ against California—the first written[2]
16 decision to come out of the now 25 lawsuits the DOJ has filed against states in an attempt
17 to retrieve sensitive voter information. *U.S. v. Weber*, 2:25-cv-09149-DOC-ADS (C.D. Cal.)
18 (filed Jan. 15, 2026). Specifically, the *Weber* court determined that DOJ's Title III claims—
19 the same claims which are raised here—do not properly provide a basis and purpose as
20 required by statute, indicating those provided by the DOJ were "both lacking in depth" and
21 were "contrived." 2:25-cv-09149, at *13.

22 . . .

23 . . .

24 . . .

25

---

26     [2] On January 27, 2026, Judge Kasubhai in the District Court of Oregon issued a
   minute order indicating his intent to grant Oregon's Motion to Dismiss, and also indicated
27 he will soon be issuing a written opinion. *See* Claire Rush, "Federal judge dismisses Justice
   Department lawsuit seeking Oregon's voter rolls," OR. PUB. BROAD. (2026),
28 https://www.opb.org/article/2026/01/27/federal-judge-dismisses-justice-department-
   lawsuit-seeking-oregon-s-voter-rolls/.

In fact, the Court determined that DOJ was not being forthcoming with their true basis or purpose of the requested data, indicating that it was apparent that, in similar cases and in reports from federal agencies, "the federal government [is] laying the groundwork to amass the personal information of millions of Americans in a centralized database." *Id.*, at \*18–19. As is the case here, "[i]f the DOJ wants to instead use [the cited] statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose." *Id.*, at \*19.

Like in *Weber*, here DOJ has failed to allege any basis for its demand, let alone one stating a reason to believe that discrimination in voting is occurring in Nevada. And DOJ's alleged purpose is not valid either because DOJ has not articulated how its assessment of Nevada's compliance with 52 U.S.C. § 20507(a)(4) relates to an investigation into Civil Rights, and more specifically, discrimination in voting. Nothing in DOJ's Complaint or letters to the Secretary suggests that any of these kinds of allegations could be made.

### 3. DOJ is only entitled to in-person, redacted inspection of records covered by Title III.

Even if the Court concludes that Title III authorizes DOJ's demand, and that DOJ can satisfy the statement of the basis and the purpose requirement, DOJ may only inspect a redacted version of Nevada's voter registration list at the Secretary's office in Carson City.

DOJ is not entitled to inspect an unredacted version of Nevada's voter registration list, which includes voters' "state driver's license number, and the last four digits of their Social Security number." Compl. ¶ 8. Nevada, like most states, prohibits disclosure of sensitive information contained in voter registration records, including social security numbers, driver's license numbers, and contact information of confidential voters. *See* NRS 293.558 (1)–(2)(a)(2); (4). By claiming that unredacted disclosures are authorized by the CRA, DOJ maintains that these Nevada privacy laws are preempted by the CRA. Compl. ¶ 8. But because both statutory schemes can operate harmoniously, the CRA does not preempt the state laws protecting voters' sensitive information.

The Elections Clause gives States the power to regulate the time, place, or manner

of federal congressional elections, and it simultaneously gives Congress the power to "make or alter such [r]egulations." U.S. Const., art I, sec. 4, cl. 1; *Voting Rights Coal. V. Wilson*, 60 F.3d 1411, 1413–14 (9th Cir. 1995). This scheme gives Congress preemptive power over certain state election law, which is analyzed according to preemption principles specific to the Elections Clause. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 8–9, 13–15 (2013) (*ITCA*). Although there is no presumption against preemption for federal laws enacted by Congress under its Elections Clause power, *id.* at 13–15, courts must be attentive to the scope and limits of express requirements set out in federal statute. Congress's authority over federal elections supersedes state law only "so far as it is exercised, and no farther." *Id.* at 9 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)). IF the federal and state provisions can "operate harmoniously in a single procedural scheme," then the state statute is not preempted. *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012), *aff'd sub nom. ITCA*, 570 U.S. 1 (2013).

