David R. Fox (NV Bar No. 16536)
Julianna D. Astarita* (DC Bar No. 90041368)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
jastarita@elias.law

Walker McKusick* (WA Bar No. 63205)
wmckusick@elias.law
**Elias Law Group LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Proposed Intervenor-Defendants NAACP Conference of Idaho, Nevada, and Utah, Nevada Alliance for Retired Americans, Institute for a Progressive Nevada, and Jacqueline Sue Bird*

*Admitted pro hac vice

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRANCISCO AGUILAR, in his official capacity as Nevada Secretary of State, <br><br> Defendant. | Case No. 3:25-cv-00728-ART-CLB <br><br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

PROPOSED INTERVENORS'
REPLY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.      The motion to dismiss is appropriate under the Federal Rules of Civil Procedure. ........... 2

II.     The Court must review the lawfulness of DOJ's demand. .................................................. 4

III.    DOJ is not entitled to the voter list because it failed to provide an adequate basis and purpose under the CRA. ............................................................................................ 5

       A.     DOJ did not provide any statement of the basis for its demand. ............................ 6

       B.     DOJ did not provide a legally sufficient purpose for its demand. .......................... 7

IV.    Title III does not prohibit redaction of sensitive voter information.................................... 9

V.     DOJ's failure to comply with the Privacy Act is further grounds for dismissal................ 12

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ................................................................................. 7

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ............................................................................................................ 10

*Bostock v. Clayton Cnty.*,
    590 U.S. 644 (2020) ........................................................................................................ 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ..................................................................................... 4, 5

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ........................................................................................ 4, 7

*Coalition for Open Democracy v. Scanlan*,
    No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025) .................. 11

*Coleman v. Kennedy*,
    313 F.2d 867 (5th Cir. 1963) .......................................................................................... 6

*Compton Unified Sch. Dist. v. Addison*,
    598 F.3d 1181 (9th Cir. 2010) ........................................................................................ 7

*Dinkens v. Att'y Gen. of U.S.*,
    285 F.2d 430 (5th Cir. 1961) .......................................................................................... 7

*In re Cervantes*,
    219 F.3d 955 (9th Cir. 2000) .......................................................................................... 6

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962) ............................................................................... 6

*Jones v. Bock*,
    549 U.S. 199 (2007) ....................................................................................................... 12

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ............................................................................. 3, 5, 6, 10

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ............................................................................................. 10

*Smith v. City of Jackson*,
	544 U.S. 228 (2005) ............................................................................................... 11

*United States v. Benson*,
	--- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ................................................................................................................ 1, 3, 5

*United States v. Mo. Pac. R.R. Co.*,
	278 U.S. 269 (1929) ................................................................................................. 8

*United States v. Oregon*,
	No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................................. passim

*United States v. Powell*,
	379 U.S. 48 (1964) ......................................................................................... 1, 3, 4, 5

*United States v. Weber*,
	--- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ................................................................................................................. passim

*Whitman v. Am. Trucking Ass'ns*,
	531 U.S. 457 (2001) ................................................................................................. 8

**Federal Statutes**

5 U.S.C. § 552a(a)(3) ........................................................................................................ 12

26 U.S.C. § 7602 ................................................................................................................ 4

26 U.S.C. § 7604(a) ........................................................................................................... 3

52 U.S.C. § 20507(i)(1) .................................................................................................... 11

52 U.S.C. § 20703 ................................................................................................. 2, 4, 5, 11

52 U.S.C. § 20705 ..................................................................................................... 3, 4, 5

Nev. Rev. Stat. § 239.010(3) ............................................................................................ 10

Nev. Rev. Stat. § 293.440(1) ............................................................................................ 10

LR 7-2(b) ............................................................................................................................ 1

**Other Authorities**

Antonin Scalia & Brian A. Garner, *Reading Law* (2012) ................................................. 7

*Basis*, Black's Law Dictionary (4th ed. 1968) .................................................................................. 6

