AARON D. FORD
  Attorney General
GREGORY D. OTT (Bar No. 10590)
  Chief Deputy Attorney General
EMILY D. ESPINOSA (Bar No. 16853)
  Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
T:(775) 684-1195
F: (775) 684-1108
E: gott@ag.nv.gov
   edespinosa@ag.nv.gov

*Attorneys for Francisco Aguilar*
*in his Official Capacity as Secretary of*
*State for the State of Nevada*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cv-00728-ART-CLB |
| Plaintiff, | |
| vs. | |
| FRANCISCO V. AGUILAR, in his Official Capacity as Secretary of State for the State of Nevada, | **NEVADA SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| Defendants | |

## I. INTRODUCTION

Through this lawsuit, the United States of America, through the Department of Justice ("DOJ"), attempts to require the Nevada Secretary of State ("Secretary") to turn over voter registration records that include Nevadans' sensitive data and protected First Amendment activity. DOJ, however, is prohibited from collecting or maintaining the requested information by federal privacy laws. Even if DOJ satisfied the requirements of the privacy laws, its reliance on Title III of the Civil Rights Act of 1960 ("CRA" or "Title III") does not allow DOJ to obtain that private and sensitive information about Nevada's

1

voters. DOJ misunderstands the purpose, application, and scope of the CRA, and it has not stated a proper claim for relief. Three courts—including two applying the law of the Ninth Circuit—have already reached this conclusion,[1] and the Secretary respectfully requests this Court also grant his Motion to Dismiss.

## II. ARGUMENT

This Court should dismiss DOJ's claims for failing to state a claim for relief. First, DOJ's claim under the CRA fails because DOJ has not validly requested information relating to a civil rights investigation or stated a basis or purpose for its demand. Second, DOJ has not complied with the applicable federal privacy laws, which are a prerequisite for the federal government to collect the requested information.

### A. DOJ has failed to assert cognizable legal claims under Title III of the CRA.

DOJ has not stated a claim under Title III because its records request is outside the scope of Title III and it has not provided a statement of basis and purpose. Even if DOJ had complied with Title III, DOJ is not entitled to receive an unredacted copy of the Nevada's statewide voter registration list ("SVRL"). Accordingly, this Court should grant the Secretary's Motion to Dismiss.

As a threshold matter, this Court may review DOJ's compliance with Title III. DOJ argues that a records demand under Title III "is not the commencement of an ordinary, traditional civil action" and that "it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure."[2] Opp. at ¶ 6 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225–26 (5th Cir. 1962)). But Title III's text states only that a district court "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). Title III does not mention any "special statutory proceeding" or other abbreviated procedure that diminishes this Court's role to issuing a

---

[1] *United States v. Weber*, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, 2026 WL 362789, (W.D. Mich. Feb. 10, 2026).

[2] Notably, DOJ did not assert any special procedural limitations in the Complaint in this case.

2

rubber-stamp approval of a records request. *See Weber*, 2026 WL 118807 at *8 ("Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures.").

In fact, since Title III was enacted in 1960, the Supreme Court confirmed that the Federal Rules of Civil Procedure govern the federal government's document demands even if a summary proceeding is authorized by statute. *See Becker v. United States*, 451 U.S. 1306, 1307–08 (1981); *see also* Fed. R. Civ. P. 81(a)(5). As the Oregon court noted, two years after the Fifth Circuit's decision in *Lynd*, the Supreme Court "squarely reject[ed] Plaintiff's contention and reliance on *Lynd*." *Oregon*, 2026 WL 318402 at *8 (citing *United States v. Powell*, 379 U.S. 48 (1964)). In *Powell*, the Supreme Court applied the normal civil process under the federal rules to a similarly worded statute that contained "no provision specifying the procedure to be followed in invoking the court's jurisdiction." *Powell*, 379 U.S. at 57–58 & n.18 ("Because [§] 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."). *Compare* 26 U.S.C. § 7604(a) *with* 52 U.S.C. § 20705. Thus, contrary to DOJ's assertions, the appropriate process under the Federal Rules of Civil Procedure is for this Court to ensure that DOJ has satisfied Title III's statutory requirements and that its demand satisfies a baseline level of rationality. *See Oregon*, 2026 WL 318402 at *8 ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III[.]").

