David R. Fox (NV Bar No. 16536)
Julianna D. Astarita* (DC Bar No. 90041368)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
jastarita@elias.law

Walker McKusick* (WA Bar No. 63205)
wmckusick@elias.law
**Elias Law Group LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Intervenor-Defendants
NAACP Conference of Idaho, Nevada,
and Utah, Nevada Alliance for Retired
Americans, Institute for a Progressive
Nevada, and Jacqueline Sue Bird*

*Admitted pro hac vice

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | Case No. 3:25-cv-00728-ART-CLB |
| Plaintiff, | |
| v. | **MOTION FOR LEAVE TO FILE MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| FRANCISCO AGUILAR, in his official capacity as Nevada Secretary of State, | |
| Defendant. | |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND .............................................................................................................................. 2

    I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. .............................................................................. 2

    II.    The Department of Justice has embarked on an unprecedented campaign to amass personal voter registration data held by the States. ................................................................ 3

    III.    The Department of Justice sues Secretary Aguilar to obtain Nevada's voter registration list. ..................................................................................................................................... 6

LEGAL STANDARD ....................................................................................................................... 7

ARGUMENT .................................................................................................................................... 7

    IV.    DOJ did not state an adequate, truthful basis and purpose for the demand as Title III requires. .......................................................................................................................... 7

    V.    Title III does not prohibit redacting sensitive voter information. ..................................... 13

    VI.    DOJ has failed to comply with the Privacy Act, which independently requires dismissal. ........................................................................................................................ 16

CONCLUSION ............................................................................................................................... 19

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

## TABLE OF AUTHORITIES

**CASES**

*In re Admin. Subpoena No. 25-1431-019,*
   800 F. Supp. 3d 229 (D. Mass. 2025) ........................................................................ 10

*Ala. ex rel. Gallion v. Rogers,*
   187 F. Supp. 848 (M.D. Ala. 1960) .............................................................................. 9

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
   570 U.S. 1 (2013) ................................................................................... 2, 3, 15, 16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................**Error! Bookmark not defined.**

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................**Error! Bookmark not defined.**

*CFPB v. Accrediting Council for Indep. Colls. & Schs.,*
   854 F.3d 683 (D.C. Cir. 2017) ..................................................................................... 8

*In re Coleman,*
   208 F. Supp. 199 (S.D. Miss. 1962) ........................................................................ 8, 10

*Ex parte Siebold,*
   100 U.S. 371 (2013) ..................................................................................................... 3

*Foster v. Love,*
   522 U.S. 67 (1997) ........................................................................................................ 2

*Home Depot U.S.A., Inc. v. Jackson,*
   587 U.S. 435 (2019) ...................................................................................................... 9

*Husted v. A. Philip Randolph Inst.,*
   584 U.S. 756 (2018) ...................................................................................................... 3

*Jones v. Bock,*
   549 U.S. 199 (2007) ........................................................**Error! Bookmark not defined.**

*Kennedy v. Bruce,*
   298 F.2d 860 (5th Cir. 1962) .................................................................................... 8, 9

*Kennedy v. Lynd,*
   306 F.2d 222 (5th Cir. 1962) ......................................................................... 6, 8, 10, 15, 16

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) .............................. 16, 17, 18

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ...........................................**Error! Bookmark not defined.**

*Project Vote, Inc. v. Kemp*,
208 F. Supp. 3d 1320 (N.D. Ga. 2016) ............................................................... 14

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) .................................................................... 14

*Project Vote/Voting For Am., Inc. v. Long*,
752 F. Supp. 2d 697 (E.D. Va. 2010) ................................................................ 14

*Pub. Int. Legal Found. v. N.C. State Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) ............................................................. 14

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024)......................................................... 1, 14, 16

*Pub. Int. Legal Found., Inc. v. Matthews*,
589 F. Supp. 3d 932 (C.D. Ill. 2022) ........................................... 14

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) ....................................................... 3

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) ........................................**Error! Bookmark not defined.**

*In re Subpoena No. 25-1431-014*,
No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025)......................................... 10

*True the Vote v. Hosemann*,
43 F. Supp. 3d 693 (S.D. Miss. 2014).............................................................. 14

*Tulelake Irrigation Dist. v. U.S. Fish & Wildlife Serv.*,
40 F.4th 930 (9th Cir. 2022) ........................................................... 11

*United States v. Weber*,
No. 2:25-cv-09149-DOC-ADS, --- F.Supp.3d. ---,
2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ......................................... 2, 8, 10–14, 17, 18

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014).......................................................................... 9

- iii -
PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) ....................................................................... 14–16

*Watt v. W. Nuclear, Inc.*,
462 U.S. 36 (1983) ..................................................................................................... 15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 4, cl. 1 ................................................................................................ 2

**STATUTES**

5 U.S.C. § 55 ............................................................................................................... 15, 16

5 U.S.C. § 552a ........................................................................................................... 17, 19

18 U.S.C. § 2721 ................................................................................................................ 15

