HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division

JONATHON P. HAUENSCHILD
Trial Attorney, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street NE, Room 8.1134
Washington, D.C. 20002
Jonathon.Hauenschild@usdoj.gov
Tel. (202) 215-2110

SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada

SUMMER ALLEGRA JOHNSON
Assistant United States Attorney
District of Nevada
501 Las Vegas Blvd. South
Ste. 1100
Las Vegas, NV 89101
summer.johnson@usdoj.gov
702-388-6336

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff(s),<br><br>v.<br><br><br>FRANCISCO V. AGUILAR, in his Official Capacity as Secretary of State for the State of Nevada<br><br>Defendant(s). | CASE NO: 3:25-CV-00728-ART-CLB<br><br><br>**OPPOSITION TO MOTION TO DISMISS FILED BY INTERVENOR-DEFENDANTS ACLU NEVADA AND YONAS WOLDU (DKT. 68)** |

## I.    INTRODUCTION

The Attorney General of the United States brought this case as part of the investigation into Nevada's list maintenance practices under the Help America Vote Act ("HAVA") and the National Voter Registration Act ("NVRA"). The United States fulfilled the statutory requirements under Title III of the Civil Rights Act of 1960 ("CRA") by sending a written demand for Nevada's

1

statewide voter registration list (SVRL) to aid its investigation. The State, through the Secretary, refused to produce those records. Dkt. 3-1, ex. 4. This action followed. Compl. Dkt. 1.

Many of the issues Intervenor-Defendants ACLU of Nevada and Yonas Woldus (hereafter "ACLU") raise are substantially similar to those raised by Secretary Aguilar or Intervenor-Defendants led by NAACP (hereafter "Int-Def. NAACP"). E.g., arguments related to "basis and purpose." Compare ACLU Mot. to Dismiss, Dkt. 68 at 7-12, 16-20 with Dkts. 42 at 7-8, and 66 at 7-13. For those arguments that are similar, the United States refers this Court to its Consolidated Response, Dkt. 49 at 5-10, 14-17. The United States files this brief Response to address those issues that are dissimilar.

## II.    ARGUMENT

### A. The United States Is Investigating Nevada's Compliance with Federal Election Law

Title III of the CRA is a tool "to facilitate the investigation of [election] records before suit is filed." *United States v. Ass'n of Citizens Councils of La.*, 187 F.Supp. 846, 847 (W.D. La. 1960). As a pre-suit investigatory tool, the law empowers the Attorney General to gather the evidence necessary to determine whether a federal lawsuit "should be instituted" and to use that evidence "in such cases if and when filed." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). The Civil Rights Division's sole purpose for requesting Nevada's SVRL is to assess the State's compliance with the voting laws that the Division enforces. *See* Dkt. 3-1, Ex. 3 at 2 ("The purpose of the request is to ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA"), Second Declaration of Eric Neff in Support of the United States' Motion to Compel and In Opposition to Defendant's Motion to Dismiss ("2d Neff Decl."), Dkt. 49-1, at ¶ 5.

The court in *United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed*, No. 26-1225 (6th Cir. Feb. 25, 2026) held that the "CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights." 2026 WL 362789, *8. *Benson* further held that "the DOJ may use the CRA to investigate possible violations of the NVRA." *Id.*, *citing United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding that an administrative subpoena should be enforced "if the inquiry is within the authority of the agency").

