SADMIRA RAMIC, ESQ. (15984)
CHRISTOPHER M. PETERSON, ESQ. (13932)
**AMERICAN CIVIL LIBERTIES**
**UNION OF NEVADA**
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 718-3213
Emails: ramic@aclunv.org
peterson@aclunv.org

JONATHAN TOPAZ*
New York Bar No. 5671151
WILLIAM HUGHES*
New York Bar No. 5867346
THERESA J. LEE*
New York Bar No. 5022769
SOPHIA LIN LAKIN*
New York Bar No. 5182076
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
Emails: jtopaz@aclu.org
whughes@aclu.org
tlee@aclu.org
slakin@aclu.org
* *admitted pro hac vice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRANCISCO V. AGUILAR, in his Official Capacity as Secretary of State for the State of Nevada, <br><br> Defendant. | Case No. 3:25-cv-728 <br><br> **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF INTERVENOR-DEFENDANTS THE ACLU OF NEVADA AND YONAS WOLDU** |

Intervenor-Defendants the ACLU of Nevada and Yonas Woldu respectfully submit this reply memorandum of law in support of their motion to dismiss. *See* ECF 68.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In arguing against dismissal, the United States does not identify any proper "basis" or "purpose" for its request—let alone "the basis" and "the purpose," which is what the Civil Rights Act of 1960 ("CRA") requires it to disclose. 52 U.S.C. § 20703. In the end, its only argument is that the CRA—a statute designed to protect the right to vote—requires states to turn over voters' sensitive personal data summarily, without any procedural protections, assessment of the United States' basis and purpose, or judicial review. That position contravenes the CRA's unambiguous text, congressional purpose, binding Supreme Court precedent, the Federal Rules of Civil Procedure, and common sense.

The United States casts this Court's role as a rubber stamp, claiming Title III of the CRA entitles it to whatever it wants, whenever it wants, no matter how thin of a justification it gins up. This is not the law, particularly here, where the DOJ seeks to pervert the CRA to weaponize voters' data against them on the basis of a facially deficient pleading and a pretextual rationale. Every single court to yet issue a decision in the DOJ's cookie-cutter lawsuits seeking states' unredacted voter files on near-identical grounds has dismissed these cases. *See United States v. Amore*, No. 1:25-cv-639-MSM-PAS, Dkt. 51 (D. R.I. Apr. 17, 2026) (attached as Exhibit 1); *United States v. Galvin*, No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026). This Court should do the same.

**ARGUMENT**

## I.  PLAINTIFF IS NOT ENTITLED TO SUMMARY PROCEEDINGS.

The United States' main argument for why its Complaint survives dismissal is that core procedural protections under the Federal Rules of Civil Procedure, including motions under Rule 12, are categorically unavailable in Title III proceedings. ECF 49 at 5–10. Plaintiff has not cited binding authority for this proposition, and there are no provisions within the CRA or Federal Rules that support this limitation.

The first step of statutory interpretation is interpreting the plain meaning of the statute's text. *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017) ("We begin, as always, with the text."). Title III provides that when the Attorney General makes a demand for voting-related records or papers, the federal district court where such demand is made "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). This "appropriate process" is set forth in the Federal Rules of Civil Procedure, which "govern the procedure in *all* civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1 (emphasis added), subject to a narrow set of express exceptions which does not include Title III requests, Fed. R. Civ. P. 81. Under the canon of construction *expressio unius est exclusio alterius*—when one is mentioned, the other is excluded—the fact that Rule 81 enumerates specific exceptions to the applicability of the Rules implies that there are no other proceedings under which the Rules are not applicable. *See Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." (internal quotation marks omitted)).

