AARON D. FORD
  Attorney General
GREGORY D. OTT (Bar No. 10590)
  Chief Deputy Attorney General
EMILY D. ESPINOSA (Bar No. 16853)
  Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
T:  (775) 684-1195
F:  (775) 684-1108
E:  gott@ag.nv.gov
     edespinosa@ag.nv.gov

*Attorneys for Francisco Aguilar*
*in his Official Capacity as Secretary*
*of State for the State of Nevada*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cv-00728-ART-CLB |
| Plaintiff, | |
| vs. | **NEVADA'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY** |
| FRANCISCO V. AGUILAR, in his Official Capacity as Secretary of State for the State of Nevada, | |
| Defendants. | |

Defendant Francisco Aguilar, in his official capacity as Nevada Secretary of State, respectfully submits this Opposition to the Motion for Leave to File Supplemental Authority to its Motion to Compel Records Demanded Pursuant to the Civil Rights Act of 1960 ("Motion") filed by Plaintiff United States of America, through the Department of Justice ("DOJ").

I.    **THE DEPARTMENT OF JUSTICE'S OFFICE OF LEGAL COUNSEL MEMORANDUM IS NOT ENTITLED TO ANY DEFERENCE UNDER *LOPER BRIGHT*.**

The DOJ asks this Court for permission to file what is, in substance, a belated and unauthorized sur-reply disguised as "supplemental authority." But the document DOJ seeks to add—an internal advocacy piece written by the Department of Justice's own Office

1

of Legal Counsel ("OLC")—is not authority at all.  Rather, it is merely DOJ lawyers opining that other DOJ lawyers are correct after courts around the country have ruled against them in similar cases.

The United States Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) underscores the impropriety of DOJ's request.  Even before *Loper Bright*, OLC opinions were not entitled to "*Chevron*-style deference." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (indicating that an interpretation contained in an agency opinion letter, rather than through formal adjudication or rulemaking processes, does not warrant *Chevron*-style deference).  After *Loper Bright*, the law is even clearer: federal courts—not federal agencies—interpret federal statutes, and agency legal memoranda are entitled to zero deference.[1]  DOJ's attempt to elevate an internal, non-binding Executive Branch memo to the status of "authority" before this Court is inconsistent with Supreme Court precedent that provides courts give no deference to a federal agency.

DOJ's effort to re-package this advocacy as "supplemental authority" is, at its core, an attempt to pad the briefing record with additional pages, even though sur-replies are not permitted without leave of the court.  LR 7-2(b).  Unable to identify a single court that supports its unprecedented reading of Title III, DOJ instead relies on its own internal lawyers to issue a memorandum asserting that DOJ is correct. The timing of this memorandum—published only after at least six federal courts dismissed DOJ's nearly identical lawsuits seeking un-redacted statewide voter files—reveals its true purpose. Though the memorandum says it is memorializing advice from mid-September 2025, it still purports to address "counterargument[s] we have seen," and cites motions filed by state

[1] *See Loper Bright*, 529 U.S. at 402–03 ("[D]elegating ultimate interpretive authority to agencies is simply not necessary to ensure that the resolution of statutory ambiguities is well informed by subject matter expertise.  The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch.  And to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, thy are of course always feel free to act by revising the statute.")

defendants who opposed DOJ's demands. ECF No. 80-1 at 23 & n.22. Normally when a litigant disagrees with a court's decision—or six of them—the litigant would seek appellate review of the decision(s). DOJ's attempt to instead have other DOJ lawyers contradict the legal decisions of the court(s) should be rejected as advocacy, not legal authority.

## II.    IF CONSIDERED, THE OFFERED "AUTHORITY" ACTUALLY SUPPORTS DEFENDANT'S POSITION.

As to its substance, the OLC memo does more to harm DOJ's case than to help it. The memorandum concedes that DOJ's "basis" for demanding Nevada's voter files was nothing more than its general "purpose" of evaluating compliance with NVRA and HAVA. *See* ECF No. 80-1 at 21. That admission confirms DOJ did not, and could not, satisfy Title III's separate statutory requirement to state both a basis *and* purpose for its demand. Perhaps recognizing that fact, OLC then attempts to collapse the two terms into a "legal doublet," intended to be read to convey a single meaning. *See* ECF No. 80-1 at 23. But it identifies no court, no statutory source, and no historical authority to support this theory. As intervenors have already noted, OLC instead relies on scattered law review articles and judicial opinions that have nothing to do with Title III. *See* ECF No. 82 at 23–24. The memorandum's strained linguistic theory does nothing more than highlight the weakness of DOJ's position on having failed to provide the full basis and purpose.

The memorandum also reveals DOJ's true objective in its quest to obtain states' voter lists. According to OLC, the demands were issued "[i]n response to the President's order to identify those who may be voting illegally," and DOJ may seek to remove individual voters or refer them for prosecution based on the information it obtains. ECF No. 80-1 at 1, 5. This contradicts DOJ's prior correspondence with Nevada, which portrayed the request as a routine review of list-maintenance practices. *See* ECF No. 3-1 at 19 ("The purpose of the request is to ascertain Nevada's compliance with the list maintenance requirements of [federal law]."). It reveals DOJ's actual purpose of seizing for itself the power to mandate the details of states' list maintenance practices by removing and prosecuting specific individuals.

And because OLC's explanation comes long after DOJ made its original demands, it reinforces the core defect in DOJ's position: DOJ lacked any factual "basis" for investigating Nevada's list maintenance procedures when it issued its original demand, as Title III requires.

## III.   CONCLUSION

In short, DOJ is trying to use an internal memorandum, drafted by its own colleagues after multiple defeats in federal court, to bolster arguments that have already failed.  The memorandum is not law, not persuasive, and therefore not "supplemental authority."  It is simply DOJ's attempt to inject more argument into the record after briefing has closed.

For the reasons set forth above, Defendant respectfully requests DOJ's Motion to be denied.

DATED this 21st day of May 2026.

AARON D. FORD
Attorney General

By: /s/ *Emily D. Espinosa*
EMILY D. ESPINOSA (Bar No. 16853)
Deputy Attorney General

*Attorneys for Francisco Aguilar*
*in his Official Capacity as Secretary*
*of State for the State of Nevada*

4

## CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on May 21, 2026, I filed the foregoing document ***Nevada's Opposition to Plaintiff's Motion for Leave to File Supplemental Authority*** via this Court's electronic filing system. Parties that are registered with this Court's EFS will be served electronically.

/s/ *Mark Cryer*
AG Legal Secretary