UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

                              Plaintiff,

    v.

FRANCISCO V. AGUILAR, in his Official Capacity as Secretary of State for the State of Nevada, et al.,

                              Defendants.

Case No. 3:25-cv-00728-ART-CLB

ORDER
(ECF Nos. 2, 42, 66, 68, 77, 80, 84, 87, 88, 90, 91, 92)

Plaintiff United States of America (the "Government," or "DOJ") brings this action to compel Nevada Secretary of State Francisco Aguilar (the "Secretary") to produce Nevada's unredacted state voter registration database. The Department of Justice's Civil Rights Division, Voting Section has sued at least forty different states for similar reasons. The Government has filed a Motion to Compel Production of Records with a motion for leave to file a supporting supplement. (ECF Nos. 2, 80.) The Secretary has filed a motion to dismiss. (ECF No. 42.)

Concerned about their data privacy and voting rights, two groups of parties intervened as defendants. (ECF Nos. 5, 7.) One consists of the ACLU of Nevada and the individual voter Yonas Woldu. The other consists of the NAACP Conference of Idaho, Nevada and Utah; the Nevada Alliance for Retired Americans; the Institute for a Progressive Nevada; and the individual voter Jacqueline Sue Bird. Defendant-Intervenors have filed their own motions to dismiss (ECF Nos. 66, 68) with proposed supplements advising of developments in the parallel cases and in the Ninth Circuit. (ECF Nos. 77, 84, 87, 88, 90, 91, 92.) In support of dismissal, the Democratic National Committee and a group of

1

seventeen states with the District of Columbia have filed two briefs as amicus curiae. (ECF No. 64, 65.)

Joining every other court to have addressed the issue so far, the Court now grants the motions to dismiss and denies the motion to compel. All motions for leave to file supplements are granted.

## I.      Background

Since 2025, DOJ has sent demands to at least forty states seeking their full voter files, including personal information relating to each registered voter (ECF Nos. 7 at 5; 68 at 3.) Nevada is one of those states.

DOJ made its first demand on Secretary Aguilar in a letter dated June 25, 2025. The letter requested "Nevada's current statewide voter registration list" along with fourteen other types of election-related information, and invoked Nevada's election administration and list maintenance obligations under the Help America Vote Act ("HAVA"). (ECF No. 3-1.)

The Secretary provided DOJ with a link to the publicly available Statewide Voter Registration List (the "SVRL" or "VRL").

On August 14, 2025, DOJ said that the public SVRL was not responsive to its request. DOJ said that the state "must" disclose a voter list that "contain[s] *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." (ECF No. 3-1 at 18) (emphasis in original.) DOJ explained that "[w]e have requested Nevada's VRL to assess your state's compliance with the statewide VRL maintenance provisions" of federal law, including the National Voter Registration Act ("NVRA") and HAVA. DOJ claimed that it was also entitled to request records pursuant to Title III of the Civil Rights Act of 1960 (the "CRA"), 52 U.S.C. § 20701, et seq., and demanded a response in seven days.

DOJ did not include in either letter an explanation of why it wished to assess Nevada's compliance with the voter list maintenance laws. In an opinion

2

issued by DOJ's Office of Legal Counsel almost a year later, DOJ represented that in furtherance of executive priorities, it was seeking states' full, unredacted voter rolls to ensure that they "are complying with Congress's demand to remove those who are ineligible to vote from their rolls – whether due to illegal presence in this country or otherwise." (ECF No. 80-1 at 5.) OLC conceded that "this activity may have incidental immigration consequences by providing DHS updated information regarding the location of illegal aliens." (*Id.*)

Secretary Aguilar's office responded to DOJ on August 21, 2025, stating that the information DOJ sought was confidential, not a public record, and subject to careful security measures under Nevada law. Calling DOJ's request "unprecedented in its scope, its [lack of] purported basis, and its purported urgency," the letter explained that the state would conduct an analysis of DOJ's request and follow up. No further correspondence appears in the record.

On December 11, 2025, DOJ filed a lawsuit against the Secretary in this Court, alleging a single count of violating of the CRA, and seeking declaratory and injunctive relief compelling the Secretary to produce the undisclosed portion of the voter file. (ECF No. 1.) With the complaint, DOJ filed a Motion to Compel Production of Records, seeking an electronic version of the unredacted SVRL and other documents on demand. (ECF No. 2.)

## II.      Legal Standard

### A. Appropriate Process for a CRA Demand

As a preliminary matter, the Court must address the Government's argument that no motion except its own Motion to Compel is justiciable in this proceeding. The CRA and Supreme Court caselaw show that the Federal Rules of Civil Procedure apply to this proceeding, and that the Secretary and Defendant-Intervenors are entitled to file motions to dismiss under the Rule 12(b)(6) standard.