Here, Title III does not preempt Nevada's narrow confidentiality protections of voter's sensitive information for several reasons. Title III requires, in response to a proper demand, that the recordkeeper make available "all records . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §§20701, 20703. To start, Title III's text does not prohibit the redaction of sensitive voter information. *Cf. Pub. Int. Legal. Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (finding that "the appropriate redaction of uniquely or highly sensitive personal information in the voter file" was permissible where the NVRA did not prohibit such redactions). Moreover, Title III's purpose is to enable Civil Rights investigations into discrimination in voting, but there is no articulated connection between the sensitive voter information DOJ demands and an allegation of or investigation into discrimination in voting. Indeed, DOJ does not even explain why the sensitive voter information would be necessary to investigate Nevada's list maintenance procedures.

Finally, DOJ's demand that it be sent an electronic version of Nevada's statewide voter registration database is contrary to Title III's unambiguous text. Compl. ¶ 8. A valid

demand would require only that the records "be made available . . . *at the principal office of such custodian.*" 52 U.S.C. § 207030 (emphasis added).

### B.    DOJ has not complied with Federal Privacy Laws.

The Court may consider affirmative defenses at the Motion to Dismiss phase. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).  Specifically, the Court sees "some obvious bar to securing relief on the face of the complaint," it can dismiss based on an affirmative defense.  *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quotation omitted).  As demonstrated below, the Complaint's face reveals three "obvious bar[s]" to relief: failure to comply with the Privacy Act, the E-Government Act, and the DPPA.

### 1.    DOJ's hunt for data violates the Privacy Act.

The Privacy Act bars DOJ's claim, and the Court can resolve this gaping Privacy Act issue now.  "The Privacy Act exists to protect individuals from disclosure of government-collected information." *Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025).  The law accordingly erects "certain safeguards for an individual against an invasion of personal privacy."  Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974).  Among these safeguards, agencies are prohibited from collecting or maintaining records related to an individual's First Amendment activities (unless narrow exceptions apply), and they must follow specific procedures before they "maintain, collect, use, or disseminate" any group of records searchable by individual.  5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (f).

The Privacy Act applies to the detailed voter data requested by DOJ.  A covered "record" includes "any item, collections, or grouping of information about an individual that is maintained by an agency."  5 U.S.C. § 552a(a)(4).  The requested records pass the test, housing core personal information like addresses, party preference, voting participation history, and date of birth, *See* NRS 293.558(4) (indicating that a voter can opt-in to keep certain information confidential and withheld from the public), as well as sensitive personal identifying information protected as confidential under Nevada law such as driver's license numbers and social security numbers.    NRS 293.558(1)–(2)(a)–(b).    *See* Compl. ¶ 8

11

(requesting the SVRL "with all fields," including sensitive personal data). And DOJ's effort to seize those records through this suit, if allowed, will result in a covered collection of records. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate").

The Privacy Act thus squarely governs DOJ's records request here. As explained below, it precludes collection of this data for two reasons.

First, the Privacy Act bars federal agencies from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). DOJ's records request directly implicates that statutory bar: voter registration, party affiliation, and the choice to participate or not in an election are all forms of political expression protected by the First Amendment. *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression"); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69, 75–76 (1990) (the expression of political beliefs and association through political affiliation is protected by the First Amendment). No exception applies. No statute authorizes DOJ to maintain Americans' full, unredacted voter registration records. DOJ has not received the express authorization of the millions of voters whose records it seeks. And a point-in-time snapshot of the voter file is not pertinent to or within the scope of DOJ's purported investigation of Nevada's list maintenance program and practices under the NVRA and HAVA. *See* 52 U.S.C. § 20507(a)(4) (NVRA provision requiring states to "conduct a general program that makes a reasonable effort" to remove ineligible voters due to death or change in residence), cited in Compl. ¶ 5; 52 U.S.C. § 21083(a)(2), (a)(4) (parallel provision in HAVA), cited in Compl. ¶ 5. The complete voter registration applications DOJ requested likewise sit far afield from a legitimate investigation into list-maintenance practices. If a record "has at best only speculative relevance to an unstated law enforcement purpose," this exception is not satisfied. *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1299

(9th Cir. 2019).  Because no exception applies, the statutory bar on maintaining records on First Amendment activities prohibits DOJ from collecting the requested records.