Comment, *Judicial Performance in the Fifth Circuit*, 73 Yale L.J. 90 (1963) ............................... 3

Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026),
https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud/ .................................................................................................................... 1

*Read Bondi's Letter to Minn. Governor*, N.Y. Times (Jan. 24, 2026),
https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html .............. 1

# INTRODUCTION[1]

This lawsuit is part of a relentless pressure campaign by the U.S. Department of Justice ("DOJ") to obtain full, unredacted statewide voter lists containing the sensitive personal information of every voter from States across the country. DOJ has sent demand letters to nearly every State and filed dozens of lawsuits nearly identical to this one seeking to compel the production of such voter lists. DOJ has resorted to extraordinary measures to coerce those States into complying, including a recent letter in which the Attorney General demanded that the Minnesota Governor provide DOJ with the voter list as an apparent condition for withdrawing thousands of federal agents from Minneapolis,[2] and recent statements from President Trump urging Republicans to "take over the voting . . . in at least 15 places" and to "nationalize the voting."[3] Every federal court to reach a decision in parallel cases has recognized the illegality of this effort and granted motions to dismiss. *See generally United States v. Weber*, --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026).

DOJ's opposition only confirms that this Court should dismiss this action, too.[4] DOJ's threshold argument that the motions to dismiss are procedurally improper relies primarily on a 1962 Fifth Circuit decision that is irreconcilable with subsequent Supreme Court precedent construing a statute with identical operative text. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). Its merits argument is also not well founded. The Court should grant the motions to dismiss

---

[1] Proposed Intervenors request that the Court accept this Reply in Support of their Motion to Dismiss in the event that the Court grants their Motion to Intervene, ECF No. 7.

[2] *Read Bondi's Letter to Minn. Governor*, N.Y. Times (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.

[3] Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026), https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud/.

[4] DOJ calls its brief a consolidated opposition to the motions to dismiss and a reply in support of its motion to compel. To the extent that the brief is a reply in support of its motion to compel, it was filed a week too late. *See* LR 7-2(b). The Proposed Intervenors therefore treat the entire brief as responsive to the motion to dismiss, and respond accordingly.

- 1 -

because DOJ failed to satisfy the core statutory requirement that it provide both "the basis and the purpose" for its demand under Title III of the Civil Rights Act of 1960 ("CRA"). 52 U.S.C § 20703. In its opposition, DOJ does not identify *any* "basis" for the demand aside from the CRA itself. DOJ instead argues, in the teeth of the statutory text, that it may demand records "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." ECF No. 49 ("DOJ Opp.") at 6 n.3 (quoting *United States v. Bisceglia*, 420 U.S. 141, 148 (1975)). But in expressly requiring that "the basis and the purpose" be provided in any request for production of voter information, the CRA demands more. And DOJ's stated purpose—to investigate Nevada's compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is not a valid purpose under the CRA, which is concerned with protecting the constitutional right to vote rather than with enforcing election administration rules.

Two other independent reasons require dismissal here: (1) Nevada law prohibits the disclosure of the sensitive information DOJ seeks, and the CRA does not preempt these privacy laws; and (2) DOJ failed to comply with prerequisites imposed by the federal Privacy Act before it can collect the data it seeks. In response to both issues, DOJ simply asserts its position without any legal argument. It suggests that the CRA preempts Nevada's law—but conducts no preemption analysis in its brief. And while DOJ claims that it complied with the Privacy Act, it never even tries to explain how any particular notice of use it relies on could conceivably be read to encompass Nevada's entire statewide voter list. For all of these reasons, this suit should be dismissed.