      **1.    The DOJ has not pled a Title III claim because its asserted purpose falls outside the scope of Title III, which is limited to investigations of civil rights violations.**

DOJ asserts that its purpose in demanding records is to "evaluate Nevada's compliance with the list maintenance provisions of HAVA and the NVRA, and if appropriate, to bring an enforcement action." Opp. at ¶ 4. By confirming that alleged purpose, DOJ concedes that it is not conducting an investigation into voting discrimination. As explained in the Motion to Dismiss, nothing in Title III nor the CRA addresses voter list maintenance or removing registered voters from the voter rolls due to death or relocation.

Mot. to Dismiss at 6–9 (discussing the text and legislative history of Title III). Title III was enacted as a tool to enforce the voting rights laws that protect against race discrimination in exercising the right to vote, *see Weber*, 2026 WL 118807 at *8-9, and Title III record demands must, at minimum, "relate to a purpose of investigating violations of individuals' voting rights" *Oregon*, 2026 WL 318402 at *10. No allegations suggest that DOJ is concerned about race discrimination in voting in Nevada, nor that it is investigating any discriminatory conduct.

In arguing to the contrary, DOJ asserts that, so long as it uses certain words in its demand—that the demand is "made for the purpose of investigating possible violations of a Federal statute"—it can demand records relating to federal elections, without limitation. Opp. at ¶ 12 (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963)). DOJ is incorrect. But "[t]he Court cannot read 'purpose' so broadly that it would 'sap the interpreted provision of all practical significance.'" *Oregon*, 2026 WL 318402 at *10 (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1273 (9th Cir. 2025)). DOJ's proposed reading of Title III ignores the case law construing its text, which informs what constitutes a valid statement of the basis and purpose for a Title III demand. As a comprehensive review of that case law and legislative history shows, Title III was enacted to permit review of voting records for "question[s] concerning infringement or denial of [a person's] constitutional voting rights." *Lynd*, 306 F.2d at 228; *see also Lynd*, 301 F.2d at 822 (explaining that, under Title III, the United States is entitled to a court order to inspect voting records upon asserting "reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county"). Because a fair reading of the statute's text is consistent with the case law and legislative history, this Court should reject DOJ's limitless interpretation and find that DOJ's demand for records exceeds the scope of Title III.

### 2. The DOJ has not pled a Title III claim because it has not provided a statement of basis and purpose for its demand.

Even if DOJ's request were in the scope of Title III, the statute requires a statement of the basis and purpose for a records demand. 52 U.S.C. § 20703 ("This demand shall

contain a statement of the basis and the purpose therefor."). The statute's use of the definite article "the," followed by a singular noun, together with its use of the conjunctive "and" demonstrates that the Attorney General must offer "a discrete thing" to meet the "basis" requirement and a second "discrete thing" to meet the "purpose" requirement. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021) (describing how to interpret definite articles in a statute); *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) (describing how to interpret "and" in a statute); *see also* Mot. to Dismiss at 6. DOJ fails to satisfy those statutory requirements.

As explained above, the "purpose" for the Title III demand must relate to the purpose of Title III. *See supra* at #. Where, as here, DOJ's stated purpose "lack[s] any reference or relation to the purposes for which Title III was enacted … [the] demand for records is deficient and cannot trigger any duty to produce such records." *Oregon*, 2026 WL 318402 at *10; *see also Weber*, 2026 WL 118807 at *9 ("Title III was not passed as a tool for NVRA compliance").

Moreover, even if the investigation of NVRA and HAVA list maintenance were a permissible purpose, the facts alleged fall short of substantiating DOJ's broad request. *E.g.*, Compl. ¶ 7 (alleging that "the purpose of the request is to ascertain Nevada's compliance with list maintenance requirements of the NVRA and HAVA"). DOJ does not need access to the unredacted voter list to assess compliance with NVRA and HAVA list maintenance requirements, as courts have consistently held when addressing NVRA list maintenance issues. *See* Mot. to Dismiss at 9–10; *see also Weber*, 2026 WL 118807 at *9 ("DOJ states no reason why an unredacted version of California's voter list is necessary under the NVRA."). For example, voter-specific personal information, such as full birth date, social security number, or driver's license number, is not needed to assess whether Defendants are complying with the NVRA's requirement to remove voters upon death or change in residence. Nor is that line-by-line information needed to assess Defendants' HAVA list maintenance requirements. In fact, compliance with list maintenance requirements is principally assessed by evaluating a state's procedures, not each individual

5

voter's data.[3] *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 618, 624–25 (6th Cir. 2025); *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019). Because unredacted access to the statewide voter list is not necessary to assess compliance with NVRA or HAVA list maintenance requirements, that alleged purpose does not satisfy Title III's purpose requirement for DOJ's requested records.