52 U.S.C. § 20507 ............................................................................................... 3, 11, 12, 15

52 U.S.C. § 20703 ..................................................................................................... 1, 7, 11

52 U.S.C. § 21083 ................................................................................................... 3, 12, 15

Nev. Rev. Stat. § 239.010 ............................................................................................. 5, 13

Nev. Rev. Stat. § 293.440 ......................................................................................... 1, 5, 13

V.S.A. § 17.2154 ............................................................................................................... 15

**FEDERAL RULES**

Fed. R. Civ. P. 12 ..................................................................**Error! Bookmark not defined.**

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 86-956 (1959) .......................................................................................... 7, 9

H.R. Rep. No. 107-329 (2001) .............................................................................................. 2

**OTHER AUTHORITIES**

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET),
https://x.com/AAGDhillon/status/2001659823335616795 ............................................. 4

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

- iv -

Br. of Amici Curiae Md. et al. in Supp. of Mot. to Dismiss, *United States v. Bd. of Elections of N.Y.*, No. 1:25-CV-01338 (N.D.N.Y. Jan. 6, 2026), ECF No. 79-1 ............... 4

Eileen Sullivan, *DOGE Employees Shared Social Security Data, Court Filing Shows*, N.Y. Times (Jan. 20, 2026) https://www.nytimes.com/2026/01/20/us/politics/doge-employees-social-security-data.html...............................................................**Error! Bookmark not defined.**

Kris Maher & Eliza Collins, *The Fight Over the Justice Department's Push for State Voter Data*, Wall Street J. (Dec. 24, 2025), https://www.wsj.com/politics/elections/the-fight-over-the-justice-departments-push-for-state-voter-data-111103f8 ...................................**Error! Bookmark not defined.**

Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html........................................................................................... 3

Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?* N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html .......................................................................**Error! Bookmark not defined.**

Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 23, 2026), https://perma.cc/YWB8-38YC ............................ 3

Press Release, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 6, 2026), https://perma.cc/PCE6-DHYA................................................................. 6

Press Release, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025), https://perma.cc/Y8VL-QBDP .............................................................. 6

Press Release, *Justice Department Sues Four States for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Dec. 18, 2025), https://perma.cc/7WMZ-FSQR...................... 6

Press Release, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 16, 2025), https://perma.cc/9HZQ-CFCG................................................................. 6

Press Release, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/SCJ6-7GW4 ................................................................. 6

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

Press Release, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 25, 2025), https://perma.cc/J2Z3-C4NY ................................................................................................................ 6

Press Release, *Justice Department Sues Virginia for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 16, 2026), https://perma.cc/FQ4R-2KX6 .................................. 6

*The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Justice, https://perma.cc/4Q33-DH8X ...................................................................................... 11

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

## INTRODUCTION[1]

The United States Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning States the responsibility for overseeing voter registration. To build this unauthorized and unprecedented federal list, DOJ has demanded that Nevada—along with at least forty other States—turn over its full, unredacted voter list, even though it has no actual authority to make such a demand and despite the fact that Nevada law does not allow disclosure of sensitive voter information like driver's license numbers and partial social security numbers. *See* Nev. Rev. Stat. § 293.440(1)–(2).

Nothing in federal law authorizes the relief that DOJ seeks. DOJ relies solely on Title III of the Civil Rights Act of 1960 ("CRA"), but demands under that statute must state "the basis and the purpose" for which they are issued, and that basis and purpose must be legally valid. 52 U.S.C § 20703. DOJ's demand fails that test. DOJ claims to be investigating compliance with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), but the CRA is concerned with protecting the constitutional right to vote—not with enforcing election administration rules—and DOJ's demands and actions in other States make clear that DOJ's true purpose is not assessing NVRA or HAVA enforcement in any event. Moreover, even if there were a valid demand, neither the CRA nor any other provision of federal law preempts Nevada's privacy protections or precludes Nevada from withholding sensitive voter data. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows* ("*PILF*"), 92 F.4th 36, 56 (1st Cir. 2024) (concluding that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" voter files). And DOJ has not complied with the requirements that the federal Privacy Act imposes before the collection of the private data it seeks.

---

[1] Proposed Intervenors request that the Court accept this Proposed Motion to Dismiss in the event that the Court grants their Motion to Intervene, ECF No. 6. *See Donald Trump for President, Inc. v. Benson*, No. 1:20-cv-01083-JTN-PJG, 2020 WL 8573863, at *3 (W.D. Mich. Nov. 17, 2020) (granting proposed intervenors' motions to intervene and simultaneously accepting for consideration proposed intervenors' proposed motions to dismiss); *Am. Tradition Inst. v. Colorado*, No. 11-cv-00859-WJM-BNB, 2012 WL 555513, at *3 (D. Colo. Feb. 21, 2012) (similar).

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

Ultimately, DOJ's demands run directly contrary to the decentralized structure of the federal electoral system. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (giving the States principal authority over congressional elections). When enacting HAVA after the contested 2000 elections, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001). DOJ's suit asserts an unprecedented federal authority over the management of federal elections, yet it cites no federal law that supplies such sweeping authority.