2

To fully investigate Nevada's compliance with federal election law, the United States needs the SVRL with all fields unredacted, as HAVA requires voter registration applicants to provide either their driver license number or the last four digits of their social security number. See 52 U.S.C. § 21083(a)(5)(A). In other, similar, investigations, the United States has discovered violations of federal law. In *United States v. North Carolina Board of Elections*, Case No. 5:25-cv-00283 (E.D.N.C. Sept. 8, 2025) ("*NCSBE*"), for example, the United States found that the defendants both used noncompliant forms and, importantly, that some county boards of elections failed to add the HAVA identifiers to the State's computerized system even where those identifiers were collected. *NCSBE* at Dkt. 72, 2 (Consent Judgement and Order) and Dkt. 1, ¶¶ 35-42 (Compl.). The ACLU's arguments to the contrary misconstrue the efforts, the law, and caselaw. ACLU Mot., 14-16. The NVRA includes two enforcement mechanisms: by the Attorney General and private enforcement. 52 U.S.C. § 20510(a)-(b). The cases cited by ACLU all address private enforcement under § 20510(b). Despite that, all cases cited hold that electronic SVRLs fall within the ambit of "all records" and ordered, at least, their partial production to the private groups seeking to enforce NVRA. *E.g. Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 48-49 (1st Cir. 2024).

One case cited by the ACLU acknowledges the presumption that Congress is aware of existing law when it enacts new ones. *Pub. Int. Legal Found., Inc. v. North Carolina State Board of Elections*, 996 F.3d 257, 264 (4th Cir. 2021), *citing Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) (explaining that "courts 'presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts'"). Congress was, thus, aware of Title III when it enacted both the NVRA and HAVA. Title III contains its own specific privacy protections, while NVRA and HAVA both empower the Attorney General to enforce their provisions. See 52 U.S. § 20510(a) (NVRA), § 20704 (Title III privacy protections), and § 21111 (HAVA).  This awareness is more salient considering Congress made the "rights and remedies established by [NVRA]… in addition to all other rights and remedies provided by law" and specifically *exempted* the last four digits of Social Security numbers from the Privacy Act. 52 U.S.C. §§ 20510(d) and 21083(c).

The ACLU's argument that the Department of Justice is amassing a nationwide voter database is simply wrong. *See* ACLU Mot. at 4-6. As noted by the United States District Court for

3

the Eastern District of North Carolina, such arguments are "speculative and premature." *NCSBE*, Order Denying Motion for Reconsideration of Motions to Intervene at 7. [1] The argument, further is based entirely on unreliable hearsay. *E.g. United States v. Weber*, 2026 WL 118807, * 11 (D. Or. 2026) (relying on "[r]eports from other agencies also point[ing] to the federal government laying the groundwork" for the alleged database).

To fulfill its investigative function, the Civil Rights Division performs an individualized assessment of a state's SVRL. The jurisdiction's SVRL is compartmentalized and maintained by the Civil Rights Division separately from the SVRL of any other jurisdiction. 2d Neff Decl., Dkt. 49-1, ¶ 6. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records. *Id*. The fact that the Civil Rights Division also is assessing whether other jurisdictions are complying with the list maintenance provisions is not relevant to the election records the United States seeks from Nevada nor does it mean the Division is creating a nationwide voter database.

**B.  The United States' Requests for SVRL Are Consistent with Prior Practice**

The enforcement of federal election law is nothing new; it was done before. As mentioned in its Consolidated Response, the United States used the CRA to obtain statewide voter lists to assess list maintenance in Georgia and Texas.[2] Similarly, in 2007, the United States entered a Consent Decree with the State of Maine regarding HAVA compliance and list maintenance. *See United States v. State of Maine*, No. 1:06-cv-00086 (D. Me. Apr. 4, 2007). Paragraph 9(e) of the consent decree required Maine to "provide to the United States in July 2007 and again in January 2009 an electronic copy of voter information from the CVR (computerized statewide voter registration system) that includes the voter's full name, *unique identifier*, date of birth, address, voter jurisdiction, active or inactive status, and (in January 2009 only) whether the voter participated in the 2008 federal election." Dkt. 7 at 7-8 in *Maine*, 1:06-cv-00086 (emphasis

---

[1] Dkt. 87 in No. 5:25-cv-00283

[2] Dkt. 49 at 18-19.

added).[3] The United States entered similar agreements with the States of New Jersey and Indiana to enforce voter registration list maintenance.[4] The original consent decree for Indiana required the State of Indiana to "retain voter registration and list maintenance records related to the terms of this agreement for the time periods provided by… [Section 20701]." Dkt. 5 at 6 in *United States v. Indiana*, 1:06-cv-01000 (S.D. Ind. June 5, 2006).