The Supreme Court's binding decision in *United States v. Powell*, 379 U.S. 48 (1964)—decided *after* the non-binding case on which Plaintiff principally relies, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)—requires the same conclusion. *See generally* Ex. 1, *Amore*, at 8–9. Like Title III, the statute at issue in *Powell* confers jurisdiction on district courts "by appropriate process to

compel" compliance with federal document demands. *See* 26 U.S.C. § 7604(a). Interpreting that statute, the Supreme Court explained that "[b]ecause [§] 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply" and the court may "inquire into the underlying reasons for the examination [of records]." *Powell*, 379 U.S. at 58 & n. 18. In response, Plaintiff attempts to cabin *Powell*'s holding to its specific circumstances, claiming that the analysis in *Powell* does not apply here because the Internal Revenue Code[1] "prohibited the Government from subjecting a taxpayer 'to unnecessary examination or investigations.'" ECF 49 at 7 (quoting 26 U.S.C. § 7605(b)). But the Supreme Court in *Powell* held that "the Federal Rules of Civil Procedure apply" *not* because of this "unnecessary examination or investigations" language in § 7605(b), but "[b]ecause [§] *7604(a)* contains no provision specifying the procedure to be followed in invoking the court's jurisdiction." *Powell*, 379 U.S. at 58 n.18 (emphasis added). The same dispositive language in Section 7604(a) is included also in the CRA: "[t]he United States district court … shall have jurisdiction *by appropriate process*." 52 U.S.C. § 20705 (emphasis added). In other words, the Supreme Court held in *Powell* that the Federal Rules of Civil Procedure apply due to statutory language that appears, in identical form, in the CRA.

To the extent *Powell* leaves any ambiguity—which it does not—the Supreme Court further confirmed this interpretation in subsequent cases. *See Donaldson v. United States*, 400 U.S. 517, 528 (1971) ("The Civil Rules, of course, do have an application to a summons proceeding." (citing Fed. R. Civ. P. 81)), *superseded by statute on unrelated grounds as recognized by Polselli v. IRS*, 598 U.S. 432 (2023); *see also Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (Rehnquist, J., in chambers) (same). The language quoted in both *Donaldson* and *Becker*—from what was then Federal Rule of Civil Procedure 81(a)(3)—is materially identical to the language in current Federal

---

[1] It is unclear whether Plaintiff argues that *Powell* is distinguishable as applying only to IRS subpoenas, as opposed to other administrative subpoenas. Regardless, any such argument is foreclosed by Ninth Circuit precedent, which has applied the *Powell* framework to cases involving administrative subpoenas issued by agencies other than the IRS. *See, e.g.*, *E.E.O.C. v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (applying to administrative subpoena issued by the Equal Employment Opportunity Commission).

Rule of Civil Procedure 81(a)(5), which governs this case today. Fed. R. Civ. P. 81(a)(5) ("These rules apply to proceedings to compel . . . the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings."). Plaintiff provides no explanation for how it squares its interpretation with these decisions and in the Federal Rules themselves.

Finally, the United States affirmatively chose to commence this action by filing a Complaint. *See* Compl., ECF 1. The United States invoked the Rules to initiate this litigation and to defend its pleadings elsewhere, and cannot now disclaim those choices because the results proved unfavorable. *See Oregon*, 2026 WL 318402, at *8 n.1 ("Even if *Lynd* applied here, the Court doubts its applicability here where Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation. By contrast, *Lynd* appears to contemplate an application directly to the court for the records."); Ex. 1, *Amore*, at 9 n.1 (similar).

## II. PLAINTIFF'S REQUEST IS LEGALLY DEFICIENT BECAUSE IT OFFERS AN INADEQUATE AND PRETEXTUAL STATEMENT OF ITS BASIS AND ITS PURPOSE.

### A. Plaintiff's Demand Fails to Satisfy Title III's Basis-and-Purpose Requirements.

Dismissal is warranted because Plaintiff has not satisfied Title III's requirement that the Attorney General provide in writing "the basis and the purpose" supporting the demand for Nevada's unredacted voter file. 52 U.S.C. § 20703. This statutory requirement "is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute" and prevents DOJ from "embark[ing] on a fishing expedition of voter records in any state looking for concerns, without identifying a single issue with the state's policies beforehand." *Weber*, 2026 WL 118807, at *9.