According to the Government, it is entitled under the CRA to a summary proceeding where the Court must order the Secretary to produce records upon the Government's bare showing that it made a demand on Secretary Aguilar which he refused. (ECF No. 3.) The Government argues that the CRA's purpose is to facilitate pre-lawsuit investigation, and to that end, the statute provides for a proceeding where the Federal Rules of Civil Procedure do not apply, and no pleadings, no discovery, and no motions to dismiss "may be used to question or examine 'the reasons why the Attorney General considers the records essential…'" (ECF No. 49 at 21) (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962)). The Government cites no binding authority for its position that the Federal Rules of Civil Procedure (including the motion to dismiss standard) are inapplicable.

Neither the text of the statute nor the weight of precedent support the Government's position. Section 20705 of the CRA says that "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. The statute does not explain what that "appropriate process" is. Guidance from the Supreme Court directs that in the absence of an indication to the contrary, the Federal Rules of Civil Procedure are part of "appropriate process." In *United States v. Powell*, 379 U.S. 48 (1964), the Supreme Court interpreted 26 U.S.C. § 7604(a), a portion of the Internal Revenue Code which states that district courts may compel witnesses to appear or produce evidence "by appropriate process." The Court explained that "[b]ecause [Section] 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply" and the court may "inquire into the underlying reasons for the examination [of records]." *Powell*, 379 U.S. at 58 & n.18. The Court noted that taxpayers were entitled to an

4

adversary process before enforcement, giving them an opportunity to show that the summons was issued for "improper purpose" or in bad faith, remarking that "a court may not permit its process to be abused." *Id.* at 58. Moreover, in *United States ex rel. Polansky v. Exec. Health Res., Inc.*, the Supreme Court reaffirmed that the "Federal Rules are the default rules in civil litigation," and though Congress may exempt a statutory proceeding from the Rules, courts "[may] not lightly infer that Congress has done so; and silence on the subject is seldom enough." 599 U.S. 419, 436 (2023) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Marek v. Chesny,* 473 U.S. 1, 11–12 (1985)). The Government relies mainly on the out-of-circuit case *Lynd,* 306 F.2d at 226, but to the extent that *Lynd* read an abbreviated procedural requirement into the CRA's prescription of an "appropriate process," its statutory interpretation was arguably superseded by the Supreme Court's subsequent opinions in *Powell* and *Polansky.*

Almost every district court in a parallel case has followed the *Powell* and *Polansky* approach. *See United States v. Fontes,* No. 26-CV-00066, 2026 WL 1177244, *1 (D. Ariz. Apr. 28, 2026) ("Each court which addressed the issue found that the Federal Rules of Civil Procedure apply to the Attorney General's lawsuit") (collecting cases); *see, e.g., United States v. Caldwell,* No. CV 26-2025 (ZNQ) (JTQ), 2026 WL 2186515, at *6 (D.N.J. July 29, 2026); *United States v. Board of Elections of the State of New York*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D. Cal. 2026); *United States v. Amore,* No. 25-CV-00639, 2026 WL 1040637, *4 (D.R.I. Apr. 17, 2026); *United States v. Oregon,* No. 6:25-CV-01666, 2026 WL 318402, *8 (D. Or. Feb. 5, 2026).

### B. Motion to Dismiss under Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678–79.

**III.      Discussion**

### A. Title III of the Civil Rights Act of 1960 (the "CRA")

Title III of the Civil Rights Act of 1960 (the "CRA") was passed in response to de jure discrimination by states against Black voters in the South. *United States v. Benson*, 179 F.4th 470, 475 (6th Cir. 2026). One of those forms of discrimination was the destruction of Black voters' registration applications. *United States v. Benson*, 819 F. Supp. 3d 753, 769 (W.D. Mich.), aff'd, 179 F.4th 470 (6th Cir. 2026). The CRA thus empowers the federal government to investigate allegations of voting discrimination by compelling states to retain and produce documents requisite to voting under certain circumstances and using certain procedures. *Id.*

Section 20701 of the CRA requires states to retain certain voting-related records. It states that every election officer must retain "for a period of twenty-two months from the date of any [federal] election … all records and papers which come into [the official's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701.

Section 20702 ensures the integrity of the records that Section 20701 preserves. It authorizes criminal penalties for "[a]ny person … who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved." *Id.* § 20702.

Section 20703 gives DOJ authority to request the preserved records. Under that section, "[a]ny record or paper required by section 20701 of this title to be retained and preserved" must be "made available for inspection, reproduction, and copying" if the Attorney General makes a "demand in writing" that specifies "the basis and the purpose" for the inspection. *Id.* § 20703.