Second, even if DOJ could somehow evade that First-Amendment-activity problem, heightened protections apply when an agency establishes or alters a "system of records," or "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier.  52 U.S.C. § 552a(a)(5), (e).  As relevant here, the Privacy Act requires the DOJ to publish a System of Records Notice ("SORN") in the Federal Register before "establish[ing] or revis[ing]" a "system of records." *Id.* § 552a(e)(4); *Brusseau v. Dep't of Homeland Sec.*, 2021 WL 3174248, at \*5 (E.D. Va. July 27, 2021).  DOJ seeks to knock down these guardrails.  Its attempt to obtain full, unredacted voter records from scores of states is a textbook example of a "system of records."  *See* 52 U.S.C. § 552a(a)(5).  The Complaint identifies no SORN allowing DOJ to collect this data, nor is Nevada aware of any applicable SORN.  This dooms DOJ's data-collection efforts under the Privacy Act—the Act's structure hinges on public notice and comment regarding the nature, scope, and routine uses of a system of records *before* the government bulk-collects Americans' data.  5 U.S.C. § 552a(e)(4)(D); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 763 (D. Md. 2025), *appeal docketed*, No. 25-1411 (4th Cir. Apr. 18, 2025).[3]

And with a Privacy Act issue this blatant, the Court can and should fix the problem now.  The Court may consider this Privacy Act issue on a Motion to Dismiss because the violations "are apparent on the face of the complaint."  *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).  DOJ seeks Privacy-Act-protected information, Compl. ¶ 8, but fails to include allegations about how this trawl for data would comply with that law.  Nor can this deficiency be cured.  DOJ is statutorily barred from collecting records,

---

[3] The Complaint's sole mention of the Privacy Act is the irrelevant observation that HAVA exempts "the 'last 4 digits of a social security number'" from section 6 of the Privacy Act of 1975.  Compl. ¶ 7 (quoting 52 U.S.C. § 21083(c)).  Section 7, an uncodified provision found at Pub. L. No. 93-579, 88 Stat. 1896 (1974), prohibits denying individuals "any right, benefit or privilege" due to their refusal to disclose a Social Security Number.  This provision has no bearing on whether DOJ can lawfully collect the records it seeks.

such as these, that describe individuals' protected First Amendment activity. *See* 5 U.S.C. § 552a(e)(7). And even if DOJ could collect such records, no SORN satisfies DOJ's rigorous procedural duties under the Act. *Id.* § 552a(e)(4). The Complaint's face thus illustrates the affirmative defense, allowing judicial resolution now.

### 2.    DOJ's data demand violates the E-Government Act.

For similar reasons, the Court should dismiss the Complaint for failure to comply with the E-Government Act, Pub. L. No. 107-347, § 208, 116 Stat. 2899 (2002). The E-Government Act requires federal agencies to conduct a "privacy impact assessment" ("PIA") prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id.* § 208(b). The PIA and its procedural requirements must be completed "*before* the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis original).

The face of the Complaint reveals that DOJ is seeking information protected by the E-Government Act. Compl. ¶ 8. The names, addresses, and sensitive voter information contained in the data and applications sought by DOJ fall in the heartland of the personal information protected by the Act, triggering the PIA requirement. *See* Pub. L. No. 107-347, § 208(b)(1)(A)(ii)(II); OMB Guidance, M-03-22 (Sep. 26, 2003), https://perma.cc/E6PW-YQTP, Att. A § II(a)(b), *id.* ¶ II(B)(a)(6). Yet the Complaint does not allege that DOJ completed a PIA applicable to this vast new trove of data on individual voters, requiring dismissal.