## ARGUMENT

### I. The motion to dismiss is appropriate under the Federal Rules of Civil Procedure.

DOJ's lead argument—that a motion to dismiss is procedurally improper in a Title III proceeding because the Federal Rules of Civil Procedure do not apply—is squarely foreclosed by Supreme Court precedent and has been recently rejected by both federal courts in this circuit that have considered it. *See Weber*, 2026 WL 118807, at *8 (holding that DOJ's parallel lawsuit in California was governed by Federal Rules before proceeding to evaluate and grant motions to dismiss); *Oregon*, 2026 WL 318402, at *8 ("the Court applies the Federal Rules of Civil Procedure

- 2 -
PROPOSED INTERVENORS' REPLY

as in any other case"). In advancing this argument, DOJ relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and a handful of other out-of-circuit civil-rights-era cases from the early 1960s. *See* DOJ Opp. 5–6. But as Proposed Intervenors have explained, and as both *Weber* and *Oregon* recently held, those cases are wholly irreconcilable with the Supreme Court's subsequent decision in *Powell*. *See* ECF No. 37 ("MTC Opp.") at 3–4.

In arguing otherwise, DOJ points to its third and most recent loss on these issues, in Michigan. *See Benson*, 2026 WL 362789, at *7. But *Benson*, too, granted Rule 12(b)(6) motions—so it cannot possibly have held that such motions are improper in cases like these. *See id.* at 2, 7 ("[T]he Court will apply the Rule 12(b)(6) standard to evaluate the United States' CRA claim."). DOJ also protests that *Powell* involved a different statute and that, in contrast, "Congress has indicated that the Federal Rules of Civil Procedure are inapplicable" to the CRA. DOJ Opp. 6–7. But DOJ points to no such indication in the text of the CRA, nor can it, because Congress was silent as to the "appropriate process." 52 U.S.C. § 20705. And *Powell* held that because 26 U.S.C. § 7604(a) "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." 379 U.S. at 58 n.18 (emphasis added). The relevant text of the statute construed in *Powell* was *identical* to the relevant part of the CRA—both provide that district courts "shall have jurisdiction by appropriate process to compel" the production of the records the government seeks. *See* 26 U.S.C. § 7604(a); 52 U.S.C. § 20705. The same conclusion must be true for the CRA's identical text. To the extent that *Lynd* suggests courts do not apply the Federal Rules to a government document demand, that is simply not the law,[5] and Proposed Intervenors' motion to dismiss under Rule 12(b)(6) is procedurally proper.

---

[5] DOJ also fails to address or even acknowledge the many significant differences between the facts and context of *Lynd* and those of DOJ's current grab for voter lists throughout the country, which raise doubts about DOJ's intentions. *See* MTC Opp. 6–7; *see generally* DOJ Opp. Instead, in *Lynd*, it was the district court—not DOJ—that the Fifth Circuit doubted and admonished for the "interminable proceeding" that delayed DOJ's request for "over 18 months." *Lynd*, 306 F.2d at 227. The lower court's "basic misconception" was to entertain extreme "procedural device[s] [and] maneuver[s]" by the state, *id.* at 225–26, delays that are in no way present here. Such delays explain, in part, *Lynd*'s exasperation with the procedure below. *Cf.* Comment, *Judicial Performance in the Fifth Circuit*, 73 Yale L.J. 90, 93–94 (1963) ("The delays occasioned in

## II. The Court must review the lawfulness of DOJ's demand.

DOJ is also wrong to argue that this Court cannot conduct meaningful judicial review of its demand. The CRA is unequivocal: any demand by DOJ under the CRA "*shall* contain a statement of *the basis and the purpose* therefor." 52 U.S.C. § 20703 (emphasis added). When the government comes to court to compel the production of records, courts routinely review the lawfulness of the government's demand. *See, e.g.*, *Powell*, 379 U.S. at 57 (holding that the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose"); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand). Judicial review does *not* rest upon "specific[] authoriz[ation]" by statute, as DOJ claims. DOJ Opp. 7. Instead, as *Powell* explains, it flows from the fact that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." 379 U.S. at 58. Contrary to DOJ's argument, *see* DOJ Opp. 7–8, this holding is not limited to IRS records requests under 26 U.S.C. § 7602—it extends to investigative tools more broadly. *See, e.g.*, *Source for Pub. Data, L.P.*, 903 F.3d at 458–60 (civil investigative demand issued by CFPB); *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 690 (D.C. Cir. 2017) (same).