DOJ's assertions about the "basis" for its request fare no better. As the Oregon court explained, "basis" refers to a "factual basis for investigating a violation of a federal statute." *Oregon*, 2026 WL 318402 at *8; *see also Weber*, 2026 WL 118807 at *9. DOJ concedes that the Complaint contains no basis for its request. *See* Opp. at ¶¶ 14–16. It relies entirely on its August 14 letter to the Secretary to support its position that it has sufficiently stated grounds for its request. Opp. at ¶ 15. It requested an electronic copy of the unredacted voter list and asked questions about Nevada's list maintenance processes, which was a separately numerated list of questions from the request for the unredacted statewide voter list under the NVRA and HAVA. Compl. Exhibit 3 ¶ 19. That letter continued by briefly and generally referring to Title III and the CRA. *Id.* A demand that does not reference "the basis" of the demand is insufficient under Title III and DOJ's "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis' fails." *Oregon*, 2026 WL 318402 at *9.

Moreover, it is implausible that alleged concerns about Nevada's SVRL data establish a ground for demanding the unredacted voter list. The sensitive data of Nevada's voters is not necessary or relevant to assessing list maintenance compliance under either HAVA or the NVRA. Questions about list maintenance processes do not establish a basis for a demand for the unredacted voter registration list because the unredacted voter list

---

[3] DOJ's asserted purpose is revealed as pretext when it is well established that DOJ has investigated NVRA and HAVA compliance for decades without requiring states to produce an unredacted statewide voter registration list. *See, e.g.*, *United States v. Kentucky*, No. 3-17-cv-00094 (E.D. Ky. June 21, 2018); *Judicial Watch, Inc. v. Adamas*, 485 F. Supp. 3d 831, 834 (E.D. Ky. 2020) (describing procedural history and intervention of United States in 3:17-cv-00094). DOJ has been able to assess states' programmatic deficiencies and alleged NVRA's violations without the states' voter registration list. DOJ's request here isn't about compliance; it is about obtaining protected information—to which it has not right—under the guise of federal election oversight.

would not answer those process and systems-based questions. Nor would it provide any information relevant to those alleged list maintenance issues that the publicly available list would not also provide. Because private and sensitive voter data is irrelevant to assessing list maintenance compliance, it does not provide a basis for DOJ's request under Title III.

Rather than explain the legitimate purpose and basis for its request, DOJ contends that this Court cannot scrutinize the basis of its request. Opp. at ¶¶ 15–17. Title III, however, is clear—DOJ must provide "*the* basis" in its demand for records, not merely "*a* basis" to satisfy Title III's requirement for a valid demand. As the California court explained, "the requirement that [DOJ] state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute" and helps to prevents "a fishing expedition of voter records[.]" *Weber*, 2026 WL 118807 at *9. DOJ's demand is deficient because it does not assert a purpose or basis that supports the breadth of its demand for records. This Court should thus reject DOJ's Title III claim.

**B.    DOJ has not complied with the applicable privacy laws.**

The Court should dismiss this case because DOJ's request does not comply with applicable privacy laws.

**1.    The Privacy Act prevents DOJ's indiscriminate data collection.**

Subject to narrow exceptions, the Privacy Act "serves as a protection for Americans against the disclosure of information collected by the government." *Weber*, 2026 WL 118807 at *17. DOJ claims that "[t]here is no basis for Secretary Aguilar to fail or refuse to disclose information to a federal agency for law enforcement purposes"—such law enforcement purposes being enforcement of its NVRA and HAVA claims. Opp. at ¶ 24. But DOJ cannot seek this data by relying on this characterization of "law enforcement."

The Ninth Circuit takes "a *narrow* reading of 'law enforcement activities' [to] better serve[] the goal of privacy and avoid[] infringing on the overall First Amendment concerns of section (e)(7)." *MacPherson v. I.R.S.*, 803 F.2d 479, 482 (9th Cir. 1986). Accordingly,

7

courts review "on an individual, case-by-case basis," *id.* at 484, and require the government to show "good reason to believe" the records are "relevant" to the claimed law enforcement basis. *Garris v. F.B.I.*, 937 F.3d 1284, 1299 (9th Cir. 2019) (internal citation omitted). Here, by contrast, DOJ seeks to collect individualized data from millions of voters to supposedly enforce (1) HAVA's requirement to collect driver's license numbers or social security numbers, and (2) the NVRA's requirement to conduct a general voter list maintenance program. [response at 16 n.7]. The full, unredacted voter registration list is neither "pertinent to" nor "within the scope" of either enforcement purpose, and DOJ has not pleaded "good reason to believe" otherwise. *Garris*, 937 F.3d at 1299 (government's burden not met by a "remote possibility" that records would provide a "minuscule" "potential advantage" in an investigation); 5 U.S.C. § 552a(e)(1). If a federal agency has not satisfied the Privacy Act's requirements, it cannot lawfully receive the records, barring DOJ here from receiving the records requested.