Recently, two sister courts in the Ninth Circuit have dismissed DOJ's equivalent suits in California and Oregon. *See United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, --- F.Supp.3d ---, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); Minute Order, *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. Jan. 26, 2026), ECF No. 68. A more fulsome written opinion will be coming from the Oregon court, but as the California court's order details, it held that DOJ's CRA claim was legally defective for each of the reasons stated here. Specifically, the court held that (1) DOJ's proffered basis and purpose do not suffice under Title III of the CRA, *Weber*, 2026 WL 118807, at *8, (2) federal law does not preempt state privacy laws protecting sensitive voter data, *id.* at *13, 17, (3) and DOJ's data request violates the Privacy Act, *id.* at *17–19. Just as the federal courts in California and Oregon did, this Court should dismiss the Complaint.

<strong>BACKGROUND</strong>

**I.   Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. It is therefore *States*, not the federal government, that are primarily responsible for determining voter eligibility and maintaining lists of eligible voters. Congress may preempt state law, but that power extends only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1,

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

9 (2013) (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (2013)). Where Congress has not spoken on an issue, state law controls. *See id.*

Existing federal law sits "atop *state* voter-registration systems"; it does not displace them. *Id.* at 5 (emphasis added). The NVRA charges *States*—not the federal government—with the "administration of voter registration for elections for Federal office." 52 U.S.C. § 20507(a). It makes *States* responsible for maintaining voter lists (subject to strict procedural safeguards). *Id.* § 20507(c)-(g). And it makes *States* the custodians of voter registration data. *See Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

HAVA, enacted "to improve voting systems and voter access" after the 2000 election, similarly involves voter registration systems, and puts the responsibility for such systems on the States. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Thus, it requires *States* to create a "computerized statewide voter registration list" and "perform list maintenance," 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A), and it is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).

Neither the NVRA nor HAVA tasks the federal government with compiling a federal voter registration list. Instead, Congress has "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the States themselves.

## II.     The Department of Justice has embarked on an unprecedented campaign to amass personal voter registration data held by the States.

In the spring of 2025, DOJ launched an unprecedented campaign to demand broad access to state voter files, which include sensitive and personal information about each registered voter such as date of birth, driver's license number, and social security number. DOJ has reportedly sent demands to at least 44 states, with plans to make similar demands on all 50.[2] It seeks to use the

---

[2] Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 23, 2026), https://perma.cc/YWB8-38YC; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National*

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

data to create a national voter database that will be used to attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[3] In recent public statements, moreover, Assistant Attorney General Harmeet Dhillon has made clear that DOJ also intends to use the data it is demanding from the States to attempt to compel the removal of *hundreds of thousands* of voters from the rolls.[4] And further undermining DOJ's claims that this is all about simply investigating the states' compliance with federal law's highly deferential list maintenance statutes, Attorney General Pam Bondi recently sent a letter to Minnesota indicating that ICE would stop its operations in that State if Minnesota turned over the same type of private voter data that DOJ seeks here.[5]

According to many of the States subject to these demands, DOJ has sought not simply read-only access, but "materials that define or explain how" the voter information is coded into the registration database, "potentially because additional information about database coding would assist in transferring data . . . into other federal databases." Br. of Amici Curiae Md. et al. in Supp. of Mot. to Dismiss at 6, *United States v. Bd. of Elections of N.Y.*, No. 1:25-CV-01338 (N.D.N.Y. Jan. 6, 2026), ECF No. 79-1. The vast majority of States have appropriately rejected DOJ's demand, declining to turn over sensitive personal information that is typically protected by privacy laws.[6] Nevada law, for example, enumerates the only information from the state voter registration list that may be disclosed: "address, date of birth, telephone number and the serial number on each

---

*Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[3] Barrett & Corasaniti, *supra* note 2.

[4] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[5] Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html.

[6] *See* Martinez-Ochoa, O'Connor & Berry, *supra* note 2.

- 4 -
PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

application." Nev. Rev. Stat. § 293.440(1)–(2). And it compels government entities to redact confidential information from any disclosures. *Id.* § 239.010(3).

As part of this broader pressure campaign, on June 25, 2025, DOJ sent a letter to Secretary of State Aguilar asking that the Secretary provide DOJ with its "current statewide voter registration list." Mem. in Support of Mot. to Compel, Ex. 1 at 2, ECF No. 3-1. Secretary Aguilar responded on July 25 with answers to DOJ's information requests and with a link to Nevada's publicly available statewide voter registration list. *See generally* Mem. in Support of Mot. to Compel, Ex. 2. DOJ responded by specifying for the first time that it was requesting that the State produce "*all fields*" from its voter registration database, including "[each] registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." Mem. in Support of Mot. to Compel, Ex. 3 at 1. According to DOJ, the purpose of this request was "to ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2.