Just over two years later, the United States moved to amend the Consent Decree to obtain the full, unredacted SVRL, including driver license numbers and social security numbers. Dkt. 16 in *Indiana*, 1:06-cv-01000. As discussed in the Motion, the United States was entitled to the unredacted SVRL pursuant to Title III, though Indiana thought its laws provided for the confidentiality of the information. *Id*. at 2. Both Indiana and the United States believed the Supremacy Clause of the Constitution preempted Indiana's confidentiality laws and neither party believed that "compliance with this request [was] a release of public information to a member of the public." *Id*. Importantly, the United States promised to "use the voter registration list information to assess the State's compliance with federal voting laws, including, but not limited to, the NVRA." *Id*. The Order granting the Motion to Amend the Consent Decree required Indiana, within 21 days of the order, to

> immediately make available to the United States the full statewide voter registration list including, where available, the following information: each registered voter's full name, address, full date of birth, voter identification number as defined in IC 3-5-2-50.1, driver license number, race, voter status… and voting history. The State shall produce such data in electronic format on a CD ROM or DVD.

> Dkt. 18 in *Indiana*, 1:06-cv-01000.

---

[3] Paragraph 11 of the Consent decree explicitly invokes the CRA at 42 U.S.C. § 1974. 42 U.S.C. § 1974 was recodified at 52 U.S.C. § 20701. Dkt. 7 at 9 in *Maine*, 1:06-cv-00086. *See also McIntyre v. Morgan*, 624 F.Supp. 658, 664 (S.D. Ind. 1985) (42 U.S.C. § 1974 requires preservation of election records).

[4] *See United States v. New Jersey*, No. 2:06-cv-04889 (D. NJ. Oct. 12, 2006). In New Jersey, paragraph 5 of the stipulated order required the HAVA identifiers to be provided and paragraph 14 required Defendants to retain voter registration and list maintenance records. Dkt. 2 in 2:06-cv-04889.

The United States' use of Title III of the CRa is not limited to investigating compliance with HAVA and HVRA. It has also used the law in the enforcement of the Uniformed and Overseas Citizen Absentee Voting Act ("UOCAVA"). The United States sued Alabama for the State's noncompliance with 42 U.S.C. § 1973ff-1(c),[5] which required the State to report to the Election Assistance Commission, not later than ninety days after a regularly scheduled general election for Federal office, certain data regarding ballots from absent uniformed services voters and overseas voters. *See* Dkt. 1, *United States of America v. Alabama*, Case No. 2:08-cv-00920 (M.D. Ala. March 28, 2009). The United States sought data in 21 Alabama counties under the CRA, and the Court issued an Order approving that request, and indicated that it would send demand letters to each of those counties for those election records.[6] *Id.* at Dkt. 24; a copy of a letter sent to Shelby County in 2009 requesting election records pursuant to Title III is attached to the Declaration of Jonathon P. Hauenschild as Ex. 1. ("Hauenschild Decl.") The United States filed a similar lawsuit in Vermont to obtain records for enforcement of the UOCAVA reporting requirement and the parties agreed that election officials are required to retain election records under the CRA. *See, e.g.*, Dkt. 1, *United States of America v. Vermont*, Case No. 2:08-cv-00217 (D. Vt. Feb. 26, 2009).