In its briefing, Plaintiff asserts in a conclusory manner that "the basis for the demand was Title III of the CRA and the purpose was to ascertain Nevada's compliance with the list maintenance requirements of the NVRA and HAVA." ECF 49 at 4. Both are patently insufficient. As to the former, the basis for a Title III request is a statement as to why the United States believes there is some relevant violation of law. *See Lynd*, 306 F.2d at 229 n.6; *accord Weber*, 2026 WL

118807, at *9 ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."); *Galvin*, 2026 WL 972129, at *3 (finding that "the basis" under Title III "must be 'the' factual basis, not just a conceivable or possible basis," for the demand); Ex. 1, *Amore*, at 11 ("the 'basis' contemplated by Title III is a factual, not legal basis."). As such, Title III cannot itself provide the basis: "[t]his argument confuses the legal authority under which the Attorney General made the demand—the CRA—and the statute's requirement to state 'the basis'—the foundation in fact or evidence for the demand." *Galvin*, 2026 WL 972129, at *5; *see also* Ex. 1, *Amore*, at 11 ("To read 'basis' as meaning a legal basis would conflate that requirement with the required statement of the demand's 'purpose.'"). Here and elsewhere in these cookie-cutter lawsuits, "[t]he United States cites no authority for the proposition that Title III's 'statement of the basis' prerequisite requires only a citation to the statute itself," and in fact "courts have consistently interpreted this statutory text to require a statement of the factual basis giving rise to the demand." *Galvin*, 2026 WL 972129, at *5. This accords not just with the weight of authority and the statute's plain text, but also with common sense: if DOJ could cite Title III as a basis for its request under Title III, it would by definition always satisfy the statute's requirements. This tautology would functionally erase the requirement. *See* Ex. 1, *Amore*, at 12 ("Congress could not have intended Title III to be interpreted in this redundant and circular manner.").

In its recent filing responding to the other Intervenor-Defendants' supplemental filing informing this Court about the *Galvin* decision, DOJ concedes it has no factual basis for its demand. *See* ECF 72. DOJ insists—without citation to any authority—that it "disagrees with *Galvin*'s" straightforward interpretation that Title III's basis requirement requires a "factual basis, not just a legal basis, to support a demand." *Id.* at 2 (internal quotation marks omitted). If this Court agrees with this interpretation, DOJ writes, "the United States requests that the Court provide leave for the United States to send the Defendant[s] a curing elaboration letter." *Id.* In other words, Plaintiff *admits* that if a factual basis is required, its letters to Nevada must be "cur[ed]" because those letters do not state a sufficient factual basis. *See also generally* Ex. 1, *Amore*, at 7 (at a

hearing "the United States acknowledged that the Demand Letter stated no factual basis for DOJ's request" for Rhode Island's unredacted voter file). This concession alone is grounds for dismissal.[2]

As to the purpose, DOJ must show how the requested records would help it in "investigating violations of individuals' voting rights." *Oregon*, 2026 WL 318402, at *10; Ex. 1, *Amore*, at 14; *accord Lynd*, 306 F.2d at 229 n.6. It offers no reason to believe the unredacted voter file would help it do so. *See* Ex. 1, *Amore*, at 14 ("[T]he purpose stated in the Attorney General's demand—purportedly, to ensure compliance with the NVRA and HAVA—does not plausibly relate to individual voting rights."). The NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters," 52 U.S.C. § 20507(a)(4), and HAVA requires states to "perform list maintenance . . . on a regular basis" in accordance with the NVRA, *id.* § 21083(a)(2)(A). Both laws delegate the mechanisms for list maintenance to the states. *See id.* § 20507(a)(4), (c)(1); § 21083(a)(2)(A); § 21085. The unredacted voter file would not allow DOJ to evaluate Nevada's compliance with these laws because the file reflects just one point in time. Even if DOJ identified voters who could permissibly be removed under the NVRA— which it has not—their mere presence on the list of registered voters would not suggest that Nevada failed to comply with federal law. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (describing a "reasonable effort" as "a serious attempt that is rational and sensible" which "need not be perfect, or even optimal, so long as it remains within the bounds of rationality"), *cert. denied*, 2026 WL 568298 (U.S. Mar. 2, 2026). Nor does the DOJ provide any explanation as to why it needs an *unredacted* version of the voter file.