Section 20705 provides that DOJ's request for records may be enforced in federal court. It grants the federal "district court for the district in which a demand is made… jurisdiction by appropriate process to compel the production of" the voting records. *Id.* § 20705.

**B. The SVRL is not one of the records that the Secretary can be compelled to produce under the CRA.**

Although the briefing before the Court is primarily concerned with whether the Government's demand contained an adequate "statement of the basis and the purpose" under Section 20703, this issue is moot if the SVRL is not the kind of record or paper whose production can be compelled under the CRA. *Fontes*, 2026 WL 1177244, at *3; *see New York*, 2026 WL 1999921, at *8. Only records or papers subject to Section 20701's retention requirement can be compelled, and recent decisions—including, most prominently, a decision by the Sixth Circuit— have determined that voter registration lists are not records subject to retention and preservation under Section 20701. *See Benson*, 179 F.4th at 478-83; *Fontes*, 2026 WL 1177244, at *4-5; *New York*, 2026 WL 1999921, at *8; *United States v. DeMarinis*, No. 25-CV-3934, 2026 WL 1780586, *5 (D. Md. June 18, 2026); *United States v. Wisconsin Elections Comm'n*, No. 25-CV-1036-JDP, 2026 WL 1430354, at *3 (W.D. Wis. May 21, 2026).

7

"[T]he starting point for interpreting a statute is the language of the statute itself." *Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 905 (9th Cir. 2018) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987)). "[W]e should usually give words their plain, natural, ordinary and commonly understood meanings." *United States v. Romo-Romo*, 246 F.3d 1272, 1275 (9th Cir. 2001). "Statutory language, however, 'cannot be construed in a vacuum.'" *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989)). "'It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Davis*, 489 U.S. at 809).

The CRA does not cover SVRL because it does not cover records created by government officials. The primary reason is, in brief, that under Section 20703, DOJ may only request documents that "come into [a state officer of election's] possession." Since the SVRL is compiled and updated by state officials, it "does not 'come into [their] possession.'" *Benson*, 179 F.4th at 479; *see Fontes*, 2026 WL 1177244, at *4. The ordinary meaning of "come into… possession" is to "acquire," "obtain," or "receive." *Benson*, 179 F.4th at 479 ("It would be rather strange to say that the baker has 'come into' possession of the cakes after pulling them out of the oven").

Statutory context provides further support for limiting the documents covered by the CRA to those produced by prospective voters. Election officers must preserve records that come into their possession relating to acts "requisite to voting," which include records of "any application, registration, payment of poll tax, or other act…" 52 U.S.C. § 20701. Election officers do not create applications, registrations, or poll tax receipts. Rather, they obtain them from voters and prospective voters during the registration process. *Benson*, 179 F.4th at 479 (clarifying that before the passage of the CRA, "[t]he sheriff would give the voter

8

a receipt reflecting the payment of the poll tax, and the voter had to give that receipt to election officials to vote.") Focusing on documents that are part of the mechanics of registration "'makes sense given that when the CRA was passed, the federal government's attempts to protect the voting rights of Black citizens had been frustrated by state officials' destruction of voter registration applications.'" *Fontes,* 2026 WL 1177244, at *4 (quoting *Benson,* 819 F. Supp. 3d at 769). Applications, registrations, and receipts of poll taxes required to register to vote "can be examined to determine whether [they were] unlawfully rejected, whereas a list of those who successfully registered to vote would be little help in such an investigation." *Id.* (quoting *Benson,* 819 F. Supp. 3d at 769).

Interpreting the SVRL as a covered record under the CRA would create a conflict between the CRA and other election statutes. The SVRL must be constantly updated, and under the CRA the alteration of any Section 20701 document is punishable by fine, imprisonment, or both. 52 U.S.C. § 20702. The NVRA requires states to "'ensur[e] the maintenance of an accurate and *current* voter registration roll.'" *Fontes,* 2026 WL 1177244, at *4 (quoting 52 U.S.C. § 20501(b)) (emphasis in original). Similarly, "HAVA requires state[s] to 'perform list maintenance with respect to the computerized list *on a regular basis.*'" *Id.* at *5 (quoting 52 U.S.C. § 21083(a)(2)(B)) (emphasis in original). If the SVRL were deemed a Section 20701 document, "then § 20702 would prohibit the [SVRL] from being altered," placing states in an unworkable double bind. *Id.* at *4.