### 3.    DOJ's demand violates the Driver's Privacy Protection Act.

Finally, DOJ's demand also violates Driver's Privacy Protection Act ("DPPA") because Nevada's statewide voter registration database pulls sensitive voter information directly from the Nevada Department of Motor Vehicles ("DMV").

The DPPA prohibits disclosing "personal information" that is obtained by the DMV in connection with a motor vehicle record." 18 U.S.C. §§ 2721(a), 2725(1), (3), & (4); *Reno*

*v. Condon*, 528 U.S. 141, 143 (2000). This prohibition extends to authorized recipients, like the Secretary, who receives information from the DMV in carrying out his functions related to voter registration. 18 U.S.C. §§ 2721(b)(1), (c). In Nevada, the DMV electronically provides to the Secretary certain information associated with each person who applies for a driver's license, including completed voter registration applications. *See* NRS 293.57686(1); NRS 293.47688; *see also* 52 U.S.C. § 20504.

In its Complaint, DOJ alleges that its records demand is exempt from the DPPA because the requested disclosure here "is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as [DOJ] is now doing." Compl. ¶ 7 (citing 18 U.S.C. § 2721(b)(1)). This conclusory allegation is insufficient to plausibly allege the applicability of the DPPA's government use exception. The DPPA's inclusion of the phrase "[f]or use" dictates the critical inquiry—i.e., whether "the actual information disclosed . . . is *used* for the identified purpose." *Senne v. Vill. Of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc). "When a particular piece of disclosed information is not *used* to effectuate that purpose in any way, the exception provides no protection for the disclosing party." *Id.* (emphasis original).

Here, as discussed above, assessing compliance with 52 U.S.C. § 20507(a)(4), Compl. ¶ 5, turns on *whether* Nevada conducts a general program that makes a reasonable effort to remove persons due to death or change in residence. *See supra*, pp. 15–16. It is implausible that driver's license numbers for millions of registered voters would be *used* for that purpose. Moreover, DOJ certainly has not alleged how it intends to use the driver's license numbers. Thus, DOJ's unbounded request exceeds the scope of the DPPA's government-function exception.

## V.    CONCLUSION

For the foregoing reasons, DOJ's Complaint fails as a matter of law. DOJ has not satisfied the statutory prerequisites for its demand under Title III of the Civil Rights Act of 1960, and its request exceeds the scope and purpose of that statute. Moreover, DOJ's claims are barred by multiple federal privacy laws—the Privacy Act, the E-Government

Act, and the Driver's Privacy Protection Act—which prohibit the collection and disclosure of the sensitive personal information DOJ seeks.

Because these defects are apparent on the face of the Complaint, Defendant respectfully requests that the Court grant its Motion to Dismiss the Complaint.

Respectfully submitted this 28th day of January 2026.

AARON D. FORD
Attorney General

By: /s/ *Emily D. Espinosa*
EMILY D. ESPINOSA
 Deputy Attorney General
Nevada Bar No. 16853
Office of the Attorney General
100 N. Carson Street
Carson City, Nevada 89701
(775) 684-1195
edespinosa@ag.nv.gov

*Attorneys for Francisco Aguilar*
*in his Official Capacity as Secretary of*
*State for the State of Nevada*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on January 28, 2026, I filed the foregoing document ***Motion to Dismiss*** via this Court's electronic filing system. Parties that are registered with this Court's EFS will be served electronically.

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC NEFF
Acting Chief, Voting Section
Civil Rights Division

BRITTANY E. BENNETT
Trial Attorney, Voting Section
Civil Rights Division

U.S. DEPARTMENT OF JUSTICE
4 Constitution Square
150 M. Street, Room 8.141
Washington, D.C. 20002
Tel: (202) 704-5430
Brittany.Bennett@usdoj.gov

SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar No. 8264
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Sigal.Chattah@usdoj.gov

*Attorneys for Plaintiff, UNITED STATES OF AMERICA*

/s/ *Mark Cryer*
AG Legal Secretary