DOJ cites specific language from *Powell* to suggest that the Supreme Court constrained review of government demands. DOJ Opp. 8 ("'[t]here is no intimation in the legislative history that Congress intended the courts to oversee the Commissioner's determinations to investigate'") (quoting *Powell*, 379 U.S. at 56–57). But this passage is taken from *Powell*'s discussion of evidentiary standards (section "II," *Powell*, 379 U.S. at 52), not its separate discussion of what a court *should* review (section "III," *Powell*, 379 U.S. at 57). In the former, the Supreme Court held that the text and legislative history of the statute, which limited "unnecessary examination or investigations," 52 U.S.C. § 20705(b), did not require the IRS to meet a probable cause standard

---

*Meredith* and *Lynd*, and caustically noted by the appellate court, do not appear to be accidental or limited; they are a generic feature of civil rights litigation in the deepest south . . . ." (citing *United States v. Lynd*, 301 F.2d 818, 820 (5th Cir. 1962))).

- 4 -
PROPOSED INTERVENORS' REPLY

1  for a court to issue a summons. *Powell*, 379 U.S. at 57. But the Court did not mention 52 U.S.C.
2  § 20705(b) or any part of the statute when explaining the proper review of a government demand
3  under the Federal Rules. *See id.* at 57–58. Evidentiary standards are not at issue here. This quoted
4  language from *Powell*, therefore, does not constrain the court's review. Again, it is the invocation
5  of a court's process that triggers judicial scrutiny. *See* MTC Opp. 5 (collecting cases).

6  And, in fact, the text of the CRA *does* impose limitations on investigations, including the
7  express requirement that the demand state "the basis and the purpose" for the government's
8  request. 52 U.S.C. § 20703. Even under the *Lynd* court's understanding of the law, under the CRA,
9  a court must decide "whether the written demand has been made" according to "§ [20703]." 306
10 F.2d at 226. The Court must therefore conduct a meaningful review of DOJ's demand for Nevada's
11 voter list to determine whether it satisfies the CRA. *See, e.g.*, *ACICS*, 854 F.3d at 690 (declining
12 to enforce civil investigative demand where agency failed to comply with statutory requirements).
13 Courts have done so in all recent challenges to DOJ's parallel demands of other states. *See Weber*,
14 2026 WL 118807, at *8–10 (holding that "DOJ has not complied with Title III of the CRA and
15 has provided an inadequate statement of basis and purpose" and dismissing claim as a result);
16 *Oregon*, 2026 WL 318402, at *7–10 (reviewing and concluding "Plaintiff's demand for records is
17 deficient"). That includes *Benson*, on which DOJ relies: while the reasons for dismissal in *Benson*
18 were different from those in *Weber* and *Oregon*, they were equally fatal to DOJ's claim. *See* 2026
19 WL 362789 at *9–11. Even *Benson*'s conception of a "limited" role for courts in reviewing CRA
20 demands—a conception rejected by both district courts in this circuit to recently consider it—left
21 the court with ample authority to review the lawfulness of DOJ's demand and to reject it as
22 unlawful, as *Benson* in fact did. *Id.* at *11.

23 **III.    DOJ is not entitled to the voter list because it failed to provide an adequate basis and**
24 **purpose under the CRA.**

25 DOJ's demand for Nevada's statewide voter registration list fails to satisfy the CRA's
26 express statutory requirement to provide a statement of "the basis *and* the purpose for" its demand.
27 *See* 52 U.S.C. § 20703 ("This demand shall contain a statement of the basis *and* the purpose

therefor.") (emphasis added); *see also* ECF No. 39 ("Mot. Dismiss") at 7–13.