Moreover, as the California court held, the "Privacy Act bars DOJ's request for [Nevada's] unredacted voter roll because fulfillment of that request would include information regarding previous election participation and party affiliation," which are types of political expression protected by the First Amendment. *Weber*, 2026 WL 118807 at *17.

### 2.     The E-Government Act's Procedural Safeguards Apply

DOJ claims the E-Government Act, Pub. L. No. 107–347 ("E-Gov't Act") is inapplicable because it is "not initiating a new process" of "contacting individuals for information," Opp. at ¶ 25, but instead is seeking voter information that Nevada already maintains. This misreads the statute, which requires federal agencies to conduct a privacy impact assessment ("PIA") before "initiating a new collection of information that permit "the contacting of a specific individual." E-Gov't Act, § 208(b)(1)(A)(ii); *see Weber*, 2026 WL 118807 at *19 ("[T]he request made by the DOJ to California is a new one, thus initiating a new collection of data."). DOJ's request for voter data is governed by the Act. Thus, the PIA cited by DOJ, which is unrelated to this current effort to collect voter data from Nevada and other states, does not suffice. Opp. at ¶ 26 n.15.

8

### 3. The Driver's Privacy Protection Act Bars DOJ's Collection of Driver's License Numbers

DOJ asserts that its collection of private and sensitive voter data is permissible under the governmental-function exception to the Driver's Privacy Protection Act ("DPPA"). Opp. at ¶ 27. DOJ alleges no plausible governmental use for full driver's license numbers under DOJ's stated purpose to use the requested voter data to evaluate compliance with the NVRA and HAVA. DOJ asserts only that a "government agency performing a statutorily mandated function" constitutes a governmental function for purposes of the exception. Opp. at ¶ 27. But that assertion does not address how driver's license numbers will be "*used* for the identified purpose." *See Senne v. Vill. Of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc) (describing scope of DPPA's disclosure authorization); *see also Weber*, 2026 WL 118807 at *19 ("DOJ has not identified how the use of millions of Californians' driver's license numbers would help it understand whether California conducts a general program that makes a reasonable effort to remove persons from its voter rolls due to death or change in residence.").

In short, DOJ has not complied Privacy Act and the E-Government Act. Accordingly, this Court should dismiss this case for failure to state a claim because DOJ would violate federal law by collecting the requested information.

## III. CONCLUSION

DOJ has not complied with the Privacy Act, which is a prerequisite for the federal government to collect the requested information. DOJ's CRA claim fails because DOJ has not validly requested information relating to a civil rights investigation under the CRA.

///

///

///

DOJ's claims also fail because the NVRA, HAVA, and CRA do not require the Secretary to produce unredacted copies of the voter file, nor do they authorize DOJ to demand the sensitive information it seeks. For the reasons above, and in the Secretary's Motion to Dismiss, the Court should dismiss DOJ's claims.

Respectfully submitted this 18th day of February 2026.

>AARON D. FORD
Attorney General

By: /s/ *Emily D. Espinosa*
     EMILY D. ESPINOSA
      Deputy Attorney General
     Nevada Bar No. 16853
     Office of the Attorney General
     100 N. Carson Street
     Carson City, Nevada 89701
     (775) 684-1195
     edespinosa@ag.nv.gov

*Attorneys for Francisco Aguilar
in his Official Capacity as Secretary of
State for the State of Nevada*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on February 18, 2026, I filed the foregoing document **NEVADA SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS** via this Court's electronic filing system. Parties that are registered with this Court's EFS will be served electronically.

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ERIC NEFF
Acting Chief, Voting Section
Civil Rights Division

BRITTANY E. BENNETT
Trial Attorney, Voting Section
Civil Rights Division

U.S. DEPARTMENT OF JUSTICE
4 Constitution Square
150 M. Street, Room 8.141
Washington, D.C. 20002
Tel: (202) 704-5430
Brittany.Bennett@usdoj.gov

SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar No. 8264
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Sigal.Chattah@usdoj.gov

*Attorneys for Plaintiff, UNITED STATES OF AMERICA*

/s/ *Susan Messina*
AG Legal Secretary