Secretary of State Aguilar responded on August 21, 2025, explaining his concerns with DOJ's demands and his privacy obligations under state law. Mem. in Support of Mot. to Compel, Ex. 4 at 1. The Secretary noted that DOJ's "most recent letter represents a significant departure from [the] prior request" in that DOJ now "requested additional, highly-sensitive information" and would "expose highly sensitive information that is confidential." *Id.* The State has, to date, not shared with DOJ the statewide voter registration list with all fields. *See* Compl. ¶ 25.

Around the same time as DOJ was making these demands of Nevada, it made similar demands to scores of other States, the vast majority of which have similarly refused to turn over highly sensitive personal voter information. Beginning in September 2025, DOJ began filing lawsuits against some of these States; as of the time of this filing, it has filed 25 such suits. On September 16, DOJ brought actions against Oregon and Maine, alleging in both cases that DOJ was entitled to the voter information it sought under three statutes: the NVRA, HAVA, and the

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

CRA.[7] On September 25, DOJ filed lawsuits against California, Michigan, Minnesota, New York, New Hampshire, and Pennsylvania.[8] Again, DOJ brought its claims under all of these same three statutes, excepting only the NVRA claim in States that are exempt from the NVRA.

In early December, DOJ sued a third group of States—Delaware, Maryland, New Mexico, Rhode Island, Vermont, and Washington.[9] Notably, at this point in its litigation campaign, DOJ ceased asserting any claims under the NVRA and HAVA, relying instead upon the CRA alone—a tacit acknowledgment of the weakness of its earlier NVRA and HAVA claims. Since that point, DOJ has sued yet another ten States and the District of Columbia in successive waves of complaints.[10] These suits also omit any NVRA or HAVA claims, relying upon the CRA alone.

**III.    The Department of Justice sues Secretary Aguilar to obtain Nevada's voter registration list.**

DOJ filed this suit on December 11, 2025, seeking to compel Secretary Aguilar to provide Nevada's full, unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. DOJ brings only a single count: namely, that in refusing to comply with DOJ's requests, Secretary Aguilar violated Title III of the CRA. Title III is a Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress

---

[7] Press Release, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 16, 2025), https://perma.cc/9HZQ-CFCG

[8] Press Release, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sep. 25, 2025), https://perma.cc/J2Z3-C4NY

[9] Press Release, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Dec. 2, 2025), https://perma.cc/SCJ6-7GW4

[10] *See* Press Release, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws*, U.S. Dep't of Just. (Dec. 12, 2025), https://perma.cc/Y8VL-QBDP; Press Release, *Justice Department Sues Four States for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Dec. 18, 2025), https://perma.cc/7WMZ-FSQR; Press Release, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 6, 2026), https://perma.cc/PCE6-DHYA; Press Release, *Justice Department Sues Virginia for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 16, 2026), https://perma.cc/FQ4R-2KX6.

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957. H.R. Rep. No. 86-956, at 7 (1959).

DOJ, however, admits that it is not seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Rather, DOJ's stated purpose in making the request as conveyed to the Secretary was "to ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 23 (citation omitted). These are laws with their *own* procedures and enforcement mechanisms, which DOJ has not invoked in its Complaint here.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Mere "labels and conclusions" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is required when a complaint fails to allege "sufficient facts" "to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## ARGUMENT

The Complaint should be dismissed because DOJ's demand did not include a valid statement of "the basis and the purpose" for the demand, as Title III of the CRA requires; because federal law does not preempt Nevada's state-law privacy protections for the sensitive data Nevada has withheld; and because DOJ has not complied with the federal restrictions on compiling the sensitive data it seeks. There is therefore no cognizable legal theory for DOJ's requested relief.

**I. DOJ did not state an adequate, truthful basis and purpose for the demand as Title III requires.**

A demand for records under Title III must state "the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ has previously understood this dual requirement, and, in *Lynd*, provided an

- 7 -
PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

explicit statement of *both* the "basis" *and* the "purpose" of its demand, as required by Title III:

> This demand is *based upon* information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d at 229 n.6 (emphasis added) (internal quotation marks omitted). Other Title III cases from that period likewise discuss—consistent with Title III's express requirements—an explicit statement of both the "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). Here, however, DOJ's demand fails to adequately allege *either* the basis or the purpose of its request, for at least four reasons.

*First*, DOJ's stated purpose for issuing the demand to Secretary Aguilar—"to ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA," Mem. in Support of Mot. to Compel, Ex. 3 at 2—is not sufficient under Title III. *See CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies "are . . . not afforded unfettered authority to cast about for potential wrongdoing" (internal quotation marks and citation omitted)); *see also Weber*, 2026 WL 118807, at *9–10 (finding that "DOJ has not complied with Title III of the CRA and has provided an inadequate statement of basis and purpose" and holding that "[t]he requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute."). Title III permits DOJ to review voting records for "question[s] concerning infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. Its "purpose is to enable the Attorney General to determine whether" a suit to enforce the CRA is appropriate, *id.*, not to ascertain compliance with distinct laws serving separate purposes with their own enforcement mechanisms and—in the NVRA's case—disclosure provisions. *See also Weber*, 2026 WL 118807, at *8–9 (concluding the "purpose of Title III is to detect voting-related racial discrimination" and that "Title III was not passed as a tool for NVRA compliance"). The NVRA

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

and HAVA are concerned with things like "failures to purge voters who have moved or away or died," which, as one early court applying Title III noted, "do[] not bear any particular importance" to the Title III inquiry. *Bruce*, 298 F.2d at 863 n.2.