The United States has also used the CRA in enforcement of the Voting Rights Act. The United States sought election records from Georgia Counties gathering evidence for the lawsuit under Section 2 of the Voting Rights Act in *United States v. Georgia*, No. 1:21-cv-02575 (N.D. Ga. June 25, 2021), Dkt. 1. The Civil Rights Division sought election information from 159 counties in Georgia, and demand letters under Title III were sent to some of those counties. A copy of a letter sent to Newton County, Georgia is attached to Hauenschild Decl. as Ex. 2. The Federal Prosecution of Election Offenses explains under the heading "Retention of Federal Records: 52 U.S.C. § 20701" that "[t]he detection, investigation, and proof of election crimes – in many instances Voting Rights Act violations – often depend[s] on documentation generated during the voter registration, voting, tabulation, and election certification processes." U.S. Dep't of Just.,

[5] UOCAVA recodified at 52 U.S.C. §§ 20301, *et seq.*

[6] 42 U.S.C. § 1974 was recodified at 52 U.S.C. § 20701.

*Federal Prosecution of Election Offenses* 75 (8th ed. 2017).  It provides that "under Section 20701, all documents and records that may be relevant to the detection or prosecution of federal civil rights or election crimes must be maintained if the documents or records were generated in connection with an election that included one or more federal candidates." *Id*. at 78.[7]

The United States' efforts to investigate compliance with federal election law is not new. What is new is the extent to which States are fighting these efforts and how much litigation is necessary to obtain those records. The United States' efforts, then in 2026, are precedented, while coordinated effort to impede federal law enforcement investigations of HAVA and the NVRA is something not witnessed since Title III's enactment and original actions in the early 1960s.[8]

### III.    RESPONSE TO AMICUS BRIEFS

Amici mostly raise duplicative arguments made by Defendants and Intervenor-Defendants which have largely been addressed by the United States in its Response to the Motions to Dismiss (Dkt. 49) and Reply in Support of its Motion to Compel (Dkt. 51). The United States will not repeat those arguments here and otherwise incorporated them hereby against Amici.

### IV.    CONCLUSION

The United States has complied with the statutory requirements under CRA Title III. It made a written demand for Nevada's SVRL addressed to Secretary Aguilar, the State's Chief Election Officer. The demand stated the basis as Title III's investigatory power and purpose as ascertaining Nevada's compliance with NVRA and HAVA. Nevada refused to comply with the written demand, necessitating this Court's involvement. The full voter file, including unredacted

---

[7] In April 2024, the Department of Justice also issued guidance that explains Title III of the CRA requires election officials to retain election records. "The Act protects the right to vote by ensuring that federal elections records remain available in a form that allows the Department to investigate and prosecute both civil and criminal election matters under federal law." U.S. Dep't of Justice, *Federal Law Constraints on Post-Election 'Audits'* 2 (April 2024), https://www.justice.gov/crt/media/1348586/dl?inline (accessed April 10, 2026)

[8] Congress enacted Title III because States interfered with federal investigations into election practices and deleted records within 30 days of a voter's rejected registration. *See* Testimony of Deputy Attorney General Lawrence E. Walsh, *Hearings Before the Committee on the Judiciary, United States Senate on H.R. 8601, March 28 and 29, 1960*, 9-10.

Social Security numbers, Driver License information, address, and date of birth are all necessary to confirm compliance with HAVA and NVRA. Wherefore, the United States respectfully requests that this Court deny all Motions to Dismiss including the ACLU's Motion.

Respectfully submitted this 10th day of April, 2026.

SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada

SUMMER ALLEGRA JOHNSON
Assistant United States Attorney
District of Nevada

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General
Civil Rights Division

ERIC V. NEFF
Acting Chief
Voting Section, Civil Rights Division


/s/  *Jonathon P. Hauenschild*
JONATHON P. HAUENSCHILD
Trial Attorney
Voting Section, Civil Rights Division
4 Constitution Square
150 M Street NE, Room 8.1134
Washington, D.C. 20002
Jonathon.Hauenschild@usdoj.gov
Tel. (202) 215-2110

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 10, 2026, a true and correct copy of the foregoing document along with all attachments was served via the Court's ECF system to all counsels of record.


*/s/ Jonathon P. Hauenschild*
Jonathon P. Hauenschild