Plaintiff now asserts that "other, similar, investigations," including one in North Carolina, have uncovered "violations of federal law." ECF 71 at 3. This is irrelevant for two reasons. First, DOJ references an entirely separate investigation about North Carolina's compliance with federal law, and DOJ provides no basis whatsoever to believe that any of the alleged HAVA violations

---

[2] In any event, such a letter could not cure the deficiencies of Plaintiff's Complaint, because Title III requires a statement of "*the* basis and *the* purpose" for DOJ's demand, 52 U.S.C. § 20703 (emphasis added)—not post-hoc, pretextual rationalizations. *See infra* Argument Section II.B.

uncovered there, or anything remotely similar, are occurring in Nevada. Plaintiff has nowhere—in its letters to Nevada or in this litigation—alleged any evidence of anomalies or anything inconsistent with reasonable list maintenance efforts that Nevada has conducted. *See generally* Ex. 1, *Amore*, at 12–13 ("Absent from the demand are any factual allegations suggesting that Rhode Island may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA. This alone would be enough to foreclose judicial enforcement of the demand."). Indeed, North Carolina's alleged violations in that case were evident from the face of the state voter registration form, *see* ECF 72, *United States v. N.C. State Bd. of Elections*, 5:25-cv-283-M-RJ, at 2 ("the Complaint alleges that Defendants used state voter registration forms and instructions that did not explicitly require a voter to provide a driver's license or the last four digits of a social security number"); the same is not true of Nevada's voter registration form, which requires voters to include their driver's license number and/or the last four digits of their social security number, *see* State of Nevada Voter Registration Application, (last visited Apr. 14, 2026) https://www.nvsos.gov/sosvoterregform/. Second, this lawyer-made argument is immaterial because Title III requires that the purpose be detailed "in writing," 52 U.S.C. § 20703; "[t]he statute therefore directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand" contains a satisfactory purpose, *Galvin*, 2026 WL 972129, at *3.

Plaintiff's last-ditch efforts to save its unlawful demand are unavailing. Plaintiff notes that Congress was "aware of Title III when it enacted both the NVRA and HAVA," and the latter two statutes "both empower the Attorney General to enforce their provisions." ECF 71 at 3. But no one argues that DOJ lacks a role in enforcing Title III. Rather, based on the statute's plain language, DOJ must take basic steps to comply with the statute, and it has failed to do so here. Congress *is* surely aware that for years courts around the country have consistently interpreted the NVRA's public disclosure provision—which uses the same language as the CRA's corresponding provision, *see* 52 U.S.C. §§ 20703, 20507(i)(1)—to permit and sometimes affirmatively require redaction of sensitive personal information in the voter file. ECF 68 at 13–15; *see also infra*

Argument Section III. If anything, that Congress has not sought to subsequently amend the NVRA's public disclosure provision is an indication that these courts are not misreading the congressional intent.

Plaintiff also notes that, at times in the past two decades, it has entered into consent decrees or settlement agreements with some states to obtain statewide voter lists. ECF 71 at 4–7. Yet DOJ acknowledges that these disputes were all resolved through mutual agreement, often very early on in litigation. Other states' past choices with respect to their voters' information shed no light on the requirements of Nevada law or DOJ's entitlement to private information under Title III, and whether this Court must compel unwilling states to turn over that information. Indeed, regardless of what happened years ago, several states that DOJ names—Georgia, Maine, and New Jersey— have similarly refused to turn over their states' unredacted voter files in response to materially identical demands from DOJ. *See* ECF 16-1, *United States v. Raffensperger*, 1:26-cv-485-ELR, at 13 (N.D. Ga. Feb. 5, 2026) (Georgia's motion to dismiss arguing—among other things—that "[t]he CRA does not entitle the DOJ to the [personal identifying information] of Georgia voters because it does not preempt the Georgia statutes that protect that information."); ECF 54, *United States v. Bellows*, 1:25-cv-468-LEW, at 2 (D. Me. Dec. 12, 2025) (Maine arguing that "[n]o responsible Secretary of State, charged under state and federal law with protecting the confidentiality of voters' [personal data], would have acquiesced to such an audacious and inscrutable demand" from DOJ); ECF 1, *United States v. Caldwell*, 3:26-cv-2025, ¶¶ 20–36 (D. N.J. Feb. 26, 2026) (describing New Jersey repeatedly refusing to turn over the unredacted voter list).