The Government claims that records created by election officials like the SVRL are covered by the CRA. (ECF No. 49 at 22-23). But the Government principally relies on *Alabama ex rel. Gallion v. Rogers,* 187 F. Supp. 848 (M.D. Ala. 1960) and *Lynd,* 306 F.2d at 226, which do not provide support for this claim. *See New York,* 2026 WL 1999921, at *10. *Gallion* concerned the constitutionality of the CRA and reiterated that when records and papers "relate to the acts requisite to voting," the CRA requires that they be preserved and

produced. *Gallion*, 187 F. Supp. at 855. "Similarly, *Lynd* merely recognized that the documents covered by § 20701 are 'sweeping,' but did not make any additional finding which would suggest that § 20701's 'sweeping' language includes the [voter registration list]." *Fontes*, 2026 WL 1177244, at *5 (quoting *Lynd*, 306 F.2d at 226). Neither of these cases undermine the conclusion that records created by state election officials like SVRL are not subject to the CRA's retention and disclosure requirements.

The Government also relies on its 2006 consent judgment with Georgia, a 2008 Memorandum of Understanding with Texas, and an OLC opinion concluding that the CRA covers statewide voter registration lists. (ECF No. 49 at 23 n.9, 80-1). The fact that other states agreed to provide their voter registration lists is irrelevant to a statutory interpretation of Section 20701, and the OLC opinion is not warranted deference when it conflicts with the language of the CRA. *Benson*, 179 F.4th at 482.

For these reasons, this Court joins every court to have addressed this issue in concluding that a voter registration list is not a record or paper that a state must produce to the Government under the CRA.

**C. The Government Has Not Set Forth a "Basis and Purpose" for Seeking Disclosure of the Voter File.**

Although it would be sufficient to conclude that the voter registration file is not a record subject to the CRA's production requirement, the Government fails to state a claim for another reason— because it did not make the kind of demand upon Secretary Aguilar that would trigger his obligation to produce records. Section 20703 requires election officers to produce "[a]ny record or paper required by section 20701 ... upon demand in writing by the Attorney General or his representative." 52 U.S.C. § 20703. "This demand shall contain a statement of the basis and purpose therefor." *Id.* The word "shall" makes the Government's statement mandatory; the word "and" means that the statement must explain

10

both the Government's basis and its purpose, omitting neither. *Benson*, 179 F.4th at 483. Many courts that have addressed the issue have concluded that "basis" does not refer to a legal basis, but a factual basis. *Oregon*, 828 F. Supp. 3d at 1102; *Weber*, 816 F. Supp. 3d at 1182-84; *United States v. Galvin*, 830 F. Supp. 3d 122, 129 (D. Mass. 2026); *United States v. Warner*, No. 2:26-CV-00156, 2026 WL 2018877, at *4 (S.D.W. Va. July 13, 2026); *United States v. Oliver*, No. 1:25-CV-01193-JCH-JFR, 2026 WL 2031479, at *10 (D.N.M. July 14, 2026); *Amore*, 2026 WL 1040637, *4; *see Benson,* 179 F.4th at 483 (concluding that the DOJ's demand lacked a basis even though it cited legal authority); *New York*, 2026 WL 1999921, at *8.

The Government has not met its obligation to provide a basis for its demand. Its first letter to the Secretary of June 25, 2025 did not explain the basis or the purpose for its request. The second letter of August 14, 2025, demanded the voter file with all fields unredacted for "the purpose of … ascertain[ing] Nevada's compliance with the list maintenance requirements of the NVRA and HAVA." (ECF No. 3-1 at 19.) But neither letter purported to allege facts showing a need for an investigation into Nevada's state election system.

The lack of a basis is a sufficient reason to conclude that Secretary Aguilar did not, on the facts alleged in the complaint, violate the CRA by refusing to produce the unredacted voter file. *Benson*, 179 F.4th at 483. The Government has provided "no basis—none." *Galvin*, 830 F. Supp. 3d at 129. "Nowhere does the DOJ articulate any factual suggestion that [Nevada] has violated the NVRA or HAVA, indicate the State has a pattern or practice of noncompliance with the same, nor does it explain how the unredacted PII is necessary to evaluate compliance with the NVRA and HAVA." *Oliver*, 2026 WL 2031479, at *10; *see Weber*, 816 F. Supp. 3d at 1184.

**IV.**     **Conclusion**

IT IS THEREFORE ORDERED that Defendant and Defendant-Intervenors' Motions to Dismiss are GRANTED. (ECF Nos. 42, 66, 68.)

It is FURTHER ORDERED that good cause appearing under LR 7-2(g), all motions for leave to file supplemental authority are granted. (ECF Nos. 77, 80, 84, 87, 88, 90, 91, 92.)

It is FURTHER ORDERED that Plaintiff's Motion to Compel is DENIED. (ECF No. 2.)

It is FURTHER ORDERED that this case is DISMISSED.

The Clerk of Court is directed to ENTER JUDGMENT in favor of Defendants.

DATED: August 14, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

12