**A.     DOJ did not provide any statement of the basis for its demand.**

As Proposed Intervenors have explained, DOJ failed to include *any* statement of the "basis" for its demand in its August 14, 2025 letter to Secretary Aguilar. *See* Mot. Dismiss 11. In its opposition, DOJ puzzlingly asserts that "the basis for the demand was Title III of the Civil Rights Act of 1960 (CRA)." DOJ Opp. 4; *see also id.* at 15 ("For the basis, the letter specifically cited Section 303 of the CRA"). But that is the *authority* under which the request was purportedly made, not the factual *basis* for the request. *See, e.g., Basis, Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). The CRA cannot be the "basis" for a CRA demand under the statute—if it could, the statutory requirement to provide the "basis" would be superfluous, as any CRA demand is necessarily issued under the CRA. *See In re Cervantes*, 219 F.3d 955, 961 (9th Cir. 2000) ("We have consistently invoked this rule to reject interpretations that would render a statutory provision surplusage or a nullity"). A mere reference to the statute therefore cannot suffice. *Contra* DOJ Opp. 16; *see also Oregon*, 2026 WL 318402, at *9 ("Reading 'basis' in the way Plaintiff suggests collapses its meaning with that of 'purpose.'").

Even the civil-rights-era cases that DOJ relies on show that DOJ has historically understood this requirement to call for an accounting of the factual basis for its investigation. *See, e.g., Lynd*, 306 F.2d at 229 n.6 ("This demand is *based upon* information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.") (emphasis added); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (similar); *see also Oregon*, 2026 WL 318402, at *9 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute."). In contrast, DOJ's fishing expedition here, whose purpose (in DOJ's own words) is to "ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA," with no hint or suggestion of a "possible" violation of any law, falls short of meeting this standard. Mot. to Compel Production,

- 6 -
PROPOSED INTERVENORS' REPLY

Ex. 3, ECF No. 3-1 at 19; *see also* Mot. Dismiss 11.

DOJ also asserts that the factual support for its purported basis cannot be challenged, *see* DOJ Opp. 16, but factual support is not the issue because DOJ's demand failed to provide *any basis at all* and therefore undeniably failed to specify "the basis . . . for" its demand. That by itself is sufficient to require dismissal. *See, e.g.*, *Source for Pub. Data*, 903 F.3d at 460 (declining to enforce civil investigative demand because "[an agency] must comply with statutory requirements, and here it did not"); *Weber*, 2026 WL 118807, at *9 (holding that DOJ failed to "establish[] the basis for its request" because it failed to explain why it believed California violated the NVRA or why the voter registration list was necessary for its investigation); *Oregon*, 2026 WL 318402, at *9 (similar). Indeed, even DOJ concedes that the CRA allows the Court to review whether the Attorney General made "a written demand . . . stating the basis and purpose." DOJ Opp. 2. Here, the Attorney General made no such demand. Accordingly, its CRA claim fails.

### B. DOJ did not provide a legally sufficient purpose for its demand.

DOJ's demand also fails to satisfy Title III's separate "purpose" requirement, an independent basis for dismissal. Congress enacted Title III "to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"). But DOJ is not seeking Nevada's voter list because it suspects any specific violations of federal law or infringement of the right to vote. Rather, DOJ's opposition confirms that DOJ seeks the list to assess Nevada's compliance with the administrative requirements of the NVRA and HAVA. *See* DOJ Opp. 15. As explained, this is not a sufficient purpose under Title III. *See* Mot. Dismiss. 7–10.

DOJ's opposition contends that CRA investigations cannot be limited to those based on racial discrimination or violations of the right to vote. DOJ Opp. 11. But DOJ's argument ignores that, when construing the "purpose" requirement, courts "read statutes as a whole." *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1184 (9th Cir. 2010); *see also* Antonin Scalia &

- 7 -
PROPOSED INTERVENORS' REPLY

Brian A. Garner, *Reading Law* 145 (2012) ("The text must be construed as a whole."). DOJ also ignores the well-established principle that courts must "account for both the specific context in which . . . language is used and the broader context of the statute as a whole." Mot. Dismiss 9 (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (citation modified)).