In interpreting the "purpose" requirement, the Court should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). And Congress enacted Title III to buttress protections of the constitutional right to vote in the Civil Rights Act of 1957. *See* H.R. Rep. No. 86-956, at 3 (finding that while "some progress" had been made since the 1957 Act, there was a "need for additional legislation to implement the enforcement of civil rights"); *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) (per curiam).

In the Civil Rights Act of 1957, Congress had tasked DOJ with protecting the "right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956, at 7. Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of certain voter records, *id.*, not to mention the intentional destruction of others, *Gallion*, 187 F. Supp. at 856 n.4 ("State action such as taken by the Alabama legislature authorizing registrars to destroy their records is an excellent example."). DOJ had "no existing power in civil proceedings to require the production of [voter registration] records during any investigation" concerning "complaints of a denial to vote because of race." H.R. Rep. No. 86-956, at 7. Congress found that, without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect the right to vote was "rendered relatively ineffective." *Id.* Congress thus enacted Title III of the Civil Rights Act of 1960 to assist

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

DOJ in those investigations. Title III had nothing to do with investigating the administrative voter registration list requirements enacted in the NVRA and HAVA decades later.

The Court should reject DOJ's efforts to justify its demands with a purpose disconnected from the statutory scheme. *See Weber*, 2026 WL 118807, at *9 (holding that assessing NVRA compliance was an improper purpose for DOJ's Title III request); *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025) (rejecting subpoena seeking private health information when DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by Congress"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236–39 (D. Mass. 2025) (similar). Prior enforcement of Title III confirms that it is meant to be used only for investigating the denial of voting rights. Shortly after the law's enactment, courts upheld DOJ demand letters that stated they were "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction." *In re Coleman*, 208 F. Supp. at 199–200; *see also Lynd*, 306 F.2d at 229 n.6 (same). DOJ has yet to cite a single instance in which a court has upheld a demand for records made under Title III to assess state compliance with the NVRA or HAVA.[11] And, as previously stated, a federal court recently rejected DOJ's demand for records made under Title III to assess compliance with the NVRA and HAVA. *Weber*, 2026 WL 118807, at *8–10.

In fact, DOJ's stated purpose is not just divorced from Title III's scope—it is antithetical to Title III's purpose. DOJ says that it wants to use the records it is demanding to attempt to compel States to remove hundreds of thousands of voters from the rolls. *Supra* note 4. Far from protecting

---

[11] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226 (quoting 42 U.S.C. § 1974b, recodified at 52 U.S.C. § 20703), those cases involved circumstances where Title III was unquestionably being used for its intended purpose: investigations into the potential denial of voting rights on account of race. Those prior cases are thus fundamentally different from the circumstances here, where DOJ has not even tried to assert that it seeks to investigate any possible denial of the constitutional right to vote. Nor has it even offered any justifiable basis to support the need for records to evaluate compliance with the two *other* statutes it has invoked.

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

constitutional voting rights, DOJ seeks to undermine them.

*Second*, DOJ's request to Nevada entirely failed to articulate "the basis" for the request. Not only does it fail to even assert that Nevada has denied the right to vote or otherwise infringed on anyone's voting rights, it even fails to assert the basis for what it claims its purpose to be: investigating Nevada's list maintenance practices for compliance with the NVRA and HAVA. DOJ's August 14 letter demanding Nevada's voter registration list with all fields did *not* articulate *any* specific concerns with Nevada's list maintenance efforts, much less provide a factual basis to conclude that its efforts might not be "reasonable," which is all that the NVRA and HAVA require. 52 U.S.C. § 20507(a)(4); *id.* § 21083(a)(4); *see also id.* § 21085 (committing "specific choices on the methods of complying with" HAVA "to the discretion of the State"); Mem. in Support of Mot. to Compel, Ex. 3.[12]

The lack of a stated basis is fatal—Congress expressly required DOJ to state "the basis *and* the purpose" of its request, 52 U.S.C. § 20703 (emphasis added), and the Court must give meaning to both requirements. *See Tulelake Irrigation Dist. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 930, 936 (9th Cir. 2022) ("When construing a statute, courts should avoid any statutory interpretation that renders any section superfluous.") (quotation omitted). That omission is critical: even if Title III could be used to investigate matters unrelated to denial of the right to vote, it requires that both the purpose *and the basis* of DOJ's request shall be contained in the *demand itself*, not as a post-hoc rationale advanced in litigation. *See* 52 U.S.C. § 20703 ("*This demand* shall contain a statement of the basis and the purpose therefor." (emphasis added)); *see also Weber*, 2026 WL 118807, at *9 (finding that DOJ failed to "establish[] the basis for its request" because DOJ failed to explain why it believed that California had violated the NVRA or why the voter registration list was necessary for DOJ's investigation). DOJ's failure to include a "basis" in its demand to Nevada therefore independently warrants dismissal.