DOJ further asserts that private parties have been given "even more detailed voter data" than it requests here, citing *Coalition for Open Democracy v. Scanlan*, No. 24-cv-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025). *See* ECF 49 at 22. *Scanlan* is a challenge to a New Hampshire law requiring proof of citizenship to register to vote, and review of the state voter file was extremely relevant in determining the impact of the challenged law. And *Scanlan* affirms Intervenor-Defendants' emphasis on the need to redact and protect confidential information within the voter files. There, the produced voter file did not include sensitive information like social

security numbers or driver's license numbers, and it was produced in discovery subject to numerous, severe restrictions—including a scrupulous protective order that designates the file as "highly confidential," restricts its use to the present litigation, restricts viewing to only a tight circle of designated personnel using "air gapped" computers, and mandates destruction of the data after the case is closed. *See* Protective Order at 4, 13–17, Schedule A at 2–3, *Coal. for Open Democracy v. Scanlan*, No. 24-cv-312-SE (D.N.H. June 18, 2025), ECF 87 & 87-1. Far from supporting the DOJ, *Scanlan* shows how production of sensitive information, when truly necessary to advance voting rights, should be handled. The United States, in contrast, seeks the complete and unredacted Nevada voter file, with all voters' protected personal information included, subject to zero restrictions except its own dubious assurances that it will comply with federal privacy rules—at least insofar as it sees fit. *See* ECF 49 at 21.

Finally, Plaintiff insists that this Court cannot "question or examine" the United States' compliance with Title III's basis-and-purpose requirements, *id.* at 16, but as noted *supra*, the Federal Rules themselves and binding Supreme Court precedent foreclose this argument. The United States' request is subject to normal judicial scrutiny under Rule 12. The Complaint fails to plead facts sufficient to survive a motion to dismiss because it does not plausibly allege that the Attorney General set forth in writing "the basis and the purpose" supporting her unprecedented demand for sensitive voter information. 52 U.S.C. § 20703.

### B. Plaintiff's Demand Separately Fails Because it is Pretextual.

The DOJ's allegations regarding the basis and purpose of its request are legally insufficient for an additional reason: they do not actually provide "*the* basis and *the* purpose" for the request because the justifications provided are pretextual. 52 U.S.C. § 20703 (emphasis added). DOJ does not contest *any* of the evidence that Defendant and Intervenor-Defendants have put in their briefs indicating that the stated basis and purpose are pretextual, stating only that this argument is based on "third-party hearsay." ECF 49 at 23; *see also* ECF 71 at 4.

In fact, it is not hearsay, but the DOJ's own actions and statements, that undercut its representations. *Cf.* Fed. R. Evid. 801(d)(2). It is a matter of public record that the DOJ has

sued 29 states and the District of Columbia to force the production of complete and unredacted voter registration lists. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Feb. 27, 2026), https://perma.cc/8YMZ-AD97 (collecting court filings); *see generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). It is DOJ who admitted in a recent court filing to sharing state voter roll information with outside groups seeking to deny election results, as well as unknown amounts of social security data on an unapproved third party server, in a "manner [that] is outside [the U.S. Social Security Administration's] security protocols." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH, ECF 197, at 5–6 (D. Md. Jan. 16, 2026). It is DOJ who is actively soliciting states to sign a memorandum of understanding that violates the very federal voting statute the US DOJ is purporting to protect. *See* ECF 68 at 12. It was *the then-Attorney General herself* who wrote to the Minnesota Governor tying "Operation Metro Surge," which involves well-documented abuses by United States Immigration and Customs Enforcement against the civilian population in the state with, among other things, to Minnesota's refusal to turn over its unredacted voter file.[3] None of this is hearsay, and the United States does not have an answer for any of it. This evidence and the Complaint's conclusory allegations prove the kind of "significant mismatch" between stated and actual reasons that the Supreme Court has held that courts need not accept. *Dep't of Com. v. New York*, 588 U.S. 752, 755, 785 (2019) (rejecting agency's "contrived" justification and refusing to "exhibit a naiveté from which ordinary citizens are free") (internal quotation marks omitted).

Consequently, federal courts in *Weber* and *Oregon*, considering the same contrived arguments that Plaintiff puts forward in this case, reached the inevitable conclusion: "It appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 2026 WL 118807, at *10; *see also*

---

[3] *Read Bondi's Letter to Minnesota's Governor*, N.Y. TIMES, Jan. 24, 2026, https://perma.cc/H5GY-ZKBS ("Bondi Letter").