Here, the term "purpose" must be read in the context of the CRA—a law designed to enhance DOJ's enforcement powers for the protection of *civil rights* provided by the Civil Rights Act of 1957. *See id.* at 9–10; *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 655 (2020) (interpreting Title VII of the Civil Rights Act of 1964 by "orient[ing] ourselves to the time of the statute's adoption"); *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) ("the reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used"). To do otherwise would be to assume Congress intended for DOJ to be able to demand state election records for the purpose of investigating compliance with *any* federal statute, even if those statues dealt with subjects as far afield from the CRA as antitrust, bankruptcy, or admiralty law. Had Congress intended such a sweeping result, it surely would have said so explicitly. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

As Proposed Intervenors have noted, DOJ has not cited any case in which a court has granted a demand made under the CRA for the purpose of assessing States' NVRA or HAVA compliance.[6] *See* Mot. Dismiss 10. DOJ now contends that it "has pursued successful matters" to obtain voter lists under the CRA for this purpose. DOJ Opp. 18 & n.9. But, in the first matter it cites, Georgia entered a consent decree with DOJ immediately after DOJ sued to "resolv[e] this matter without the need for litigation," and in the second, Texas chose to enter a Memorandum of Understanding with DOJ without any litigation. *See id.*, Neff Decl., Exs. 6–8, ECF No. 49-1. In

---

[6] DOJ quotes the National Commission on Federal Election Reform at length in an attempt to buttress its demand pursuant to HAVA. DOJ Opp. 12–13 (citing Neff Decl., Ex. 11, ECF No. 49-1). While Congress may have heeded the Commission by enacting HAVA—and by "placing the core responsibilities for voter registration in the hands of state governments," Neff Decl., Ex. 11 at 30—that does not help explain DOJ's authority under Title III of the CRA, a separate statute enacted decades earlier. *See* Mot. Dismiss 2–3, 15.

- 8 -

PROPOSED INTERVENORS' REPLY

neither of the instances was the applicability of the CRA contested or resolved by a court.

Even if assessing NVRA or HAVA compliance could be a valid purpose, Nevada's full and unredacted voter list is neither helpful nor necessary for this purpose because it cannot tell DOJ anything about the list maintenance *procedures* Nevada undertook. *See* Mot. Dismiss 12–13. DOJ's only answer is to repeatedly insist it needs the data "so as to assure [itself] . . . that reasonable list maintenance efforts have been practiced." DOJ Opp. 18–19; *see also id.* at 6. But this just begs the question about the relationship between a static snapshot of the voter list and Nevada's procedural obligations under the NVRA and HAVA, further undermining DOJ's claim. *See Weber*, 2026 WL 118807, at *9 ("even if compliance with the NVRA was a valid purpose, the DOJ states no reason why an unredacted version of California's voter list is necessary under the NVRA").

Finally, DOJ's claim must also be dismissed because, whatever the propriety of its stated purpose, there is ample evidence that it was not its true purpose. *See* Mot. Dismiss 13. As noted, the 1960s-era cases that DOJ relies on all involved situations where Title III was unquestionably being used for its stated purpose—investigating the potential denial of voting rights—so there was no need for any such inquiry. *See* Mot. Dismiss 10 n.11. Here, the context is very different. And, as sister courts in the Ninth Circuit have observed, courts need not accept "contrived" rationales, particularly when DOJ's own public statements have repeatedly made clear that its purposes go "beyond [its] purported compliance check with the NVRA and into the territory of comprehensive data collection." *Weber*, 2026 WL 118807, at *10 (citing *Dep't of Commerce v. New York*, 588 U.S. 752, 756 (2019)); *see also Oregon*, 2026 WL 318402, at *11 ("The presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds.").

**IV.  Title III does not prohibit redaction of sensitive voter information.**

DOJ's complaint must also be dismissed because Nevada is entitled to redact sensitive personal information from any production of the statewide voter list, including if produced in response to a demand under the CRA. *See* Mot. Dismiss 13–16. DOJ does not contest that Nevada

law protects such information. *See generally* DOJ Opp.; *see also* Nev. Rev. Stat. §§ 293.440(1)–(2), 239.010(3). The only question is whether the CRA preempts these laws and demands the production of sensitive information to begin with. It does not.