---

[12] DOJ's own website acknowledges that States "have discretion under the NVRA and HAVA" to design voter registration list-maintenance programs, and that "States currently undertake a variety of approaches" to this process. *The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Justice, https://perma.cc/4Q33-DH8X (updated Nov. 1, 2024) (last accessed Jan. 15, 2026).

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

*Third*, context shows that "the basis and the purpose" that DOJ included in its demands to Nevada were not the true basis and purpose for its request. *See Weber*, 2026 WL 118807, at *10–12 (holding that the court is "not obliged to accept a contrived statement and purpose"). Neither DOJ's letter on August 14 demanding Nevada's voter registration list nor its subsequent Complaint identified any deficiencies with Nevada's list maintenance procedures. *See generally* Mem. in Support of Mot. to Compel, Ex. 4; Compl. Nor did they identify any evidence of anomalies, provide any reason to suspect—*or even express any concern*—that Nevada's list maintenance efforts were not "reasonable." The lack of any stated basis for DOJ's investigation of *Nevada* is further highlighted by the fact that DOJ has made carbon copy demands to at least 40 States and has sued more than 20 based on nearly identical boilerplate claims and allegations. *See supra* Background § II. This nationwide effort to collect state voter registration lists undermines any notion that DOJ has a "basis" for investigating Nevada specifically.[13]

In addition, Nevada's full and unredacted statewide voter file is simply not helpful or necessary to determine whether Nevada "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507(a)(4); Compl. ¶ 12; *see also* 52 U.S.C. § 21083(a)(4). The unredacted voter file cannot tell DOJ anything about the list maintenance procedures that Nevada undertook within its discretion under the NVRA and HAVA. If DOJ were to obtain the unredacted

---

[13] In parallel cases, DOJ has referred to a complaint against the State of Georgia requesting a copy of the State's voter registration list, including social security numbers, and a subsequent consent decree between the State and DOJ granting access to that voter registration list, as well as a memorandum of understanding with Texas granting DOJ access to the State's voter registration list. *See, e.g.*, Notice of Supp. Auth., *United States v. Oregon*, 6:25-cv-01666-MTK (Jan. 26, 2026), ECF No. 67. In both cases, the DOJ asserted that its demand was for the purpose of assessing compliance with voter registration laws and list maintenance provisions of the NVRA. However, those cases were not litigated, and the adequacy of the stated basis and purpose of DOJ's demands were therefore not probed by a federal court. Nor did those settlements involve DOJ using CRA demands to gain access to voter registration data for the purpose of demanding the removal of voters from the rolls or as political leverage. *See supra* notes 4–5.

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

voter file, the data would be outdated almost immediately,[14] and even if DOJ were able to use the data to identify voters who have moved or died since that single snapshot in time, it would not mean that Nevada did not make a "reasonable" list maintenance effort under the NVRA or HAVA.[15]

*Finally*, DOJ's claim is further undermined by the ample evidence of what its true aims are. Namely, DOJ seeks to use the information it is demanding from States across the country to create an unauthorized, unprecedented national voter database, and—as its own senior official has stated publicly—to compel the removal of countless individuals from the voting rolls. *See* Background § II; *Weber*, 2026 WL 118807, at *11. This, too, only reinforces that DOJ's stated basis and purpose of its demand were not in fact the true basis and purpose, compelling dismissal of its claim.

### II. Title III does not prohibit redacting sensitive voter information.

Even if DOJ met Title III's requirements, nothing in that provision or any other federal law preempts Nevada's state-law privacy protections of sensitive voter data and requires the production of the *unredacted* voter file. Nevada law protects the information at issue in this case under multiple statutory provisions, none of which is preempted by federal law.

Nevada law expressly limits the information that may be disclosed from the state's voter file—it excludes driver's license and social security numbers. Nev. Rev. Stat. § 293.440(1)–(2). In addition, Nevada law requires redaction of "confidential" information before disclosure. *See id.* § 239.010(3). Thus, even if DOJ were entitled to some of the information contained in Nevada's statewide registration list, Nevada law prohibits DOJ from obtaining (as DOJ demands) the complete, *unredacted* voter file. Nothing in Title III or any other federal law preempts this state-

---

[14] *See* Kris Maher & Eliza Collins, *The Fight Over the Justice Department's Push for State Voter Data*, Wall Street J. (Dec. 24, 2025), https://www.wsj.com/politics/elections/the-fight-over-the-justice-departments-push-for-state-voter-data-111103f8.