*Oregon*, 2026 WL 318402, at *11. The court in *Oregon* found that "[t]he presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Oregon*, 2026 WL 318402, at *11. The court noted that despite the United States' "Oregon-specific concerns about voter list maintenance . . . Plaintiff has in fact requested the same statewide voter registration lists in states across the country." *Id.* The same is true in Nevada. And specifically in regard to then-Attorney General Bondi's letter to the Minnesota Governor, the court found that "[t]he context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data." *Id.*

Put simply, there is overwhelming evidence that Plaintiff's supposed "purpose" for its demand in this case is "contrived," *Weber*, 2026 WL 118807, at *10 (quoting *Dep't of Commerce*, 588 U.S. at 756), and therefore cannot satisfy Title III's requirement that the written demand provide "the basis and the purpose" for the request, 52 U.S.C. § 20703. In fact, Plaintiff's true purpose is almost certainly unlawful; Congress has never authorized the creation of a national voter database, and such a database likely violates the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (provision of the Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). As the *Weber* court found, if DOJ wants to use federal voting statutes "for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose." *Weber*, 2026 WL 118807 at *12.

### III. PLAINTIFF'S REQUEST IS FURTHER DEFICIENT BECAUSE PLAINTIFF IS NOT ENTITLED TO UNREDACTED RECORDS.

Plaintiff insists that it is entitled to Nevada's unredacted voter file—despite existing state law protections against the disclosure of that data, *see* ECF 42 at 9–11—because the CRA itself purportedly "explicitly requires the nondisclosure of records produced to the Attorney General

under the Act," ECF 49 at 20. To support this argument, Plaintiff points only to the fact that the CRA includes the phrase "all records" in its disclosure provision. *Id.* (citing 52 U.S.C. § 20701). But far from being "explicit," the CRA is silent as to whether the records at issue may be redacted. Plaintiff's argument is particularly meritless because, as noted *supra* and in Intervenor-Defendants' opening brief, *see* ECF 68 at 13–15, courts have routinely found that redactions are permissible—and indeed sometimes constitutionally *required*—under the NVRA's public disclosure provision which uses the same "all records" language, *see* 52 U.S.C. § 20507(i)(1). It would be incongruous and irrational to permit redaction under the NVRA's public disclosure requirement but prohibit it under the CRA's when both use the same language.

Plaintiff briefly acknowledges those cases permitting and/or requiring redaction under the NVRA's public disclosure provision, but it notes that those cases "all address private enforcement" under 52 U.S.C. § 20510(b), rather than enforcement by the Attorney General under 52 U.S.C. § 20510(a). ECF 71 at 3. This is a distinction without a difference. The statute makes no distinction between the scope of the records available to the public and those available to the Attorney General. *See* 52 U.S.C. § 20510(a)–(b). Anyone—including individual voters, groups that protect the right to vote, and government officials—has the same right to the same records under the public disclosure provisions of the NVRA and CRA. Plaintiff provides no reason to depart from the plain text.

## CONCLUSION

For the foregoing reasons, and the reasons detailed in Intervenor-Defendants' motion to dismiss, *see* ECF 68, the United States' Complaint should be dismissed with prejudice.

Dated:  April 17, 2026

Jonathan Topaz*
New York Bar No. 5671151
William Hughes*
New York Bar No. 5867346
Theresa J. Lee*
New York Bar No. 5022769
Sophia Lin Lakin*
New York Bar No. 5182076
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18ᵗʰ Floor
New York, NY 10004
Telephone: (212) 549-2500
Emails: jtopaz@aclu.org
whughes@aclu.org
tlee@aclu.org
slakin@aclu.org

*admitted pro hac vice*

Respectfully submitted,

Sadmira Ramic (Bar No. 15984)
Christopher M. Peterson (Bar No. 13932)
AMERICAN CIVIL LIBERTIES UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
Telephone: (702) 366-1226
Facsimile: (702) 718-3213
Emails: ramic@aclunv.org
peterson@aclunv.org

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF INTERVENOR-DEFENDANTS THE ACLU OF NEVADA AND YONAS WOLDU** with the Clerk of the Court for the United States District Court of Nevada by using the court's CM/ECF system on April 17, 2026. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on all participants by:

☒     CM/ECF

☐     Electronic mail; or

☐     US Mail or Carrier Service

_____
ACLU of Nevada Employee