*First*, as previously noted, the chief case on which DOJ relies itself makes clear that Title III is intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added); *see also* Mot. Dismiss 15. DOJ entirely fails to address or even acknowledge this. *See* DOJ Opp. 19–22.

*Second*, Title III does not preempt Nevada's privacy laws protecting the information at issue. *See* Mot. Dismiss 13–16. DOJ suggests in one sentence that the CRA preempts such laws—but it entirely fails to make any argument to this effect or to conduct any preemption analysis. *See* DOJ Opp. 3. Congress may preempt state election law, but that power extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). Where Congress has not spoken on an issue, state law controls. *See id.* And the federal laws regulating voter registration sit "atop state voter-registration systems"—they do not displace them. *Id.* at 5. Nothing in Title III specifically addresses state-law confidentiality protections for especially sensitive data, and *Lynd* shows that it was understood from the start as reaching "public records" rather than "confidential, private papers and effects." 306 F.2d at 231. Indeed, the private information sought here was not even required to be provided on registration forms until well after the enactment of Title III, which means Congress could not have intended it to require disclosure of that information. *See* Mot. Dismiss 15–16. And as Proposed Intervenors have explained, even the NVRA—one of the underlying laws that DOJ is supposedly enforcing through this demand—allows states to redact sensitive voter information before permitting the inspection of voter files. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

*Third*, the overwhelming judicial consensus that redaction is permitted under the NVRA reinforces that it should also be permitted under the CRA. *See* Mot. Dismiss 14–15. The NVRA and the CRA should be interpreted similarly because they address closely related subjects and

Congress used markedly similar language in crafting those enactments. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); Scalia & Garner at 252 ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously.").[7] A straightforward application of that principle dooms DOJ's claim. Numerous courts have held that the NVRA does not prohibit States from redacting precisely the information that DOJ demands here. *See, e.g.*, Mot. Dismiss 14 (collecting cases); *Weber*, 2026 WL 118807, at *12–13 (noting that DOJ conceded that States are entitled to redact sensitive voter information under the NVRA in briefs as recently as 2023); *Oregon*, 2026 WL 318402, at *12 (finding redaction "appropriate and permissible"). Because the NVRA and Title III should be interpreted similarly with respect to demands for the information at issue, Title III cannot be read to preempt state privacy laws that prohibit the disclosure of highly sensitive voter information. It would make little sense to conclude that the CRA demands that Nevada provide sensitive information for purposes of allowing DOJ to assess the State's NVRA compliance, when the NVRA itself does not require production of that information. DOJ, once again, has no answer to this, and this too is another independent basis for dismissal.[8]

---

[7] Both Title III and the NVRA require disclosure of certain records relating to voter registration, and they employ similar language to do so. *Compare* Title III, 52 U.S.C. § 20703 (covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* NVRA, 52 U.S.C. § 20507(i)(1) (requiring that States "shall make [covered voting records] available for public inspection").

[8] There is also no merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested." DOJ Opp. 22. To the contrary, in the case DOJ cites, *Coalition for Open Democracy v. Scanlan*, No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025), the court excluded social security numbers and other confidential information, and entered a protective order strictly limiting who can view the limited information that was produced, how they can view it, and for what purposes. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), ECF Nos. 87 & 87-1. Despite having been told this in several parallel cases, *see, e.g.*, Reply Br. Supp. Mot. Intervene, *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS (C.D. Cal. Nov. 3, 2025), ECF

**V.     DOJ's failure to comply with the Privacy Act is further grounds for dismissal.**

Finally, DOJ's claim must also be dismissed because DOJ has failed to comply with the Privacy Act. *See* Mot. Dismiss 16–19. DOJ contends that because the Privacy Act regulates only federal agencies, it "does not restrict the ability of state actors to share information with federal agencies." DOJ Opp. 24. But this ignores the central point: the Privacy Act imposes a statutory prerequisite on DOJ, which DOJ has not satisfied. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate"). That the Privacy Act does not regulate state entities is irrelevant, because it bars *DOJ* from obtaining the relief it seeks in this action. *See Weber*, 2026 WL 118807, at *17–18 (holding DOJ's request for California's voter list violated Privacy Act in granting motion to dismiss).