[15] As noted above, the DOJ's own website acknowledges that States need only make a "reasonable" effort to identify and remove ineligible persons from the voter rolls. *The National Voter Registration Act of 1993 (NVRA)*, *supra* note 12.

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

law protection of uniquely sensitive information.

Recently, two courts of appeals have squarely held that the NVRA does not prohibit the redaction of sensitive personal data contained in state voter registration lists. *See PILF*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."). These are no outliers—many other courts have reached the same conclusion. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers). And the California district court considering a parallel lawsuit requesting California's unredacted voter registration list likewise concluded that "states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA"—and pointed out that the DOJ itself had conceded this in amicus briefs as recently as 2023. *Weber*, 2026 WL 118807, at *12–13 (citing Br. for the U.S. as Amicus Curiae in Supp. of Pl.-Appellee at 27–30, *PILF*, 92 F.4th at 36).

Similarly, nothing in the text of Title III prohibits the redaction of private information that

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

courts have repeatedly held may be redacted under the NVRA. Title III says nothing about the issue, but as *Lynd*—the central case DOJ relies on—recognizes, Congress seems to have contemplated the production of *public* records, *not* private data. Thus, that court concluded that Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. In contrast, the information DOJ demands here is safeguarded under both federal and state privacy laws. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; 17 V.S.A. § 2154(b). Driver's license numbers and partial social security numbers were not required to be provided on registration forms until 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), so the Congress that enacted Title III could not have possibly intended it to require disclosure of such information (or concluded that doing so was necessary to conduct the investigations that Title III was enacted to support). *See Watt v. W. Nuclear, Inc.*, 462 U.S. 36, 47 (1983) (interpreting statute to avoid result that "Congress could not have expected"). Congress's authority to preempt state laws governing elections extends only "so far as it is exercised, and no farther." *Inter Tribal Council*, 570 U.S. at 9 (citation omitted). Nothing in the text of Title III purports to preempt state-law privacy protections.

The conclusion that Title III does not entitle DOJ to the sensitive data it seeks is reinforced by the choices Congress made when it enacted the NVRA and HAVA. If Congress had thought that it was necessary or desirable for DOJ to have access to a database containing highly sensitive information about every voter in a State to ensure that the State was complying with its list maintenance obligations under those statutes, it would have done so in *the NVRA and HAVA themselves*. But Congress did not do so. In fact, Congress created a *different* mechanism meant to ascertain States' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this inspection to allow for "critical scrutiny and public audits of voter data"—but nonetheless permitted the redaction of sensitive voter data. *Voter Reference Found.*, 160 F.4th at 1082 & 1083 n.14. Congress specified that records subject to inspection under that provision must include the "names and addresses" of certain voters, 52 U.S.C. § 20507(i)(2), but it stopped short of requiring States to go beyond that and disclose

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

sensitive voter information. As for HAVA, it contains no disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. *Id*. § 21083(a)(1)(A). In short, it simply makes no sense to say that Congress intended Title III to preempt state privacy laws protecting highly sensitive information so that the federal government could assess compliance with voter list maintenance under the NVRA and HAVA—statutes passed decades later that reflect a congressional judgment *not* to preempt such laws. Thus, just as with the NVRA, nothing in Title III prohibits the "redaction of uniquely or highly sensitive personal information in the Voter File." *PILF*, 92 F.4th at 56; *accord Voter Reference Found.*, 160 F.4th at 1083 n.14.

DOJ can point to no statute that authorizes it to create an unprecedented, national voter registration database, let alone one that could be compared with other federal databases in aid of a nationwide, federal voter purge. Certainly, the CRA cannot be read to do so, given that the CRA's purpose is to assist investigation of the "*infringement or denial* of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228 (emphasis added). And because Congress's preemption power extends "only so far as it is exercised, and no farther," *Inter Tribal Council*, 570 U.S. at 9, nothing in the CRA or any other federal law can be read to preempt state laws that prohibit sharing Nevada's statewide voter registration list when it would be used for this prohibited purpose that Congress has never authorized the federal government to engage in. Consequently, Secretary Aguilar properly refused to share an unredacted copy of Nevada's statewide voter registration list with DOJ.

**III. DOJ has failed to comply with the Privacy Act, which independently requires dismissal.**

The Privacy Act, codified at 5 U.S.C. § 552a, *et seq.*, "offers substantial protections regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). In its rushed effort to sweep up the sensitive information of every

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

registered voter in Nevada, DOJ overlooked the Privacy Act's basic procedural requirements. As a result, the Privacy Act independently prohibits DOJ from obtaining Nevada's statewide voter registration list.

The Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). Both of those terms are given specific definitions by the statute. A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his *name, or the identifying number . . . or other identifying particular assigned to the individual*") (emphasis added). Nevada's statewide voter registration list, which contains the names and other unique identifying information of all registered voters in Nevada, plainly qualifies as a "system of records" under the Privacy Act. *Cf.* Compl. at 8 (demanding statewide voter registration list including "each registrant's name, date of birth, address, and . . . the last four digits of the registrant's social security number, driver's license/state identification number, or the unique HAVA identifier"). The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Nevada's statewide voter registration list, the obligations imposed by subsection (e) of the Privacy Act are triggered. *See id.* § 552a(e)(4); *see also Weber*, 2026 WL 118807, at *17 (holding that "[t]he Privacy Act applies to the voter records request by the DOJ"). And that is precisely the relief DOJ seeks here: an order from this Court to collect Nevada's statewide voter list. Compl. at 8.