DOJ next insists that it is not required to plead compliance with the Privacy Act, DOJ Opp. 23, but that too is beside the point. It is well established that a motion to dismiss may be granted when the "allegations in the complaint suffice to establish" "the basis for dismissal." *Jones v. Bock*, 549 U.S. 199, 215 (2007). As DOJ does not contest, it was required to publish a System of Records Notice ("SORN") that would apply to Nevada's statewide voter list before it could collect that information. *See* Mot. Dismiss 17–18. Instead, it cites to a table of every SORN ever issued by DOJ. *See* DOJ Opp. 23 (citing 82 Fed. Reg. 24147 (May 25, 2017)). DOJ makes no effort to explain how any SORN could be read to encompass Nevada's statewide voter registration list or how it has fulfilled the procedural safeguards of the Privacy Act. Because of this failure, the Privacy Act prohibits DOJ from obtaining—and then collecting, maintaining, and using—Nevada's statewide voter registration list and thus from prevailing on its claim.

**CONCLUSION**

For the reasons stated above and those stated previously, the Proposed Intervenors respectfully request that the Court grant leave to file this reply and dismiss the complaint.

---

No. 31; Reply Br. Supp. Mot. Intervene, *United States v. Scanlan*, No. 1:25-CV-00371-AJ (D.N.H. Dec. 16, 2025), ECF No. 22, DOJ persists in repeating this false claim.

- 12 -
PROPOSED INTERVENORS' REPLY

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

| | | |
|---|---|---|
| 1 | Dated: February 18, 2026 | Respectfully submitted, |
| 2 | | **BRAVO SCHRAGER LLP** |
| 4 | | By: /s/ Bradley S. Schrager |
| 5 | | David R. Fox (NV Bar No. 16536) |
| | | Julianna D. Astarita* (DC Bar No. 90041368) |
| | | **Elias Law Group LLP** |
| | | 250 Massachusetts Ave NW, Suite 400 |
| | | Washington, DC 20001 |
| | | (202) 968-4490 |
| | | dfox@elias.law |
| | | jastarita@elias.law |
| | | |
| | | Walker McKusick* (WA Bar No. 63205) |
| | | wmckusick@elias.law |
| | | **Elias Law Group LLP** |
| | | 1700 Seventh Avenue, Suite 2100 |
| | | Seattle, WA 98101 |
| | | T: (206) 656-017 |
| | | F: (206) 656-0180 |
| | | |
| | | Bradley S. Schrager (NV Bar No. 10217) |
| | | Daniel Bravo (NV Bar No. 13078) |
| | | **Bravo Schrager LLP** |
| | | 6675 South Tenaya Way, Suite 200 |
| | | Las Vegas, NV 89113 |
| | | (702) 996-1724 |
| | | bradley@bravoschrager.com |
| | | daniel@bravoschrager.com |
| | | |
| | | *Attorneys for Proposed Intervenor-Defendants NAACP Conference of Idaho, Nevada, and Utah, Nevada Alliance for Retired Americans, Institute for a Progressive Nevada, and Jacqueline Sue Bird* |
| | | |
| | | *Admitted Pro Hac Vice |

- 13 -

PROPOSED INTERVENORS' REPLY

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2026 a true and correct copy of Proposed Intervenors' Reply in Support of their Motion to Dismiss was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: /s/ *Dannielle Fresquez*
Dannielle Fresquez, an employee of
Bravo Schrager LLP

PROPOSED INTERVENORS' REPLY