As DOJ attempts to amass state voter registration data onto its own servers, the Privacy Act imposes specific obligations. Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine use[s]" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act is applicable here. In fact, DOJ acknowledges Secretary Aguilar's concerns and stated in its August 14 letter that the requested records will be "treated consistently with the Privacy Act." Mem. in Support of Mot. to Compel, Ex. 3 at 2. It does not, however, identify any SORN that would apply to its quixotic efforts to amass a national voter registration database. *Cf. Weber*, 2026 WL 118807, at *18 (rejecting three pre-existing SORNs DOJ argued could satisfy its Privacy Act obligations).[16]

To allow DOJ to collate sensitive information about every registered voter in Nevada (and the country) would nullify the statute's "procedural safeguards," which "Congress enacted to . . . permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified); *see also Weber*, 2026 WL 118807, at *18. If DOJ wishes to take such a radical step and compile a federal database of the registered voters in the United States, the Privacy Act requires (at a minimum) that DOJ adhere to strict notice-and-comment requirements, by first providing "adequate advance notice" to two congressional committees and the Office of Management and Budget to evaluate the effects on privacy and other rights and then publishing a SORN in the Federal Register that accurately discloses the system of records it intends to create and the uses to which it will put that information with the opportunity for written data, views, and arguments from

---

[16] These concerns have only become more significant given DOJ's recent disclosure that members of DOGE shared sensitive data with a political advocacy group in connection with that organization's attempt to analyze state voter rolls. *See* Notice of Corrections to the Record, *Am. Fed. of State, Cnty., & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-00596-ELH (Jan. 16, 2026), ECF No. 197; *see also* Eileen Sullivan, *DOGE Employees Shared Social Security Data, Court Filing Shows*, N.Y. Times (Jan. 20, 2026) https://www.nytimes.com/2026/01/20/us/politics/doge-employees-social-security-data.html.

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

interested persons. 5 U.S.C. § 552a(e)(4); *see also id.* § 552a(r); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

In short, because DOJ identifies no SORN that covers the system of records it intends to maintain, the Privacy Act prohibits DOJ from collecting Nevada's statewide voter registration list.[17]

**CONCLUSION**

For the reasons stated above, Proposed Intervenor-Defendants respectfully request that the Court grant leave to file this motion and dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[17] There is no impediment to the Court dismissing the complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes failure to comply with the Privacy Act as an affirmative defense, "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). Here, the complaint explicitly references compliance with the Privacy Act, *see* Compl. ¶ 24, and for the reasons stated above, DOJ's collection and maintenance of Nevada's voter registration list do not comply with the Privacy Act.

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

PROPOSED INTERVENORS' MOTION TO DISMISS

Dated: January 27, 2026

Respectfully submitted,

**BRAVO SCHRAGER LLP**


By: */s/ Bradley S. Schrager*


    David R. Fox (NV Bar No. 16536)
    Julianna D. Astarita* (DC Bar No. 90041368)
    **Elias Law Group LLP**
    250 Massachusetts Ave NW, Suite 400
    Washington, DC 20001
    (202) 968-4490
    dfox@elias.law
    jastarita@elias.law

    Walker McKusick* (WA Bar No. 63205)
    wmckusick@elias.law
    **Elias Law Group LLP**
    1700 Seventh Avenue, Suite 2100
    Seattle, WA 98101
    T: (206) 656-017
    F: (206) 656-0180

    Bradley S. Schrager (NV Bar No. 10217)
    Daniel Bravo (NV Bar No. 13078)
    **Bravo Schrager LLP**
    6675 South Tenaya Way, Suite 200
    Las Vegas, NV 89113
    (702) 996-1724
    bradley@bravoschrager.com
    daniel@bravoschrager.com


    *Attorneys for Proposed Intervenor-Defendants NAACP Conference of Idaho, Nevada, and Utah, Nevada Alliance for Retired Americans, Institute for a Progressive Nevada, and Jacqueline Sue Bird*

    *Admitted Pro Hac Vice*

PROPOSED INTERVENORS' MOTION TO DISMISS

ELIAS LAW GROUP LLP
ATTORNEYS AT LAW
WASHINGTON, DC

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2026 a true and correct copy of Intervenors' Motion to Dismiss was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: _/s/ Dannielle Fresquez_
Dannielle Fresquez, an employee of
Bravo Schrager LLP

ELIAS LAW GROUP
LLP
ATTORNEYS AT LAW
WASHINGTON, DC

RESPONSE IN OPPOSITION TO MOTION TO COMPEL